**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

MARIA VECCHIO, individually, and on
behalf of all others similarly-situated,

                                        Plaintiff,

                    - against -

QUEST DIAGNOSTICS INC.,
EXAMONE WORLD WIDE, INC., and
EXAMONE LLC,

                                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

Civil Case No.:


**CLASS ACTION COMPLAINT**


**JURY TRIAL DEMANDED**

     Maria Vecchio ("Plaintiff"), by and through undersigned counsel, on behalf of herself and on behalf of those similarly situated, brings this Fair Labor Standards Act collective action and Rule 23 class action against ExamOne World Wide, Inc. and ExamOne LLC (collectively, "ExamOne") and Quest Diagnostics Inc. ("Quest Diagnostics," and, together with ExamOne, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

     1.     Plaintiff is a Mobile Examiner who visits insurance customers at their homes or places of business and conducts physical examinations and basic lab work for the purposes of insurance eligibility and underwriting. Plaintiff is primarily compensated on a per-procedure basis. Due to the duration of her appointments, the extensive amount of travel between appointments, and the additional lab work and paperwork she must conduct at home, Plaintiff's per hour compensation is often below the state and federal minimum wage, sometimes significantly so. Plaintiff routinely works more than ten hours per day and more than 40 hours per week, but does not receive any overtime compensation or spread-of-hours pay.

2.      Plaintiff brings this action as an opt-in collective action on behalf of herself and all similarly situated individuals for violations of the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and as an opt-out Rule 23 class action on behalf of herself and the proposed class to remedy violations of New York state law, specifically New York Labor Law, Article 6, §§ 190 *et seq.* and Article 19, §§ 650 *et seq.* (collectively the "NY Labor Law").

3.      Plaintiff alleges that Defendants regularly and routinely failed to pay minimum wage, failed to pay overtime, failed to pay spread-of-hours pay, failed to reimburse for necessary business expenses, and failed to accurately calculate hours worked. Plaintiff alleges upon information and belief that the proposed collective and class members have the same or similar injuries resulting from the same unitary course of conduct of the Defendants.

4.      Plaintiff is one of thousands of New York and national employees who work or worked for Defendants as Mobile Examiners and were not paid in accordance with federal law.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA.

6.      The Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332(d) because this is a class action with an amount in controversy in excess of $5,000,000, exclusive of interest and costs, and at least one member from the class is a citizen of a state different from at least one Defendant. Alternatively, the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 *et seq.* because (i) many of the acts and transactions giving rise to this action occurred in this District; (ii) Defendants are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District through the promotion, marketing, distribution, and sale of its

services in this District; and (iii) Defendants currently do substantial business in this District.

## PARTIES

8.      Plaintiff is a citizen of the State of New York and a resident of New York County, residing at 367 Edgecombe Avenue Apt. 43, New York, NY 10031.

9.      ExamOne World Wide, Inc. is a Pennsylvania corporation with its headquarters and principal base of business in Kansas.

10.      On information and belief, ExamOne World Wide, Inc. is licensed to and does in fact conduct business throughout the United States, including in New York.

11.      On information and belief, ExamOne World Wide, Inc. is a wholly owned subsidiary of Quest Diagnostics.

12.      On information and belief, ExamOne LLC is a Delaware corporation.

13.      On information and belief, ExamOne LLC is a wholly owned subsidiary of ExamOne World Wide, Inc.

14.      Quest Diagnostics is a Delaware corporation with its headquarters and principal place of business in New Jersey.

15.      On information and belief, Quest Diagnostics is licensed to and does in fact conduct business throughout the United States, including in New York.

16.      At all times relevant to this Action, Defendants transacted business in this District.

## STATEMENT OF FACTS

### Plaintiff's Employment by Defendants

17.      ExamOne, a Quest Diagnostics Company, is a leading provider of risk assessment testing for life insurance companies.

18.      On November 29, 2013, Plaintiff entered into an "Independent Contractor Agreement" with ExamOne World Wide, Inc.

19.     According to this agreement, Plaintiff was to be paid 38% of the portion of the fee ExamOne bills to and collects from clients for the services she performed.

20.     Pursuant to this agreement, Plaintiff began working for ExamOne as a Mobile Examiner in January 2014.

21.     In June 2014, Plaintiff was offered the opportunity to change her employment status from an independent contractor to a W-2 employee.

22.     Plaintiff received an offer letter from Quest Diagnostic Inc.'s Talent Acquisition Center, dated June 26, 2014, offering part-time employment with ExamOne LLC as a Mobile Examiner, with a July 11, 2014 start date.

23.     The offer letter described her pay as follows:

Your salary is based on fee schedule 7, payable on a biweekly basis. When you are not performing mobile exams, but are working in the office your base rate of pay will be $17.69 per hour, payable on a biweekly basis.

Your overtime rate of pay, if applicable, will be $26.54 per hour, payable on a biweekly basis.

