UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIA VECCHIO, on behalf of herself and ) 
all others similarly situated, )
)
    Plaintiff, )
) Case No. 1:16-cv-05165-ER-KNF
  vs. )
)
QUEST DIAGNOSTICS, INC., EXAMONE )
WORLD WIDE, INC., and EXAMONE, )
LLC, )
)
    Defendants. )

I, Reshondra Parks, declare under 28 U.S.C. § 1746 as follows:

1. I am a putative FLSA opt-in Plaintiff in this action. I make this declaration based on my personal knowledge and I am competent to testify regarding its contents.

2. I have worked as a medical examiner for Quest Diagnostics, Inc., ExamOne World Wide, Inc., and ExamOne, LLC (collectively, "Defendants") in Glendale, California from June 2012 to November 2016.

3. Defendants classified me as an independent contractor until a point in late 2014. Afterwards, they classified me as an employee.

4. As a medical examiner, my job entailed performing medical exams on people for purposes of obtaining life insurance. Generally during these exams I collected data about the person's height, weight, and medical history; collected blood and urine samples; and performed EKGs.

5. I was paid by the appointment.

6. To get ready for an appointment I called the people who were scheduled to be examined, printed out the required paperwork, and gathered the supplies I need for the day. I was not paid for any of this work.

7. After my appointments were complete for the day, I had to spin down blood, prepare it to be shipped, drive the spun-down blood to a FedEx office for shipping, and upload all the completed paperwork for the day. I also had to review the paperwork to make sure the applicant had completed it correctly. I was not paid for any of this work.

8. In an average day, I spent a significant amount of time preparing for my appointments, traveling between appointments, and doing post-appointment work. This does not count the time that I actually spent in applicants' homes. I was not compensated for any of this work.

9. Because of this off-the-clock time, I have not made minimum wage and/or overtime.

10. I feel that Defendants deliberately pay its examiners by the appointment and make them do unpaid work to save themselves money.

11. My job did not change in any way when I switched from being an employee to an independent contractor.

12. Under either label, Defendants could have ended their association with me at any time.

13. I received my work instructions in the same way, through work orders, when I was an independent contractor and employee.

14. Under both labels, Defendants monitored my performance both through customer feedback and through reviews of the forms I uploaded on to their system.

15. I had no input into my rate of pay at any time. That was always determined by Defendants.

16. I was never able to form my own relationship with applicants or insurance companies such that they could work directly with me in the future. Those relationships always flowed through Defendants.

17. Whenever I accepted a patient appointment, I was required to complete the appointment. I was never able to do part of an appointment and reschedule the rest or divide up my work in some other way.

18. I never exercised or performed managerial functions that affect my opportunity for profit or loss. My pay was never dependent on the success of Defendants or the excellence of my own work. I was simply paid for each appointment at a set rate.

19. I provided my home office supplies, such as the printer, scanner, ink, and paper. Defendants provided my medical supplies, such as the lab kits, centrifuge, and EKG machine.

20. The only educational prerequisite for my job is completion of a phlebotomy course.

21. Nothing in my agreement with Defendants or elsewhere limited the time I could work for Defendants. The relationship was essentially indefinite.

22. I did not exercise any independent judgment or initiative in locating work. My assignments simply came from Defendants.

23. When I applied for this job I thought it would be paid well. Instead I spent hours and hours on unpaid work and was driving everywhere at my own expense. Defendants barely paid enough for me make ends meet.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September _____ in _____ _____

Reshondra Parks

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIA VECCHIO, on behalf of herself and )
all others similarly situated, )
)
                Plaintiff, )
) Case No. 1:16-cv-05165-ER-KNF
            vs. )
)
QUEST DIAGNOSTICS, INC., EXAMONE )
WORLD WIDE, INC., and EXAMONE, )
LLC, )
)
                Defendants. )

I, Zeanza Penistan, declare under 28 U.S.C. § 1746 as follows:

1. I am a putative FLSA opt-in Plaintiff in this action. I make this declaration based on my personal knowledge and I am competent to testify regarding its contents.

2. I have worked as a medical examiner for Quest Diagnostics, Inc., ExamOne World Wide, Inc., and ExamOne, LLC (collectively, "Defendants") in Latham, New York from 2008 to the present.

3. Defendants classified me as an independent contractor until a point in 2010. Afterwards, they classified me as an employee.

4. As a medical examiner, my job entails performing medical exams on people for purposes of obtaining life insurance. Generally during these exams I collect data about the person's height, weight, and medical history; collected blood and urine samples; and perform EKGs.

5. I am paid by the appointment.

6. To get ready for an appointment I call the people who are scheduled to be examined, print out the required paperwork, and gather the supplies I need for the day. I am not paid for any of this work.

7. After my appointments are complete for the day, I have to spin down blood, prepare it to be shipped, drive the spun-down blood to a FedEx office for shipping, and upload all the completed paperwork for the day. I also have to review the paperwork to make sure the applicant has completed it correctly. I am not paid for any of this work.

8. In an average day, I spend a significant amount of time preparing for my appointments, traveling between appointments, and doing post-appointment work. This does not count the time that I actually spend in applicants' homes. I am not compensated for any of this work.

9. Because of this off-the-clock time, I have not made minimum wage and/or overtime.

10. I feel that Defendants deliberately pay their examiners by the appointment and make them do unpaid work to save themselves money.

11. My job did not change in any way when I switched from being an employee to an independent contractor.

12. Under either label, Defendants could end their association with me at any time.

13. I received my work instructions in the same way, through work orders, when I was an independent contractor and employee.

14. Under both labels, Defendants monitored my performance both through customer feedback and through reviews of the forms I uploaded on to their system.

2

15. I have no input into my rate of pay at any time. That has always been determined by Defendants.

16. I have never been able to form my own relationship with applicants or insurance companies such that they could work directly with me in the future. Those relationships have always flowed through Defendants.

17. Whenever I accept a patient appointment, I am required to complete the appointment. I have never been able to do part of an appointment and reschedule the rest or divide up my work in some other way.

18. I have never exercised or performed managerial functions that affect my opportunity for profit or loss. My pay has never been dependent on the success of Defendants or the excellence of my own work. I am simply paid for each appointment at a set rate.

19. I provide my home office supplies, such as the printer, scanner, ink, and paper. Defendants provide my medical supplies, such as the lab kits, centrifuge, and EKG machine.

20. The only educational prerequisite for my job is completion of a phlebotomy course.

21. Nothing in my agreement with Defendants or elsewhere limits the time I could work for Defendants. The relationship has always been essentially indefinite.

22. I do not exercise any independent judgment or initiative in locating work. My assignments simply come from Defendants.

23. When I first applied for this job I thought I would be making good money. I didn't realize that I would be working a significant number of uncompensated hours and spending my own money to cover work-related expenses. Now that I have learned that Defendants'

3

policy is to rip off examiners by making them do a bunch of uncompensated work, I feel like they have taken advantage of me.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 26 in Johnstown NY, 2017

Zeanza Penistan

4