UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA VECCHIO, on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. 1:16-cv-05165-ER-KNF ) |
| vs. | ) ) |
| QUEST DIAGNOSTICS, INC., EXAMONE WORLD WIDE, INC., and EXAMONE, LLC, | ) ) ) ) |
| Defendants. | ) ) |

I, Ellora Jane Shelton, declare under 28 U.S.C. § 1746 as follows:

1. I am a putative FLSA opt-in Plaintiff in this action. I make this declaration based on my personal knowledge and I am competent to testify regarding its contents.

2. I worked as a medical examiner for Quest Diagnostics, Inc., ExamOne World Wide, Inc., and ExamOne, LLC (collectively, "Defendants") in Overland Park, Kansas from some point in the 1980s to June 2016.

3. Defendants classified me as an independent contractor.

4. As a medical examiner, my job entailed performing medical exams on people for purposes of obtaining life insurance. Generally during these exams I collected data about the person's height, weight, and medical history; collected blood and urine samples; and performed electrocardiograms.

5. I was paid by the appointment.

6. To get ready for an appointment, I called the people who were scheduled to be examined, printed out the required paperwork, and gathered the supplies I needed for the day. I was not paid for any of this work.

7. After my appointments were completed for the day, I had to spin down blood, prepare it to be shipped, wait for Fed-Ex to pick up the package with the samples, and upload all of the completed paperwork for the day. I also had to review the paperwork to make sure the applicant had completed it correctly. I was not paid for any of this work.

8. In an average day, I spent a significant amount of time preparing for my appointments, traveling between appointments, and doing post-appointment work. This does not count the time that I actually spent in applicants' homes. I was not compensated for any of this work.

9. Because of this off-the-clock time, I have not made minimum wage and/or overtime.

10. I feel Defendants deliberately paid their examiners by the appointment and made them do unpaid work to save themselves money.

11. Defendants labelled me an independent contractor, but I felt as if I was treated like an employee.

12. Defendants could have ended their association with me and terminated me at any time.

13. Defendants exercised control over me and provided instructions on how I am to do my job in the form of work orders.

14. Defendants monitored my performance both through customer feedback and through reviews of the forms I uploaded on to their system.

15. I had no input into my rate of pay. That was entirely determined by Defendants.

16. I could not form my own relationship with applicants or insurance companies such that they could work directly with me in the future, as opposed to going through Defendants.

17. When I accepted a patient appointment, I was required to complete the appointment, as opposed to doing a part of an appointment and rescheduling the rest or dividing my work up in some other way.

18. I did not exercise or perform managerial functions that affect my opportunity for profit or loss. My pay was not dependent on the success of Defendants or the excellence of my own work. I was simply paid for each appointment at a set rate determined by Defendants.

19. I provided my home office supplies, such as the printer, scanner, ink, and paper. Defendants provided my medical supplies such as the lab kits, centrifuge, and EKG machine.

20. The only educational prerequisite for my job was completion of a phlebotomy course.

21. Nothing in my agreement with Defendants or elsewhere limited the time I could work for them. The relationship was essentially indefinite.

22. I did not exercise any independent judgment or initiative in locating work. My assignments simply came from Defendants.

23. I've worked in this industry a long time and Defendants' practices were among the worst I've scene. The amount of off-the-clock work I had to do was excessive and the

amount of expenses I had to bear was equally excessive. I had to stop working for them because it was so bad.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 3rd, 2017 in Polo, Missouri

*Ellora Jane Shelton*
Ellora Jane Shelton

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIA VECCHIO, on behalf of herself and )
all others similarly situated, )
)
              Plaintiff, ) Case No. 1:16-cv-05165-ER-KNF
)
vs. )
)
QUEST DIAGNOSTICS, INC., EXAMONE )
WORLD WIDE, INC., and EXAMONE, )
LLC, )
)
              Defendants. )

I, Tracy Sinclair, declare under 28 U.S.C. § 1746 as follows:

1. I am a putative FLSA opt-in Plaintiff in this action. I make this declaration based on my personal knowledge and I am competent to testify regarding its contents.

2. I worked as a medical examiner for Quest Diagnostics, Inc., ExamOne World Wide, Inc., and ExamOne, LLC (collectively, "Defendants") in Oakland, Minnesota from some time in 2015 to July 2017.

3. Defendants classified me as an employee.

4. As a medical examiner, my job entailed performing medical exams on people for purposes of obtaining life insurance. Generally during these exams I collected data about the person's height, weight, and medical history. I also collected blood and urine samples.

5. I was paid by the appointment.

6. To get ready for an appointment I called the people who were scheduled to be examined, printed out the required paperwork, and gathered the supplies I needed for the day. I was not paid for any of this work.

7. After my appointments were complete for the day, I had to spin down blood, prepare it to be shipped, drive to a FedEx to drop off the packaged blood, and upload all the completed paperwork for the day. I also had to review the paperwork to make sure the applicant had completed it correctly. I was not paid for any of this work.

8. In an average day, I spent a significant amount of time preparing for my appointments, traveling between appointments, and doing post-appointment work. This does not count the time I actually spent in applicants' homes. I was not compensated for any of this work.

9. Because of this off-the-clock time, I have not made minimum wage and/or overtime.

10. I feel Defendants deliberately paid their examiners by the appointment and made them do unpaid work to save themselves money.

11. When I first accepted this job, I did so because I expected a fair hourly wage. Instead I worked long hours for which I was not paid. Once my work-related expenses were taken into account I barely made anything on a weekly basis. I had to leave because of this companies practices and I spent quite a bit of time trying to make this job work. I hope me and examiners like me, can get some relief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September _____ 2017 in International Falls, MN
October 5

Tracy Sinclair

2