UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA VECCHIO, on behalf of herself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) Case No. 1:16-cv-05165-ER-KNF<br>) |
| vs. | )<br>) |
| QUEST DIAGNOSTICS, INC., EXAMONE WORLD WIDE, INC., and EXAMONE, LLC, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

I, Krista Unger, declare under 28 U.S.C. § 1746 as follows:

1. I am a putative FLSA opt-in Plaintiff in this action. I make this declaration based on my personal knowledge and I am competent to testify regarding its contents.

2. I worked as a medical examiner for Quest Diagnostics, Inc., ExamOne World Wide, Inc., and ExamOne, LLC (collectively, "Defendants") in Harrisburg, Pennsylvania from April 2014 to February 2017.

3. Defendants classified me as an employee.

4. As a medical examiner, my job entailed performing medical exams on people for purposes of obtaining life insurance. Generally during these exams I collected data about the person's height, weight, and medical history. I also collected blood and urine samples.

5. I was paid by the appointment.

6. To get ready for an appointment I called the people who were scheduled to be examined, printed out the required paperwork, and gathered the supplies I needed for the day. I was not paid for any of this work.

7. After my appointments were complete for the day, I had to spin down blood, prepare it to be shipped, wait at home for Fed-Ex to pick up the packaged blood, and upload all the completed paperwork for the day. I also had to review the paperwork to make sure the applicant had completed it correctly. I was not paid for any of this work.

8. In an average day, I spent a significant amount of time preparing for my appointments, traveling between appointments, and doing post-appointment work. This does not count the time I actually spent in applicants' homes. I was not compensated for any of this work.

9. Because of this off-the-clock time, I have not received minimum wage and/or overtime.

10. I feel Defendants deliberately paid their examiners by the appointment and made them do unpaid work to save themselves money.

11. When I started as an employee I thought that meant I would be paid a good wage. Instead it meant hour and hours of work at home. And then some weeks I barely made enough money to cover my expenses. These companies rip examiners off and I hope something is done about it.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 29, 2017 in Berwick, PA.

Krista Unger

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA VECCHIO, on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) Case No. 1:16-cv-05165-ER-KNF ) |
| vs. | ) ) |
| QUEST DIAGNOSTICS, INC., EXAMONE WORLD WIDE, INC., and EXAMONE, LLC, | ) ) ) ) |
| Defendants. | ) ) |

I, Joel Validum, declare under 28 U.S.C. § 1746 as follows:

1. I am a putative FLSA opt-in Plaintiff in this action. I make this declaration based on my personal knowledge and I am competent to testify regarding its contents.

2. I have worked as a medical examiner for Quest Diagnostics, Inc., ExamOne World Wide, Inc., and ExamOne, LLC (collectively, "Defendants") in New York, New York from September 2013 to September 2015.

3. Defendants classified me as employee.

4. As a medical examiner, my job entailed performing medical exams on people for purposes of obtaining life insurance. Generally during these exams I collected data about the person's height, weight, and medical history; collected blood and urine samples; and performed EKGs.

5. I was paid by the appointment.

6. To get ready for an appointment I called the people who were scheduled to be examined, printed out the required paperwork, and gathered the supplies I need for the day. I was not paid for any of this work.

7. After my appointments were complete for the day, I had to spin down blood, prepare it to be shipped, drive the spun-down blood to a FedEx office for shipping, and upload all the completed paperwork for the day. I also had to review the paperwork to make sure the applicant had completed it correctly. I was not paid for any of this work.

8. In an average day, I spent a significant amount of time preparing for my appointments, traveling between appointments, and doing post-appointment work. This does not count the time that I actually spent in applicants' homes. I was not compensated for any of this work.

9. Because of this off-the-clock time, I have not made minimum wage and/or overtime.

10. I feel that Defendants deliberately pay its examiners by the appointment and make them do unpaid work to save themselves money.

11. I thought this job would pay enough to support me and my family. It was only after I started working that I realized that I would be working long hours off-the-clock and paying expenses out of my own pocket. I barely made anything and could not support my family on what I was making.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on September 28, 2017 in Staten Island, NY

Joel Validum

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIA VECCHIO, on behalf of herself and )
all others similarly situated, )
)
        Plaintiff, ) Case No. 1:16-cv-05165-ER-KNF
)
vs. )
)
QUEST DIAGNOSTICS, INC., EXAMONE )
WORLD WIDE, INC., and EXAMONE, )
LLC, )
)
        Defendants. )

I, Maria Vecchio, declare under 28 U.S.C. § 1746 as follows:

1. I am a putative FLSA opt-in Plaintiff in this action. I make this declaration based on my personal knowledge and I am competent to testify regarding its contents.

2. I have worked as a medical examiner for Quest Diagnostics, Inc., ExamOne World Wide, Inc., and ExamOne, LLC (collectively, "Defendants") in New York, New York from January 2014 to October 2016.

3. Defendants classified me as an independent contractor December 2015. Afterwards, they classified me as an employee.

4. As a medical examiner, my job entailed performing medical exams on people for purposes of obtaining life insurance. Generally during these exams I collected data about the person's height, weight, and medical history; collected blood and urine samples; and performed EKGs.

5. I was paid by the appointment.

6. To get ready for an appointment I called the people who were scheduled to be examined, printed out the required paperwork, and gathered the supplies I need for the day. I was not paid for any of this work.

7. After my appointments were complete for the day, I had to spin down blood, prepare it to be shipped, drive the spun-down blood to a FedEx office for shipping, and upload all the completed paperwork for the day. I also had to review the paperwork to make sure the applicant had completed it correctly. I was not paid for any of this work.

8. In an average day, I spent a significant amount of time preparing for my appointments, traveling between appointments, and doing post-appointment work. This does not count the time that I actually spent in applicants' homes. I was not compensated for any of this work.

9. Because of this off-the-clock time, I have not made minimum wage and/or overtime.

10. I feel that Defendants deliberately pay its examiners by the appointment and make them do unpaid work to save themselves money.

11. My job did not change in any way when I switched from being an employee to an independent contractor.

12. Under either label, Defendants could have ended their association with me at any time.

13. I received my work instructions in the same way, through work orders, when I was an independent contractor and employee.

14. Under both labels, Defendants monitored my performance both through customer feedback and through reviews of the forms I uploaded on to their system.

2

15. I had no input into my rate of pay at any time. That was always determined by Defendants.

16. I was never able to form my own relationship with applicants or insurance companies such that they could work directly with me in the future. Those relationships always flowed through Defendants.

17. Whenever I accepted a patient appointment, I was required to complete the appointment. I was never able to do part of an appointment and reschedule the rest or divide up my work in some other way.

18. I never exercised or performed managerial functions that affect my opportunity for profit or loss. My pay was never dependent on the success of Defendants or the excellence of my own work. I was simply paid for each appointment at a set rate.

19. I provided my home office supplies, such as the printer, scanner, ink, and paper. Defendants provided my medical supplies, such as the lab kits, centrifuge, and EKG machine.

20. The only educational prerequisite for my job is completion of a phlebotomy course.

21. Nothing in my agreement with Defendants or elsewhere limited the time I could work for Defendants. The relationship was essentially indefinite.

/

/

/

/

22. I did not exercise any independent judgment or initiative in locating work. My assignments simply came from Defendants.

23. When I started with Defendants I never thought there would be so much work to do at home, or that I would be spending so much of my own money just to work. I think this is unfair and that examiners have been taken advantage of.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 29th, 2017 in _____.

*/s/ Maria Vecchio*
Maria Vecchio

4