UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MARIA VECCHIO, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 1:16-cv-05165-ER-KNF |
| QUEST DIAGNOSTICS, INC., EXAMONE WORLD WIDE, INC., and EXAMONE, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR CONDITIONAL CERTIFICATION OF THE FAIR LABOR STANDARDS ACT COLLECTIVE AND <u>ISSUANCE OF COURT-APPROVED NOTICE</u>**

Paul B. Maslo
NAPOLI SHKOLNIK PLLC
360 Lexington Avenue, 11th Floor
New York, New York 10017
Telephone: (212) 397-1000
Fax: (646) 843-7603
Email: pmaslo@napolilaw.com

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

I.    Plaintiff has satisfied the applicable standard………………………………………………....……1

II.   Plaintiff did not improperly contact examiners or distribute notice………………………………2

III.  The Court should not consider Quest's evidence until stage two…………………………………4

IV.  Plaintiffs' declarations are sufficient for conditional certification…………………………………5

V.   Plaintiff has adequately described a single decision, policy, or plan………………………………....6

VI.  Quest's other claims find no support in the facts or the law……………….……....………………8

VII. The Court should not allow Quest to delay by ordering further briefing on notice……………..10

## TABLE OF AUTHORITIES

*Amador v. Morgan Stanley & Co. LLC*,
    2013 WL 494020 (S.D.N.Y. Feb. 7, 2013)…………...…………………………………..1, 2, 5, 9

*Ansoralli v. CVS Pharmacy, Inc.*,
    2017 WL 570767 (E.D.N.Y. Feb. 13, 2017)…………………………………………….......7, 9

*Barry v. S.E.B. Serv. of New York, Inc.*,
    2013 WL 6150718 (E.D.N.Y. Nov. 22, 2013)………...…………………...……………6, 7, 9

*Bassett v. Tenn. Valley Auth.*,
    2013 WL 665068 (W.D. Ky. Feb. 22, 2013)……………………………………………...........9

*Bijoux v. Amerigroup New York, LLC*,
    2015 WL 4505835 (E.D.N.Y. July 23, 2015),
    *report and recommendation adopted*, 2015 WL 5444944 (E.D.N.Y. Sept. 15, 2015)……………………8

*Bouder v. Prudential Financial, Inc.*,
    2007 WL 3396303 (D.N.J. Nov. 8, 2007)…….…………….…………………….............2, 3

*Chhab v. Darden Rests., Inc.*,
    2013 WL 5308004 (S.D.N.Y. Sept. 20, 2013)…...……………………………….............5

*Escobar v. Motorino E. Vill. Inc.*,
    2015 WL 4726871 (S.D.N.Y. Aug. 10, 2015)…………………………………………...5, 6

*Feng v. Hampshire Times*,
    2015 WL 1061973 (S.D.N.Y. Mar. 11, 2015)…………………………………….............5

*Frye v. Baptist Mem'l Hosp., Inc.*,
    2008 WL 2117264 (W.D. Tenn. May 20, 2008)……………………………...………..........3

*Garcia v. Chipotle Mexican Grill, Inc.*,
    2016 WL 6561302 (S.D.N.Y. Nov. 4, 2016)………………………………...……...........4, 5, 7, 8

*Guan Ming Lin v. Benihana Nat. Corp.*,
    275 F.R.D. 165 (S.D.N.Y. 2011)…………......………………………………...........................8

*Guttentag v. Ruby Tuesday, Inc.*,
    2013 WL 2602521 (S.D.N.Y. June 11, 2013)………………………………………...........2

*Hamadou v. Hess Corp.*,
    915 F. Supp. 2d 651 (S.D.N.Y. 2013)…………………………...…………………...............5

*In re Penthouse Exec. Club Comp. Litig.*,
    2010 WL 4340255 (S.D.N.Y. Oct. 27, 2010)……………………………………...............8

*Jeong Woo Kim v. 511 E. 5th St., LLC,*
  985 F. Supp. 2d 439 (S.D.N.Y. 2013)………………………………...……….............1

*Kellgren v. Petco Animal Supplies, Inc.,*
  2015 WL 5167144 (S.D. Cal. Sept. 3, 2015)…………..…………………………...……9

*Levinson v. Primedia Inc.,*
  2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003)…….…..……………..……....…………….….7

*Mathews v. ALC Partner, Inc.,*
  2009 WL 2591497 (E.D. Mich. Aug. 24, 2009)……...….…..…….…...………………….....5