24.     Plaintiff accepted this offer on June 27, 2014.

25.     Despite the change in formal designation from an independent contractor to an employee, and the change of the named employer on her contracts from ExamOne World Wide, Inc. to ExamOne LLC, Plaintiff's job duties and responsibilities were identical.

26.     When Plaintiff's formal designation changed from independent contractor to employee, her supervisor remained the same.

27.     When Plaintiff's formal designation changed from independent contractor to employee, her job responsibilities and workflow remained the same.

28.     When Plaintiff's formal designation changed from independent contractor to employee, the control that Defendants exercised over Plaintiff in the performance of her job remained the same.

29.     The only significant change when Plaintiff became designated an employee was in her rate of compensation for provision of services.

**Defendants' Status as Employers**

30.     Plaintiff's November 29, 2013 Independent Contractor Agreement was with ExamOne World Wide, Inc.

31.     ExamOne World Wide, Inc. was identified in the contract as a Pennsylvania corporation.

32.     ExamOne World Wide, Inc.'s address was identified in the contract as 10101 Renner Boulevard, Lenexa, Kansas, 66219.

33.     The June 26, 2014 offer letter was from Quest Diagnostics Inc. Talent Acquisition Center at 10101 Renner Blvd, Lenexa, Kansas, 66219.

34.     The offer letter indicated that ExamOne LLC offered Plaintiff a position as "Rep, Mobile Examiner – P/T [part-time]."

35.     On information and belief, ExamOne LLC is not authorized to do business in New York.

36.     Plaintiff was provided with a Welcome Packet of employment paperwork and documentation. This packet was titled "Welcome to ExamOne Services LLC."

37.     On information and belief, ExamOne Services LLC is not authorized to do business in New York.

38.     On information and belief, ExamOne Services LLC is not a recognized legal entity in the New York, Pennsylvania, Delaware, New Jersay, or Kansas.

39.     Quest Diagnostics repeatedly held itself out as Plaintiff's employer.

40.     Plaintiff was provided with a Safety Manual.

41.     This manual bore a large Quest Diagnostics logo at the top and was titled in large

letters "Environmental Health and Safety for **New Employees**." (emphasis added).

42.    This manual began with the language "Quest Diagnostics Incorporated believes that workplace safety, the health of **our employees**, and protection of the environment are critical business objectives." (emphasis added).

43.    Plaintiff was also provided with a document bearing the Quest logo and titled "Invitation to Individuals with Disabilities and Covered Veterans to Self-Identify for Affirmative Action Purposes."

44.    This document begins with the language "Quest Diagnostics, Inc. is a government contractor and, as such, is required by the Rehabilitation Act of 1973 and the Vietnam Era Veterans Readjustment Assistance Act of 1974 to take affirmative action to employ and advance *in employment* qualified individuals with disabilities and covered veterans (see definitions on reverse)." (emphasis added).

45.    Plaintiff was required to sign several forms identifying her as a Quest Diagnostics employee.

46.    Plaintiff was required to sign the Environmental Health & Safety Pledge of Commitment, which contained the following language:

> **As a Quest Diagnostics employee**, I hereby pledge to support and adhere to all company safety rules, regulations and policies. (italicized emphasis added).

47.    Plaintiff was required to sign the IT Systems Access Agreement, which contained the following language:

> All **Quest Diagnostics employees** have an obligation to comply with all confidentiality, privacy and security policies established by Quest Diagnostics and to use the information assets to which you have access for authorized company business only. (emphasis added).

48.    Plaintiff was required to sign the Quest Diagnostics Integrity Commitment Pledge, which contained the following language:

> Quest Diagnostics will provide an environment of strict compliance with the laws and

regulations, not only as a legal obligation, but because it's the right thing to do.

> *As an employee*, I pledge to . . . (emphasis added).

49.     Plaintiff was required to sign the Quest Diagnostics Code of Business Ethics Pledge,

which contained the following language:

> The Code of Business Ethics describes the standards of business conduct required of all *Quest Diagnostics employees*, executive officers and directors. *Each employee*, officer and director has a personal responsibility to ensure that his or her actions abide by the letter and the spirit of the Code. *As an employee*, I pledge to honor the key principles set forth below and to comply in all respects with the requirements of the Code. (emphasis added).

50.     Plaintiff was required to sign the ***Employee*** Acknowledgement, which contained the

following language:

> *My employment with Quest Diagnostics* is based upon my agreement and representations as set forth below . . . (emphasis added).

51.     Plaintiff was required to sign the New Employee Compliance Training

Acknowledgement, which contained the following language.

> This is to acknowledge that I have attended Compliance training as part of my New *Employee Orientation Program at Quest Diagnostics* and have received the following . . . (emphasis added).

52.     Plaintiff was required to sign the Compliance Policy Training Certification, which

contained the following language:

> [I] [a]gree to strictly adhere to each compliance policy and procedure as a ***condition of my employment with Quest Diagnostics*** and that any violation of a compliance policy and/or procedure will result in Quest Diagnostics taking appropriate disciplinary action, up to and including termination. (emphasis added).