*McCauley v. First Option Mortg., LLC,*
  2010 WL 3522316 (E.D. Mo. Sept. 2, 2010)……....……..….…………………………...5

*Mendoza v. Case de Cambio Delgado, Inc.,*
  2008 WL 938584 (S.D.N.Y. Apr. 7, 2008)…………..…..….……………………………...5

*Piper v. RGIS Inventory Specialists, Inc.,*
  2007 WL 1690887 (N.D. Cal. June 11, 2007)…………..…..…………………………...…3

*Reyes v. Nidaja, LLC,*
  2015 WL 4622587 (S.D.N.Y. Aug. 3, 2015)…………..…..……………………….…...…7

*Robinson v. Empire Equity Grp., Inc.,*
  2009 WL 4018560 (D. Md. Nov. 18, 2009)……………..…..…………………………...…9

*Romero v. H.B. Automotive Grp., Inc.,*
  2012 WL 1514810 (S.D.N.Y. May 1, 2012)…………..….……………………………...…1

*Ruggles v. WellPoint, Inc.,*
  591 F. Supp. 2d 150 (N.D.N.Y. 2008)…………..…..…………………………....3, 4, 6

*Seever v. Carrols Corp.,*
  528 F. Supp. 2d 159 (W.D.N.Y. 2007)…………....…………………………….…...…7

*She Jian Guo v. Tommy's Sushi Inc.,*
  2014 WL 5314822 (S.D.N.Y. Oct. 16, 2014)…………..…..……………………….…...…7

*Sultonmurodov v. Mesivta of Long Beach,*
  2015 WL 9273948 (E.D.N.Y. Dec. 17, 2015)…….…..…..………………………….…..6

*Tomkins v. Amedisys, Inc.,*
  2014 WL 129407 (D. Conn. Jan. 13, 2014)…………..…..……………………....…1, 2

*Valerio v. RNC Indus., LLC,*
  314 F.R.D. 61 (E.D.N.Y. 2016)…....……..…..……………...……………….....4, 6, 7, 8

*Varghese v. JP Morgan Chase & Co.*,
   2016 WL 4718413 (S.D.N.Y. Sept. 9, 2016)……………..……………………………………2, 4, 10

*Vasto v. Credico (USA) LLC*,
   2016 WL 2658172 (S.D.N.Y. May 5, 2016)……………..……………………………....2, 5

*Vaughan v. Mortg. Source LLC*,
   2010 WL 1528521 (E.D.N.Y. Apr. 14, 2010)……………..……….……………………….....5

*Walter v. Buffets Inc.*,
   2015 WL 3903382 (D.S.C. June 25, 2015)…..………..…….…....……………………….....9

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
   767 F. Supp. 2d 445 (S.D.N.Y. 2011)………..…………..…..………….…………….....10

*Zaniewski v. PRRC Inc.*,
   848 F. Supp. 2d 213 (D. Conn. 2012)………..………………………….……....4

In its opposition, Quest flat-out ignored the standard that the Court articulated in its November 13 Order: "As Plaintiffs note, the focus at the conditional certification stage is not on the [D]efendants' evidence, but on whether the Plaintiff has made the requisite showing." (Dkt. No. 528 at 2-3 (quotation marks omitted).) Even though the Court clearly directed otherwise, Quest appears to have spent the bulk of its 17-day extension gathering improper evidentiary support for its opposition. But this is the conditional-certification stage (not decertification), where Quest's arguments and evidence regarding the allegedly disparate factual and employment settings of Plaintiffs and putative collective members are inappropriate. The Court should snub Quest's improper attempt to import the stricter stage-two standard into the first phase of FLSA certification.

## I.   Plaintiff has satisfied the applicable standard.

All of the in-district cases that Quest could find describe the applicable standard as "low," "very limited," and "modest." (Opp. 15.) "This lenient standard applies even where plaintiffs assert a nationwide class." *Tomkins v. Amedisys, Inc.*, 2014 WL 129407, at *2 (D. Conn. Jan. 13, 2014).[1] It also applies until "discovery has been *completed*." *Amador v. Morgan Stanley & Co. LLC*, 2013 WL 494020, at *4 (S.D.N.Y. Feb. 7, 2013) (emphasis in original; quotation marks omitted). "Because not all discovery has been completed, . . . the first-stage standard . . . controls." *Id.*[2] Significantly, "the court must draw all inferences in favor of the [p]laintiff at the preliminary certification stage." *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 446 (S.D.N.Y. 2013) (quotation marks omitted).