53.     On August 28, 2015, Quest Diagnostics issued a disciplinary warning to Plaintiff.

54.     This document bore the Quest Diagnostics logo, and indicated that the warning "will

remain permanently in your employee file for the duration of ***your employment with Quest***

***Diagnostics***" and warned of potential consequences "up to and including termination of

***employment with Quest Diagnostics***." (emphasis added).

55.     Quest Diagnostics Incorporated, 3 Giralda Farms, Madison, NJ 07940, issued Plaintiff's paychecks.

56.     Quest Diagnostics was responsible for human resources functions during Plaintiff's employment, including her initial hiring, the disciplinary process, and payroll.

57.     Quest Diagnostics handled counseling and discipline relating to Plaintiff's specific duties and job performance and specifically referenced Plaintiff's employment and potential termination.

58.     At all relevant times, ExamOne World Wide, Inc. and ExamOne LLC were the alter egos of Quest Diagnostics.

59.     Quest Diagnostics directed, ratified, permitted, consented to, or otherwise authorized and adopted the alleged acts and/or omissions of, and any statements made by, ExamOne, including but not limited to employing Plaintiff, establishing her manner and rate of pay, and calculating and paying Plaintiff's wages.

60.     Each Defendant acted as an agent, servant, employee, or alter ego for each of the other Defendants and in doing so, each Defendant acted within the course, scope, and under its authority as an agent, servant, employee, or alter ego of every other Defendant. Each Defendant ratified, permitted, consented to, or otherwise authorized and adopted the alleged acts and/or omissions of, and any statements made by, the other Defendants.

61.     Each Defendant is in some manner legally responsible for the acts and liabilities alleged herein, and any harm or damages sustained by Plaintiff was and continues to be the direct, proximate, and foreseeable result of the acts and/or omissions of Defendants, and each of them.

**Plaintiff's Job Responsibilities**

62.     Defendants provided Plaintiff with training for the position of Mobile Examiner.

63.     Defendants provided Plaintiff with equipment, including a centrifuge, an iPad for

8

tracking appointments, and examination kits.

64.     During the entire period of her employment by Defendants, Plaintiff's duties have included going to private appointments for clients who need tests or physical exams for insurance underwriting purposes.

65.     These appointments typically take place at clients' private homes or offices.

66.     The exams include tasks such as asking questions about client health, taking height and weight measurements, and taking blood and urine samples.

67.     Plaintiff's schedule of appointments is provided by Defendants. Plaintiff provides her hours of availability to Defendants in advance, and Defendants populates her schedule with appointments.

68.     Plaintiff's work is assigned out of Defendants' New York City office.

69.     Plaintiff's service territory consists of 21 zip codes covering substantially all of Manhattan south of Central Park.

70.     Plaintiff is required to travel to and from appointments and typically uses public transportation to do so. But she is not reimbursed or compensated for her travel expenses.

71.     Between travel and appointments, Plaintiff typically works for the entire workday with very little downtime.

72.     In addition to her client exams, Plaintiff is also responsible for completing paperwork and conducting lab work at home.

73.     This lab work includes putting blood samples collected from clients through a centrifuge.

74.     This paperwork and lab work is a required part of the job.

75.     This additional work typically takes approximately an hour per day to complete.

76.     In order to track her hours of work, Plaintiff is required to "clock in" and "clock

out" by calling an "800" number provided by Defendants.

77.     According to instructions provided by Defendants, she is to call this number when leaving home for her first appointment and upon returning home after her last appointment.

78.     Plaintiff is instructed to clock out when she is conducting personal business between scheduled appointments.

79.     Plaintiff is instructed not to clock out when she is traveling directly from one appointment to another.

80.     Plaintiff is also instructed to clock in and out when performing paperwork or lab work at home.

81.     Although Plaintiff's calls to the "800" number provide a record of her hours worked, she is not compensated on an hourly basis, but is instead paid at a fixed per-procedure rate.

82.     Periodically, Plaintiff is assigned to a scheduled shift instead of individual client appointments.

83.     On these days, Plaintiff is typically sent to a health fair or the workplace of a corporate client, and she spends the entire day at one location administering exams.

84.     On days where she works a scheduled shift, Plaintiff is paid at an hourly rate.

85.     Plaintiff is instructed to clock in using the "800" number when she arrives at the designated location and to clock out when she leaves.

86.     Upon information and belief, all contractors and employees providing Mobile Examiner services for Defendants have essentially the same structure to their workdays and pay.

87.      Regardless of whether she was designated as an independent contractor or an employee, Plaintiff's work constituted an employment relationship for purposes of the FLSA and NY Labor Law.

88.     The work performed by Plaintiff was an integral part of the employer's business.

Defendants contracted with insurance companies specifically to provide the services performed by Plaintiff.

89.     Plaintiff did not exercise managerial decision-making or independent business judgment.

90.     Plaintiff performed specified services according to a designated protocol, and her schedule of appointments was entirely dictated by Defendants.