---

[1] Regardless of whether courts in Georgia apply a more "rigor[ous]" standard when the collective is large (Opp. 17), courts in the Second Circuit do not.

[2] Quest's citation of *Romero v. H.B. Automotive Group., Inc.*, 2012 WL 1514810 (S.D.N.Y. May 1, 2012), is off-base. (Opp. 15.) There, plaintiff discussed only her own situation and alleged on "knowledge and belief" that "there are other salespersons who are also being denied overtime and minimum wage protections." *Id.* at *10. In other words, plaintiff did "not include any admissible affidavits from other employees[.]" *Id.* The court found that "[p]laintiffs' allegations made on knowledge and belief are not sufficient to satisfy her minimum burden." *Id. Romero* has no relevance here because Plaintiffs do not make allegations on knowledge and belief.

"As long as Plaintiffs' affidavits are sufficiently similar and detailed to constitute a preliminary showing that they and other potential plaintiffs together were victims of a common policy or plan, Plaintiffs have met their burden." *Amador*, 2013 WL 494020, at *9 (text alteration omitted). Plaintiffs submitted 55 declarations from examiners across the country who testified under oath to the same treatment and purported FLSA violations.[3] If Plaintiffs have not satisfied the applicable standard, barely anyone ever would and motions for conditional certification would rarely be granted. But that is the exact opposite of reality: "Because the standard at the first stage is fairly lenient, courts applying it *typically grant* conditional certification." *Id.* at *4 (emphasis added; quotation marks and text alterations omitted). Indeed, courts in the Second Circuit consistently grant conditional certification of nationwide collectives on substantially less evidence than what Plaintiffs submitted here. *See, e.g.*, *Varghese v. JP Morgan Chase & Co.*, 2016 WL 4718413, at *1 (S.D.N.Y. Sept. 9, 2016) (certifying nationwide collective where "[t]en plaintiffs have submitted declarations"); *id.* at *8 ("[C]ourts routinely grant conditional certification to a national class where evidence is presented from multiple employees from multiple locations nationwide.") (quotation marks and text alteration omitted).[4]

## II.  Plaintiff did not improperly contact examiners or distribute notice.

Relying on *Bouder v. Prudential Financial, Inc.*, 2007 WL 3396303 (D.N.J. Nov. 8, 2007), Quest contends that "Plaintiff improperly distributed nationwide notice." (Opp. 16.) But there are several

---

[3] Quest's claim that Plaintiffs fail to explain "the *reason* why" they were not compensated for certain tasks (Opp. 18 (emphasis in original)), is baffling. All of the 55 declarations that Plaintiffs submitted in support of their motion explained that they get paid per appointment and not for all of the work they must do both before and after appointments. Quest's policy of paying by the appointment—and not for required pre- and post-appointment work—is the reason "why" examiners are not paid for these tasks.

[4] *See also Vasto v. Credico (USA) LLC*, 2016 WL 2658172, at *9 (S.D.N.Y. May 5, 2016) (certifying nationwide collective based on declarations of four named and five opt-in plaintiffs, who worked at ten locations in four states); *id.* at *15 n.56 ("This holding is in accordance with numerous decisions in this District granting conditional certification of nationwide collectives on comparable or thinner records.") (collecting cases); *Tomkins*, 2014 WL 129407, at *2 n.1 (ten clinicians who worked in eight different states); *Guttentag v. Ruby Tuesday, Inc.*, 2013 WL 2602521, at *2 (S.D.N.Y. June 11, 2013) ("Plaintiffs' declarations and depositions cover at least eight store locations in four states."); *Amador*, 2013 WL 494020, at *5 ("three plaintiffs, five opt-in plaintiffs, and three declarants").

key differences between this case and *Bouder*. Plaintiffs in *Bouder* mailed a letter and consent-to-sue form to putative collective members; were not operating pursuant to a court order; and disseminated deceptive, misleading, and false statements. Here, as detailed in the Reply Declaration of Paul B. Maslo, Plaintiff did not simply mail a solicitation letter; Plaintiff first obtained a Court Order allowing her to contact putative collective members; and Plaintiff's communications were not misleading. Even without an existing court order, other courts have rejected defendants' attempts to argue under *Bouder* that "plaintiffs' . . . contact with putative collective action members . . . is *de facto* notice and usurps the court's authority to supervise the notice procedure[.]" *Frye v. Baptist Mem'l Hosp., Inc.*, 2008 WL 2117264, at *4 (W.D. Tenn. May 20, 2008) ("[T]o the extent that *Bouder* can be read to stand for the proposition that a complete ban on pre-certification communications with potential class members is appropriate even in the absence of specific findings of abuse, such a rule would be entirely inconsistent with *Gulf Oil*.") (collecting cases).[5]