91.     Plaintiff did not make independent capital investments in the business.

92.     All specialized equipment used in Plaintiff's work was supplied by Defendants.

93.     Plaintiff did not exercise a significant degree of control over her work. Although Plaintiff designated her hours of availability, her appointments within those hours were determined entirely by Defendants.

**Plaintiff's Time Records**

94.     Because Plaintiff is required to clock in and out by calling an 800 number at the beginning and end of each work period, her personal telephone records provide a record of the number of hours she logged each day.

95.     Plaintiff's total pay for a two-week pay period divided by the number of hours she logged is often less than state and federal minimum wage.

96.     During the period from November 10, 2014, through February 12, 2016, Plaintiff's average hourly wage based on her logged hours was below the federal minimum wage of $7.25 during at least 3 two-week pay periods.

97.     For example, during the pay period covering February 1, 2015 through February 14, 2015, according to Plaintiff's phone records, she worked a total of 57 hours and 59 minutes. She was paid a total of $416.92, which works out to $7.19 per hour.

98.     During the period from November 10, 2014, through January 3, 2015, Plaintiff's

average hourly wage based on her logged hours was below the then-in-effect New York state minimum wage of $8.00 during at least 1 two-week pay period.

99.     During the period from January 5, 2015, through December 30, 2015, Plaintiff's average hourly wage based on her logged hours was below the then-in-effect New York state minimum wage of $8.75 during at least 9 two-week pay periods.

100.    Plaintiff's travel expenses are not reimbursed.

101.    When these expenses are taken into account, her effective wage is even further below minimum wage.

102.    Plaintiff frequently logged over 40 hours in a week.

103.    During the period from November 10, 2014, to February 12, 2016, plaintiff logged in excess of 40 hours during at least 34 work weeks.

104.    For example, during the week from December 1, 2014, through December 5, 2014, Plaintiff's phone records show that she worked over 47 hours.

105.    Plaintiff was never paid overtime wages as required under federal and New York law.

106.    Plaintiff frequently logged more than ten hours in a single day or logged multiple shifts in a single day spanning more than ten hours.

107.    For example, on November 11, 2014, according to Plaintiff's phone records, she worked 10 hours and 30 minutes.

108.    Plaintiff never received spread-of-hours pay as required by New York law.

**Defendants' Time Records**

109.    Plaintiff is paid on a two-week pay cycle. Her paystubs indicate the total number of hours worked in the two-week period, but do not provide a week-by-week breakdown.

110.    Plaintiff's paystubs do not indicate Plaintiff's rate or rates of pay and basis thereof, the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours

worked, the number of overtime hours worked, the applicable piece rate or rates of pay, or the number of pieces completed at each piece rate, as required under the Wage Theft Prevention Act, NY Labor Law § 195.

111.   There are discrepancies between the number of hours logged by Plaintiff via the phone calls and the number of hours shown on Plaintiff's paystubs.

112.   These discrepancies are sometimes very large, failing to credit Plaintiff with tens of hours in a single pay period.

113.   There are at least 11 pay periods during the period from November 10, 2014, to February 12, 2016, in which the number of hours recorded by Defendants is 20 or more hours less than the number logged by Plaintiff.

114.   There are at least 4 pay periods during which the number of hours recorded by Defendants is 40 or more hours less than the number logged by Plaintiff.

115.   For example, during the pay period from December 7, 2014, through December 20, 2014, Plaintiff's phone records show that she worked 85 hours and 38 minutes. Plaintiff's paystub shows that Defendants recorded only 44 hours and 24 minutes for this pay period, resulting in a discrepancy of 41 hours and 14 minutes.

116.   Plaintiff's total pay for a two-week pay period divided by the number of hours she logged is often less than state and federal minimum wage.

117.   During the period from November 10, 2014, through February 12, 2016, Plaintiff's average hourly wage based on Defendants' own time records was below the federal minimum wage of $7.25 during at least 2 two-week pay periods.

118.   For example, during the pay period covering March 1, 2015, through March 14, 2015, according to Defendants' own time records, Plaintiff worked a total of 103 hours and 6 minutes. She was paid a total of $709.59, which works out to $6.88 per hour.

13

119.    During the period from November 10, 2014, through January 3, 2015, Plaintiff's average hourly wage based on Defendants' own time records was below the then-in-effect New York state minimum wage of $8.00 during at least 1 two-week pay period.

120.    During the period from January 5, 2015, through December 30, 2015, Plaintiff's average hourly wage based on Defendants' own time records was below the then-in-effect New York state minimum wage of $8.75 during at least 6 two-week pay periods.

121.    Plaintiff's travel expenses are not reimbursed. When these expenses are taken into account, her effective wage is even further below minimum wage.

122.    Because Plaintiff's paystubs report hours in two-week intervals, it is impossible to determine on the basis of the paystubs provided by Defendants whether Plaintiff is entitled to overtime pay for any single week.