As other district courts in the Second Circuit have held in cases where contact was made without a prior court order, Plaintiff's prior communications do not function as *de facto* notice and the solution is to simply ensure that all future communications are consistent with the Court-approved notice after conditional certification. *See, e.g.*, *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 164 (N.D.N.Y. 2008) ("Going forward, . . . this Court directs Plaintiffs' Counsel to cease in its advertisements to the putative class and remove from its website any notice of this litigation that does not comport with the

---

[5] This should be no surprise to Quest. In fact, Quest's counsel argued to the Court, in support of its objection to Magistrate Judge Fox's Order compelling production of contact information, that "[t]he problem is they can reach out to these people and . . . if we give them thousands of people's contact information, regardless of whether the case is ultimately certified or not[,] . . . these individuals could be contacted and then start filing opt-in notices and now they are part of the case." (June 22, 2017 Tr. 7:9-15.) Quest now "seems to envision a procedure whereby only named plaintiffs would be permitted to file opt-in consents prior to conditional certification while all other individuals desiring to participate in the collective action would have to wait until the court conditionally certified the class, even as the statute of limitations was running on the claims of these potential plaintiffs." *Piper v. RGIS Inventory Specialists, Inc.*, 2007 WL 1690887, at *8 (N.D. Cal. June 11, 2007). "There is no authority that supports such a procedure." *Id.*

court-approved notice."). It would be especially unfair to hold that Plaintiff's prior contact with examiners functioned as *de facto* notice here because, as detailed in the Reply Maslo Declaration, only a portion of the examiners were contacted and only by email. If Plaintiffs are allowed to issue official Court-approved notice, including by regular mail, the size of the collective could *easily* double.

**III. The Court should not consider Quest's evidence until stage two.**

Quest has submitted numerous declarations and other evidence in support of its argument that factual differences between Plaintiff and the proposed collective are too great for them to be similarly situated. While "[a]n objection at this preliminary stage to conditional classification based upon individual employees' asserted different circumstances is clearly part of the FLSA defense bar's play book, . . . it has not found favor with the courts[.]" *Zaniewski v. PRRC Inc.*, 848 F. Supp. 2d 213, 230 (D. Conn. 2012). Indeed, the law could not be any clearer: "As Plaintiffs note, the focus at the conditional certification stage 'is not on the [D]efendants' evidence, but on whether the Plaintiff has made the requisite showing.'" (Dkt. No. 528 at 2-3 (quoting Plaintiffs' letter [Dkt. No. 526] and *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 69 (E.D.N.Y. 2016)).) *See also Jeong Woo Kim*, 985 F. Supp. 2d at 446 ("[A] defendant may not defeat the plaintiff's motion by presenting conflicting factual assertions."). "When evaluating whether court-authorized notice is appropriate, the court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations" *Varghese*, 2016 WL 4718413, at *6. Accordingly, "[a]t the first stage of the conditional certification process, . . . defendants may not defeat a court's determination that Plaintiffs are similarly situated by submitting their own affidavits." *Id.* at *7 (quotation marks omitted; collecting cases). This Court has come to the exact same conclusion in other litigation. *See, e.g., Garcia v. Chipotle Mexican Grill, Inc.*, 2016

WL 6561302, at *6 (S.D.N.Y. Nov. 4, 2016) (Ramos, J.) ("[C]ourts in this Circuit have found that competing declarations should not be considered at this juncture.") (quotation marks omitted).[6]

## IV. Plaintiffs' declarations are sufficient for conditional certification.

Quest argues that Plaintiffs' "cookie-cutter declarations should be disregarded." (Opp. 18.) On the contrary, "'[t]he uniformity that [Quest] derides is . . . a substantial indicator in favor of the [P]laintiffs being similarly situated.'" *McCauley v. First Option Mortg., LLC*, 2010 WL 3522316, at *2 n.8 (E.D. Mo. Sept. 2, 2010) (parenthetically quoting *Mathews v. ALC Partner, Inc.*, 2009 WL 2591497, at *5 (E.D. Mich. Aug. 24, 2009)). *See also Vaughan v. Mortg. Source LLC*, 2010 WL 1528521, at *8 (E.D.N.Y. Apr. 14, 2010) ("[T]he similarities between the affidavits submitted by Plaintiff and the opt-in plaintiffs further indicates that they are 'similarly situated.'").[7]