123.    Regardless of the allocation of the hours between the two weeks, when Plaintiff works more than 80 hours in a two-week pay period, she is entitled to overtime pay.

124.    Even according to Defendants' own time records as shown on the paystubs, Plaintiff frequently worked in excess of 80 hours in a two-week period.

125.    During the period from November 10, 2014, to February 12, 2016, Defendants' time records showed Plaintiff working in excess of 80 hours during at least 5 two-week pay periods. For example, during the week from March 1, 2015, through March 14, 2015, Defendants' own time records show that Plaintiff worked over 103 hours.

126.    Plaintiff was never paid overtime wages as required under federal and New York law.

## COLLECTIVE ACTION ALLEGATIONS

127.    Plaintiff brings Counts I and III of this action (the "FLSA claims") on behalf of herself and all other similarly situated individuals (the "Collective") pursuant to the FLSA, 29 U.S.C. § 216(b). Plaintiff and the Collective were, or are, employed by Defendants as Mobile Examiners in

New York and the United States during the applicable statutory period.

128.    Plaintiff and the Collective are current and former employees of Defendants within the meaning of the FLSA and were employed by Defendants within three years of the date this Complaint was filed. See 29 U.S.C. § 255(a).

129.    The proposed Collective is defined as follows:

All persons who were employed by Defendants as Mobile Examiners (or similar job position), whether designated as independent contractors or employees, at any time in the three years prior to the filing of this Complaint.

130.    Excluded from the Collective are Defendants and their officers and directors.

131.    Plaintiff reserves the right to amend or modify the Collective definition in connection with a motion for collective action certification or as warranted by discovery.

132.    This action has been brought and may properly be maintained on behalf of the Collective proposed herein under the FLSA, 29 U.S.C. § 216(b).

133.    Questions of law and fact common to the Collective as a whole include, but are not limited to, the following:

a.   Whether Defendants failed and continue to fail to pay overtime compensation in violation of the FLSA, 29 U.S.C. § 201 *et seq.*;

b.   Whether Defendants' policies and practices of their failure to pay overtime to Plaintiff and the Collective violate the applicable provisions of the FLSA;

c.   Whether Defendants' failure to pay overtime to Plaintiff and the Collective was willful within the meaning of the FLSA;

d.   Whether Defendants failed and continue to fail to pay minimum wage in violation of the FLSA, 29 U.S.C. § 201 *et seq.*;

e.   Whether Defendants' policies and practices of its failure to pay minimum wage to Plaintiff and the Collective violate the applicable provisions of the FLSA;

f.   Whether Defendants' failure to pay minimum wage to Plaintiff and the Collective was willful within the meaning of the FLSA;

g.   Whether Defendants failed and continue to fail to reimburse employees for necessary travel expenses in violation of the FLSA; and

h.   Whether Defendants failed and continue to fail to make and maintain accurate records of actual time worked by Plaintiff and the Collective in violation of the FLSA, 29 U.S.C. § 201 *et seq.*

134.    The claim for violation of the FLSA is brought pursuant to 29 U.S.C. § 216(b) for all claims asserted by Plaintiff on behalf of herself and the Collective, because Plaintiff's claims are similar to the claims of the members of the Collective.

135.    Plaintiff and the Collective are similarly situated, have substantially similar contract agreements and pay provisions, and are subject to Defendants' common practice, policy, or plan of failing to keep accurate records and failing to pay minimum wage and overtime in violation of the FLSA.

136.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Collective. Plaintiff has retained counsel competent and experienced in complex class actions, FLSA, labor law, and employment law litigation.

137.    The names and addresses of the Collective members are available from Defendants. To the extent required by law, notice will be provided to the prospective Collective members via first class mail and/or by use of techniques in a form of notice that has been used customarily in collective actions, subject to court approval.

## CLASS ALLEGATIONS

138.    Plaintiff brings Counts II, IV, V, and VI of this action (the "Class claims") on behalf of herself and all other similarly situated individuals (the "Class") pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff and the Class were, or are, employed by Defendants as Mobile Examiners in New York during the applicable statutory period.

139.    Plaintiff and the Class are current and former employees of Defendants within the meaning of the NY Labor Law and were employed by Defendants within six years of the date this Complaint was filed.

140.     The proposed Class is defined as follows:

All persons who were employed in the State of New York by Defendants as Mobile Examiners (or similar job position), whether designated as independent contractors or employees, at any time in the six years prior to the filing of this Complaint.

141.     Excluded from the Class are Defendants and their officers and directors.

142.     Plaintiff reserves the right to amend or modify the Class definition in connection with a motion for class action certification or as warranted by discovery.

143.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria set forth in Federal Rule of Civil Procedure 23. The Class claims satisfy the numerosity, commonality, predominance, typicality, adequacy, superiority, and ascertainability requirements of the provisions of Rule 23.