---

[6] This rule is well established. *See, e.g., Vasto*, 2016 WL 2658172, at *15 ("[A]t this stage, courts in this Circuit routinely decline to consider such opposing declarations, because the issue for the Court is not whose evidence is more persuasive, but whether Plaintiffs have made the 'modest factual showing' that they are required to make at this stage of the litigation.") (quotation marks omitted; collecting cases); *Escobar v. Motorino E. Vill. Inc.*, 2015 WL 4726871, at *2 (S.D.N.Y. Aug. 10, 2015) ("Defendants oppose conditional certification largely by attacking the credibility of the declarants or by offering contradictory factual assertions, including by the declaration of Motorino's general manager. Defendants have offered objective evidence as well, such as payroll records, but such evidence still goes to the merits rather than the propriety of conditional certification and notice."); *Chhab v. Darden Rests., Inc.*, 2013 WL 5308004, at *12 (S.D.N.Y. Sept. 20, 2013) (same); *Amador*, 2013 WL 494020, at *8 (same).

[7] Quest's claim that "[c]ourts routinely deny certification motions relying on such materials," is nonsense. (Opp. 18.) Significantly, the cases that Quest cites do not even support its position. (*Id.* 18-20.) In *Hamadou v. Hess Corp.*, the court addressed what it means for a declaration to be "conclusory" in the context of plaintiffs referring to other employees in their declarations. 915 F. Supp. 2d 651, 655 (S.D.N.Y. 2013). *Hamadou* has no bearing here where all 55 declarants testified regarding only themselves. In *Feng v. Hampshire Times*, the court noted that plaintiffs submitted virtually identical declarations. 2015 WL 1061973, at *2 (S.D.N.Y. Mar. 11, 2015). But that wasn't the problem. Rather, the court was concerned that only named plaintiffs submitted declarations and there was no way to determine whether other similarly situated employees existed other than plaintiffs' statements that they are "unaware of any employees who receive overtime pay." *Id.* at *3. Finally, in *Mendoza v. Case de Cambio Delgado, Inc.*, while the court noted that plaintiffs' declarations were boilerplate, it was not an issue. 2008 WL 938584, at *2 (S.D.N.Y. Apr. 7, 2008). Instead, the court held that named plaintiffs failed to provide a factual nexus with putative collective members because they submitted only one declaration of a non-named plaintiff. *Id.* Here, unlike in *Feng* and *Mendoza*, 54 opt-in Plaintiffs submitted declarations, in addition to the similar declaration that Named Plaintiff submitted. *See Vaughan*, 2010 WL 1528521, at *8 (distinguishing *Mendoza* on this basis).

Thus, it is no surprise that Courts routinely accept declarations like those Plaintiffs submitted. *See, e.g., Escobar*, 2015 WL 4726871, at *2 n.4 ("Defendants have attacked the declarations for being nearly carbon copies of each other . . . Not only are credibility determinations inappropriate at this stage of the litigation, but the Second Circuit has cautioned that havoc would be wreaked if we elected to disregard the positions taken by parties in their affidavits simply because they were drafted by their lawyers[.]") (quotation marks and citation omitted).[8]

## V.  Plaintiff has adequately described a single decision, policy, or plan.

According to Quest, Plaintiff has not adequately shown that she and potential collective members together were victims of a common policy or plan for two reasons: (1) Quest's official policies purportedly expressly prohibit examiners from working off-the-clock; and (2) Plaintiffs' sworn testimony regarding their circumstances is not enough. (Opp. 19.) Quest is wrong on both points.