144.     Numerosity. Although the exact number and identity of Members of the Class are uncertain and can only be ascertained through appropriate discovery, the number is great enough that joinder would be impracticable. Upon information and belief, Defendants employ hundreds of individuals as mobile examiners in New York State.

145.     Commonality and predominance. There are questions of law and fact that are common to the Class and predominate over any questions affecting only individual members of the Class. The damages sustained by Plaintiff and the other members of the Class flow from the common nucleus of operative facts surrounding Defendants' misconduct.

146.     Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

a.   Whether Defendants failed and continue to fail to pay overtime compensation in violation of the NY Labor Law;

b.   Whether Defendants' policies and practices of its failure to pay overtime to Plaintiff and the Class violate the applicable provisions of the NY Labor Law;

c.   Whether Defendants' failure to pay overtime to Plaintiff and the Class was willful within the meaning of the NY Labor Law;

d.   Whether Defendants failed and continue to fail to pay minimum wage in violation of the NY Labor Law;

e.   Whether Defendants' policies and practices of its failure to pay minimum wage to Plaintiff and the Class violate the applicable provisions of the NY Labor Law;

f.   Whether Defendants' failure to pay minimum wage to Plaintiff and the Class was willful within the meaning of the NY Labor Law;

g.   Whether Defendants failed and continue to fail to reimburse employees for necessary travel expenses in violation of the NY Labor Law;

h.   Whether Defendants failed and continue to fail to pay spread-of-hours in violation of NY Labor Law;

i.   Whether Defendants' policies and practices of its failure to pay spread-of-hours to Plaintiff and the Class violate the applicable provisions of the NY Labor Law;

j.   Whether Defendants' failure to pay spread-of-hours to Plaintiff and the Class was willful within the meaning of the NY Labor Law;

k.   Whether Defendants failed and continue to fail to provide a detailed statement concerning wage calculations as required by the NY Labor Law; and

l.   Whether Defendants failed and continue to fail to make and maintain accurate records of actual time worked by Plaintiff and the Class in violation of the NY Labor Law.

147.   Any defenses raised by Defendants, to the extent that any such defenses apply, are applicable generally to Plaintiff and the entire Class, and are not distinguishable as to individual class members.

148.   Typicality. The claims of the Plaintiff herein are typical of the claims of the members of the Class as a whole, all of whom have sustained and/or will sustain damages, as a result of the common course of conduct of Defendants as complained of in this class action complaint. The claims of Plaintiff are typical of the Class because Defendants subjected all Class members to the same course of conduct.

149.   The claims for violation of the NY Labor Law are brought pursuant to Rule 23 for all claims asserted by Plaintiff on behalf of herself and the Class, because Plaintiff's claims are similar to the claims of the members of the Class.

150.    Plaintiff and the Class are similarly situated, have substantially similar contract agreements and pay provisions, and are subject to Defendants' common practice, policy, or plan of failing to keep accurate records and failing to pay minimum wage, overtime, and spread-of-hours pay in violation of the NY Labor Law.

151.    <u>Adequacy</u>. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained attorneys highly experienced in the prosecution of complex employment and labor law class action litigation. Neither Plaintiff nor her attorneys have any interests antagonistic to the Class. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the proposed Class and have the financial resources to do so.

152.    <u>Superiority</u>. Plaintiff and Class members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit.

153.    Individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class may be in the millions of dollars, the individual damages incurred by each Class member resulting from Defendants' wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

154.    Individual Class members do not have a significant interest in individually controlling the prosecution of separate actions, and the individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. Plaintiff knows of no difficulty in the management of this action that would preclude its maintenance as a

class action. To the contrary, a class action in this matter will avoid case management difficulties and provide multiple benefits, including efficiency, economy of scale, unitary adjudication with consistent results, and equal protection of the rights of each Class member, all by way of the comprehensive and efficient supervision of the litigation by a single court.

155.    <u>Ascertainability</u>. The identity and address of each Class member can be readily ascertained through Defendants' records. Class members may be notified of the pendency of this action via first class mail and/or by use of techniques in a form of notice that has been used customarily in class actions, subject to court approval.

<u>COUNT I</u>
<b>Failure to Pay Minimum Wage Under the FLSA (29 U.S.C. § 206)</b>

156.    Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

157.    Section 6 of the FLSA, 29 U.S.C. § 206, establishes the right to be paid minimum wages. Section 16(b) of the FLSA, 29 U.S.C. § 216(b), entitles an employee to recover all unpaid wages, an equivalent amount as liquidated damages, and reasonable attorneys' fees and costs.

158.    At all times relevant to this action, Defendants willfully failed and refused to pay Plaintiff the federal minimum wages required by the FLSA, to Plaintiff's damage in amounts to be proven at trial.

159.    At all times relevant to this Complaint, the Defendants have been and continue to be "employers" within the meaning of the FLSA 29 U.S.C. § 203(d).

160.    At all times relevant to this Complaint, Defendants employed and continue to employ Plaintiff and the Collective within the definition of the FLSA 29 U.S.C. § 203(e)(1).