*First*, according to the improper evidence that Quest submitted, its official policies *clearly require* examiners to work off-the-clock. For example, Quest pays examiners per exam. (*See, e.g.,* Kingcade Decl. ¶ 10; *id.,* Ex. E; Quest's and Plaintiffs' examiner declarations.) Quest's "About Workforce TeleTime" provides that examiners must use the system "to record [their] working hours" and requires them to clock-in when they leave their houses for their first appointment and clock-out when they return home. (Kingcade Decl., Ex. G. *See also* Opp. 11-12.) Thus, according to Quest's official policies, examiners are not allowed to record the time spent doing pre-appointment tasks (before leaving their houses) or post-appointment tasks (after returning home). At the same time, as evidenced by the examiner declarations that Plaintiffs and Quest submitted, examiners are required to do administrative and lab work before and after appointments. *See, e.g., Barry v. S.E.B. Serv. of New York, Inc.,* 2013 WL 6150718, at *4 (E.D.N.Y. Nov. 22, 2013) ("[T]he Court will not rely on defendants'

---

[8] *See also Valerio*, 314 F.R.D. at 70 ("[T]o the extent Defendants allege that Plaintiff's 'boilerplate allegations' and 'bare bones' declarations cannot provide the basis for conditional certification, such arguments are unavailing.") (citations omitted); *Sultonmurodov v. Mesivta of Long Beach*, 2015 WL 9273948, at *5 (E.D.N.Y. Dec. 17, 2015) (same); *Ruggles*, 591 F. Supp. 2d at 160 (same).

declarations, which seek to rebut plaintiffs' allegations. Rather, the Court will focus on plaintiffs'

declarations . . . *Of course, to the extent that any evidence defendants submit actually helps plaintiffs' case, the Court will consider it.*") (emphasis added). In other words, if examiners follow Quest's instructions, they have

no choice but to work off-the-clock. Moreover, even if examiners improperly record their time on

Quest's telephone system when performing these tasks, they still don't get compensated for them

because they get paid per appointment. Regardless, as this Court has previously found, "[t]he existence

of any wage and hour policies presents a factual issue better resolved at a later stage in this case."

*Garcia*, 2016 WL 6561302, at *6 (Ramos, J.). *See also Ansoralli v. CVS Pharmacy, Inc.*, 2017 WL 570767,

at *2 (E.D.N.Y. Feb. 13, 2017) ("[T]he FLSA does not require that a plaintiff identify a formal, facially

unlawful policy before obtaining conditional certification of a collective action. To hold otherwise

would allow employers to avoid FLSA collective action certification simply by promulgating compliant

handbooks and policies, while letting their managers run roughshod over the FLSA's requirements.").[9]

*Second*, as explained in Plaintiffs' opening brief, all 55 examiners who submitted declarations

testified that (1) they had the same job duties; (2) Quest paid them on a per-appointment basis; (3)

they were required to perform a substantial amount of work both before and after appointments for

which they were not compensated; (4) once all of their off-the-clock time is figured into their weekly

hours, they often did not make minimum wage and/or overtime; and (5) Quest implemented this

practice of shifting uncompensated work to examiners to save itself money. Plaintiffs' showing easily

clears the conditional-certification hurdle. (*See, e.g.*, Pl. Mem. of Law 7-10.[10])

---

[9] Quest's cases are inapposite. (Opp. 20-22.) Plaintiffs in *Seever v. Carrols Corp.* sought to certify a nationwide collective of Burger King employees (over 100,000 people) and offered only one declaration evidencing similar violations at other locations. 528 F. Supp. 2d 159, 174 (W.D.N.Y. 2007). Plaintiffs in the other cases Quest cites failed to submit *any* evidence from other employees. *See Reyes v. Nidaja, LLC*, 2015 WL 4622587, at *4 (S.D.N.Y. Aug. 3, 2015); *She Jian Guo v. Tommy's Sushi Inc.*, 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014); *Levinson v. Primedia Inc.*, 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003).

[10] *See also Valerio*, 314 F.R.D. at 69-70 ("A straightforward reading of Plaintiff's allegations illustrates that the common policy complained of centers on Defendants' failure to pay non-managerial

## VI. Quest's other claims find no support in the facts or the law.

Quest's brief is littered with other points that need clarification or are just plain wrong:

| Quest's Claim | Rebuttal |
|---|---|
| Plaintiffs' declarations are deficient because they do not describe how many hours they worked, including off-the-clock. (Opp. 1.) | "This level of detail is not a prerequisite to providing the factual showing required under the FLSA[.]" *Garcia*, 2016 WL 6561302, at *7 (Ramos, J.). *See also In re Penthouse Exec. Club Comp. Litig.*, 2010 WL 4340255, at *3 (S.D.N.Y. Oct. 27, 2010) ("[D]efendants argue that plaintiffs' affidavits are conclusory and fail to satisfy plaintiffs' burden. Again, we disagree. Plaintiffs' pleadings and the affidavits from nine dancers contain sufficient detail to satisfy their burden. Although plaintiffs' affidavits are concise, this Court declines to require a plaintiff to submit additional affidavits or greater detail at this early stage of the litigation. To do so would undermine the purpose of the FLSA and would be inconsistent with the level of specificity that courts consistently require at the notice stage.") (citation omitted). |
| "Although many of Plaintiff's declarants were paid by the hour, none of them disclose that fact." (Opp. 1-2.) | As alleged in the complaint, the only time that Plaintiffs are paid by the hour is when they work a scheduled shift in the office or at a health fair. (FAC ¶¶ 23, 82-84.) But, as detailed in Plaintiffs' reply declarations, they *rarely* work in the office or at health fairs. Indeed, Named Plaintiff Maria Vecchio testifies that, "[i]n most months, [she] did not work at any health fairs" and she "never had appointments at the office." (Vecchio Reply Decl. ¶¶ 4-5.) Instead, she "spent almost all of [her] time working as a mobile examiner" and, as such, she was "paid by the appointment and did not receive an hourly wage." (*Id.* ¶ 3.) The other reply declarations are similar. As are the declarations that Quest submitted, with the possible exception of employee examiners at a couple of offices in Kansas, which are addressed in the next section. |
| "[S]ome Examiners are paid their hourly rate for all of their pre- and post-mobile exam work." (Opp. 8-9.) | As demonstrated by the opening and reply declarations that Plaintiffs submitted, none of them receives an hourly rate for pre- and post-appointment work. Quest submitted declarations from examiners in only five locations: Austin, Texas (5); Overland Park, Kansas (9); Johnson City, Kansas (1); Chesterfield, Missouri (4); and St. Charles County, Missouri (1). While some examiners in different locations claim that they remain clocked-in when they |

employees for hours worked . . . and that this policy impacted Plaintiff as well as those similarly situated to Plaintiff. In this Circuit, plaintiffs need only make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law. The statements proffered by Plaintiff sufficiently allege, at least at this stage, that Defendants engaged in a common policy which violated the law and that Plaintiff and others similarly situated were victims of that policy."); *Bijoux v. Amerigroup New York, LLC*, 2015 WL 4505835, at *9 (E.D.N.Y. July 23, 2015), *report and recommendation adopted*, 2015 WL 5444944 (E.D.N.Y. Sept. 15, 2015) ("The plaintiffs['] . . . motion is supported by declarations from two named and ten opt-in plaintiffs, *largely identical in substance*, which assert that the plaintiffs (and other MRs) had similar job responsibilities, routinely . . . worked in excess of forty hours per week in order to satisfy Amerigroup's enrollment quota, and were not fully compensated for all of their overtime hours. Allegations of this sort are *consistently found* to satisfy the 'similarly situated' requirement.") (emphasis added); *Guan Ming Lin v. Benihana Nat. Corp.*, 275 F.R.D. 165, 175-76 (S.D.N.Y. 2011) ("[A]llegations of mandatory off-the-clock work are *regularly certified* as collective actions in this district.") (emphasis added; citations omitted).