161.    At all times relevant to this Complaint, Defendants were enterprises "engaged in commerce" as defined in 29 U.S.C. § 203(s)(1)(A)(ii), because they had gross operating revenues in excess of $500,000.00.

162.    Plaintiff has consented in writing to be a part of this action pursuant to 29 U.S.C.

20

§ 216(b). Plaintiff's signed consent form is attached as Exhibit A.

163.    Defendants have failed to make, keep, and preserve records with respect to each of the Plaintiff and the Collective she seeks to represent, sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ *201 et. seq.*, including 29 U.S.C. § 211(c) and § 215(a).

164.    Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

165.    Plaintiff on behalf of herself and the Collective she seeks to represent request recovery of attorney's fees and costs associated with this cause as provided by 29 U.S.C. § 216(b).

<u>**COUNT II**</u>
**Failure to Pay Minimum Wage under NY Labor Law § 652**

166.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

167.    At all times relevant to this action, Defendants were Plaintiff's employers within the meaning of New York Labor Law §§ 2 and 651.

168.    At all times relevant to this action, Plaintiff was Defendants' employee within the meaning of New York Labor Law §§ 2 and 651.

169.    Defendants willfully required, suffered, or permitted Plaintiff to work for less than the minimum wage in violation of the State Minimum Wage Act, New York Labor Law § 652.

170.    As a result of Defendants' New York Labor Law violations, Plaintiff and the Class she seeks to represent are entitled to recover from Defendants amounts to be proven at trial for unpaid minimum wages, liquidated damages equal to 100% of the total wages found to be due, reasonable attorney's fees, and the costs of the action, pursuant to New York Labor Law§ 663(1).

<u>COUNT III</u>
**Failure to Pay Overtime Under the FLSA (29 U.S.C. § 207)**

171.    Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

172.    The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees at a rate of not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a work week.

173.    Plaintiff and the Collective are not exempt from the right to receive overtime pay under the FLSA.

174.    Plaintiff and the Collective are entitled to be paid overtime compensation for all overtime hours worked.

175.    At all times relevant to this Complaint, Defendants had a policy and practice of failing and refusing to pay overtime to its employees for their hours worked in excess of 40 hours per week.

176.    As a result of Defendants' failure to compensate its employees, including Plaintiff and the Collective, at a rate not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a work week, Defendants violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et. seq.*, including 29 U.S.C. § 207(a)(1) and § 215(a).

177.    Plaintiff on behalf of herself and the Collective that she seeks to represent is entitled to damages in the amount of their respective unpaid overtime compensation, plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), and other such legal and equitable relief as the Court deems just and proper.

178.    At all times relevant to this Complaint, the Defendants have been and continue to be "employers" within the meaning of the FLSA 29 U.S.C. § 203(d).

179.    At all times relevant to this Complaint, Defendants employed and continue to employ Plaintiff and the Collective, within the definition of the FLSA 29 U.S.C. § 203(e)(1).

180.     At all times relevant to this Complaint, Defendants were enterprises "engaged in commerce" as defined in 29 U.S.C. § 203(s)(1)(A)(ii), because they had gross operating revenues in excess of $500,000.00.

181.     Plaintiff has consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b). Plaintiff's signed consent form is attached as Exhibit A.

182.     Defendants have failed to make, keep, and preserve records with respect to each of the Plaintiffs and the Collective they seek to represent, sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201 *et. seq.*, including 29 U.S.C. § 211(c) and § 215(a).

183.     Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

184.     Plaintiff on behalf of herself and the Collective she seeks to represent request recovery of their attorney's fees and costs associated with this cause as provided by 29 U.S.C. § 216(b).

## <u>COUNT IV</u>
## Failure to Pay Overtime Under NY Labor Law § 652, 12 NYCRR § 142-2.2

185.     Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

186.     At all times relevant to this action, Defendants were Plaintiff's employers within the meaning of New York Labor Law §§ 2 and 651.

187.     At all times relevant to this action, Plaintiff was Defendants' employee within the meaning of New York Labor Law §§ 2 and 651.

188.     Defendants willfully failed to pay Plaintiff overtime compensation at a rate of 1.5 times her regular rate of pay for each hour worked in excess of 40 hours in a workweek as required under New York Labor Law §§ 650 *et seq.*, 12 NYCRR § 146-1.4.

189.     As a result of Defendants' New York Labor Law violations, Plaintiff and the Class

she seeks to represent are entitled to recover from Defendants amounts to be proven at trial for unpaid overtime wages, liquidated damages equal to 100% of the total wages found to be due, reasonable attorney's fees, and the costs of the action, pursuant to New York Labor Law § 663(1).