| | |
|---|---|
| | perform pre- and post-appointment work (which is against Quest's policies), they still admit to being paid by the appointment, so it does not affect their compensation and is irrelevant. Only employee examiners in Overland Park and Johnson City contend that they get paid an hourly wage when performing these activities. If that is actually the case (this claim will be verified in discovery), then very few employee examiners from those cities should opt into this action. *See, e.g.*, *Kellgren v. Petco Animal Supplies, Inc.*, 2015 WL 5167144, at *6 (S.D. Cal. Sept. 3, 2015) ("Those employees who are satisfied . . . may simply elect not to join in this lawsuit . . . . Therefore, the Court will not give Defendant's happy camper declarations any weight."). If they do opt in and Quest is correct, examiners from these offices can be excluded at decertification. Notably, a "collective action need not be totally decertified if some members are not similarly situated to the others." *Bassett v. Tenn. Valley Auth.*, 2013 WL 665068, at *3 (W.D. Ky. Feb. 22, 2013). "Instead, plaintiffs who are not similarly situated can be dismissed while keeping intact the partial class." *Id.* Accordingly, "just as [Quest's] attempt[] to argue factual distinctions among potential class members [i]s premature, narrowing the class before the parties even know what potential plaintiffs, and how many, choose to opt in is also premature." *Walter v. Buffets Inc.*, 2015 WL 3903382, at *5 (D.S.C. June 25, 2015). *See also Robinson v. Empire Equity Grp., Inc.*, 2009 WL 4018560, at *4 (D. Md. Nov. 18, 2009) ("[A]rguments about dissimilarities . . . are more appropriately addressed after it is known who the class will consist of and some of the factual issues can be fleshed out in discovery."). |
| There are variations in the time examiners spent per exam, traveling, on pre/post-exam work, etc. (Opp. 3-5.) | "Although defendants often argue that the necessity of fact-intensive individualized inquiries will render a collective action unmanageable, the majority of courts in this Circuit decline to consider such arguments at the conditional certification stage, and, instead, put these issues off until the decertification stage, when discovery is complete." *Barry*, 2013 WL 6150718, at *6. "Moreover, courts have conditionally certified classes in large off-the-clock cases despite the individualized issues such cases present." *Id.* "Even where individualized testimony into damages is required, a court may ultimately conclude, at the decertification stage, that bifurcating an action into liability and damages phases will render it manageable." *Id. See also Ansoralli*, 2017 WL 570767, at *2 ("Plaintiffs and the putative collective are sufficiently similar in that they were all required to work off-the-clock and were not paid for that time. Indeed, courts routinely grant conditional certification despite factual variances between the plaintiff and the putative collective."); *Amador*, 2013 WL 494020, at *8 ("Indeed, the type of person-by-person fact-intensive inquiry sought by Defendants is premature at the conditional certification stage and has been specifically rejected by courts within this Circuit.") (quotation marks and text alterations omitted). |
| Some examiners solely work in the office or at health fairs. (Opp. 6, 9.) | The collective, as defined, currently includes only "persons who were employed by Defendants as Mobile Examiners (or similar job position)." (FAC ¶ 129.) This definition does not include examiners who worked only in the office or at health fairs. |

**VII. The Court should not allow Quest to delay by ordering further briefing on notice.**

Rather than allowing Quest to continue delaying this action—*e.g.*, Quest made Plaintiff obtain three separate rulings before producing examiners' contact information—the Court should promptly rule on this issue and adopt the notice that Plaintiffs proposed.[11] Quest could have proposed alternative notice (it received a 17-day extension on the day its brief was due and had ample time), but decided not to. Instead, Quest spent that time doing exactly what the Court said was inappropriate in its Order denying Quest's request to take depositions: gathering evidentiary support for its opposition.

Dated: November 27, 2017

Respectfully submitted,

*/s/ Paul B. Maslo*
Paul B. Maslo
NAPOLI SHKOLNIK PLLC
360 Lexington Avenue, 11th Floor
New York, New York 10017
Telephone: (212) 397-1000
Fax: (646) 843-7603
Email: pmaslo@napolilaw.com

*Counsel for Plaintiffs*

---

[11] In doing so, the Court should reject Quest's argument that the notice period should be only 60 days. (Opp. 25.) *Whitehorn v. Wolfgang's Steakhouse, Inc.*, on which Quest relies, involved a few restaurants in New York. 767 F. Supp. 2d 445, 447 (S.D.N.Y. 2011). This action involves more than 8,000 examiners spread across the country. (Opp. 1) Thus, 90 days is more appropriate. *See, e.g.*, *Varghese*, 2016 WL 4718413, at *9 n.6 (ordering 90-day notice period in case involving nationwide collective). Quest's other objections are similarly misplaced: (1) email notice has become standard, *see, e.g.*, *id.* ("[C]ourts in this district have found that given the reality of communications today email notice in addition to notice by first class mail is entirely appropriate.") (quotation marks and text alterations omitted); (2) courts routinely order the production of telephone numbers when defendants do not have correct email addresses (Maslo Reply Decl. ¶ 5), *see, e.g.*, *id.* at *10 ("Here, the potential opt-in plaintiffs include former employees of Defendants. These individuals would not receive notice through postings at Defendants' facilities, and Defendants may not have current addresses or email information for these individuals. Accordingly, Defendants are ordered to provide telephone numbers for former employees who are potential opt-in plaintiffs[.]"); and (3) reminder notice furthers the FLSA's remedial purpose, *see, e.g.*, *id.* ("[G]iven that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, a reminder notice is appropriate.") (quotation marks and text alterations omitted).

- 10 -

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned attorney certifies that on November 27, 2017, he electronically filed a copy of the attached and supporting documents via the CM/ECF filing system, which sent notification of such filing to all Filing Users.

<u><i>/s/ Paul B. Maslo</i></u>