### COUNT V
### Failure to Pay Spread-of-Hours Under NY Labor Law § 652, 12 NYCRR § 142-2.2

190.     Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

191.     Plaintiff routinely worked more than ten hours per day.

192.     Defendants willfully failed to pay Plaintiff an extra hour of pay at the basic minimum wage rate for each day Plaintiff had a spread of hours in excess of ten hours per day, in violation of New York Labor Law §§ 650 *et seq.*

193.     As a result of Defendants' New York Labor Law violations, Plaintiff and the Class she seeks to represent are entitled to recover from Defendants an amount to be proven at trial for unpaid spread-of-hours pay, liquidated damages equal to 100% of the spread-of-hours pay found to be due, reasonable attorney's fees, and costs of the action, pursuant to New York Labor Law § 663(1).

### COUNT VI
### Violation of Wage Theft Prevention Act, NY Labor Law § 195

194.     Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

195.     Plaintiff's paystubs do not identify Plaintiff's rate or rates of pay and basis thereof, the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, the number of overtime hours worked, the applicable piece rate or rates of pay, or the number of pieces completed at each piece rate, as required under the Wage Theft Prevention Act, NY Labor Law § 195.

196.     Defendants willfully failed to provide this required information along with Plaintiff's paystubs.

24

197.     The failure to provide adequate paystub information obstructed Plaintiff's ability to determine whether she was being paid in compliance with state and federal law.

198.     As a result of Defendants' violation of the Wage Theft Prevention Act, Plaintiff and the members of the Class she seeks to represent are each entitled to recover $250 for each work day that the violations occurred or continue to occur, not to exceed a total of $5,000, together with costs and reasonable attorney's fees.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests relief against Defendants as set forth below:

a.     Designating this action as a collective action on behalf of Plaintiff and the Collective she represents pursuant to the Fair Labor Standards Act claims, issuing notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in Collective apprising them of the pendency of this action, which will permit them to assert timely FLSA claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. § 216(b), and equitably tolling the statute of limitations from the date of filing this Complaint until the expiration of the deadline for filing consent to sue forms pursuant to 29 U.S.C. § 216(b);

b.     Designating Plaintiff MARIA VECCHIO as the representative for the Collective;

c.     Determining that the Class claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and issuing an order certifying the Class as defined above;

d.     Appointing Plaintiff MARIA VECCHIO as the representative of the Class and her Counsel as Class counsel;

e.     Issuing notice to the Class of this action;

f.     Awarding Plaintiff and the Class unpaid minimum wages and an additional equal amount as liquidated damages, pursuant to NY Labor Law §§ 198(1-a), 663(1);

g.     Awarding Plaintiff and the Collective unpaid minimum wages and an additional equal amount as liquidated damages, pursuant to 29 U.S.C. § 216(b);

h.     Awarding Plaintiff and the Class unpaid overtime wages and an additional equal amount as liquidated damages, pursuant to NY Labor Law § 663(1);

i.     Awarding Plaintiff and the Collective unpaid overtime wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

      j.        Awarding Plaintiff and the Class unpaid spread-of-hours pay, as well as an additional equal amount as liquidated damages pursuant to NY Labor Law § 663(1);

      k.        Awarding Plaintiff and the Class damages for violations of the Wage Theft Prevention Act, pursuant to NY Labor Law § 198(1-d);

      l.        Awarding Plaintiff pre-judgment and post-judgment interest, pursuant to New York CPLR §§ 5001 and 5004;

      m.        Awarding Plaintiff the costs of this action together with reasonable attorney's fees pursuant to NY Labor Law §§ 198 and 663(1) and 29 U.S.C. § 216(b);

      n.        Awarding damages, including actual, general, special, incidental, statutory, punitive, treble, liquidated, and consequential to Plaintiff and Class members in an amount to be determined at trial;

      o.        Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the NY Labor Law, Article 6, §§ 190 *et seq.* and Article 19, §§ 650 *et seq.*;

      p.        Issuing an injunction prohibiting Defendants from continued unlawful practices, policies and patterns set forth herein;

      q.        Awarding pre-judgment and post-judgment interest as provided by law;

      r.        Awarding reasonable attorneys' fees and costs; and

      s.        Awarding such other and further relief that this Court deems appropriate.

## JURY TRIAL DEMANDED

    Plaintiff demands a trial by jury on all issues so triable.

Dated: June 29, 2016

Respectfully submitted,

NAPOLI SHKOLNIK PLLC

_/s/ Paul B. Maslo_
Paul B. Maslo
Kardon Stolzman
360 Lexington Avenue, 11th Floor
New York, New York 10017
Tel: (212) 397-1000
Fax: (646) 843-7603
Email:  pmaslo@napolilaw.com
           kstolzman@napolilaw.com

Exhibit A

## MARIA VECCHIO FLSA CONSENT FORM

I, Maria Vecchio, declare:

    1.   I hereby consent to be an Opt-In Party Plaintiff in a lawsuit or lawsuits against ExamOne World Wide, Inc., ExamOne LLC, Quest Diagnostics Inc., and any other individuals or entities who may be liable for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, and any other applicable laws, for unpaid minimum wage and overtime wages and other relief available under the Act.

    2.   I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 29, 2016, in New York, New York.

Maria Vecchio