UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIA VECCHIO, individually, and on
behalf of all others similarly situated,

Plaintiff,

-against-

QUEST DIAGNOSTICS INC., EXAMONE WORLD
WIDE, INC., and EXAMONE LLC,

Defendants.

**OPINION & ORDER**

16 Civ. 05165 (ER)

Ramos, D.J.:

Maria Vecchio ("Plaintiff" or "Vecchio") brings this putative collective action on behalf of all similarly situated employees against Quest Diagnostics Inc., Examone World Wide, Inc., and Examone LLC (collectively "Defendants"),[1] alleging failure to pay minimum wage and overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206–07.[2] Complaint ("Compl."), Doc. 1.

Before the Court is Plaintiff's motion for conditional certification of an FLSA collective action composed of all mobile medical examiners employed by Defendants within the last three years, and approval of Plaintiff's proposed notice and consent forms. For the reasons set forth below, Plaintiff's motion for conditional certification and approval of her proposed notice and consent forms is GRANTED.

---

[1] ExamOne World Wide, Inc. is a wholly owned subsidiary of Quest Diagnostics. Compl. ¶ 11. ExamOne LLC, in turn, is a wholly owned subsidiary of ExamOne Word Wide, Inc. Compl. ¶ 13.

[2] Plaintiff initially brought six counts under the FLSA, New York Labor Law § 652, and New York Codes, Rules and Regulations, 12 NYCRR § 142-2.2. Plaintiff, however, voluntarily dismissed counts II, IV, V, and VI, leaving only claims under the FLSA (Counts I and III). Doc. 489.

I. BACKGROUND

From November 2013 to October 2016, Vecchio was employed by Defendants as a mobile medical examiner, receiving her assignments out of Defendants' New York City office. Compl. ¶¶ 18, 68. In that capacity, she was primarily responsible for visiting "insurance customers at their homes or places of business [to] conduct[] physical examinations and basic lab work for the purposes of insurance eligibility and underwriting." *Id.* ¶ 1. During the course of her relationship with Defendants, she worked both as an independent contractor and an employee. *Id.* ¶¶ 18–22. She alleges that she was primarily compensated on a "per-procedure basis," i.e., she was paid a predetermined fee for each trip she makes to a customer's home or business. *Id.* ¶¶ 1, 3. However, Plaintiff alleges that she completed significant amounts of work for which she was not compensated by Defendants.

For example, she asserts that she was not paid for the time she spends travelling to a customer, or the lab-work and paperwork she conducted at home before and after her appointments. *Id.* ¶¶ 1, 72–81. The pre-appointment work consisted of "call[ing] the people who [a]re scheduled to be examined, print[ing] out the required paperwork, and gather[ing] the supplies [she] need[ed] for the day." Doc. 515 Ex. 1 ¶ 6. After the appointment, Plaintiff would "spin down blood, prepare it to be shipped, drive to Fed-Ex to drop off the packaged blood, and upload all the completed paperwork for the day." *Id.* ¶ 7. Plaintiff, asserts that she "was not paid for any of this work." *Id.* Although Plaintiff was "instructed to clock in and out when performing paperwork or lab work at home," she nonetheless was not compensated based on those hours. Compl. ¶ 80–81. Nor was she compensated for her travel expenses. *Id.* ¶ 100. Instead, she was compensated only at a "fixed per-procedure rate." *Id.* ¶ 81. As a result, although she "routinely" worked more than ten hours per day and more than 40 hours per week,

her per-hour compensation was "often below the . . . federal minimum wage" and she "regularly and routinely" did not receive overtime compensation. *Id.* ¶¶ 1, 3. Specifically, Plaintiff contends that, during the relevant period, there were at least 3 two-week pay periods for which she was paid below the minimum wage, and at least 34 work weeks for which she was not paid overtime, when overtime was due. *Id.* ¶¶ 96, 102–103. Plaintiff separately notes that she was periodically scheduled to work at a health fair or at the location of a corporate client. *Id*. ¶¶ 82–83. Under that circumstance, Plaintiff acknowledges that she was paid an hourly rate, and asserts no wage and hour violations in this respect. *Id.* ¶ 84.

Plaintiff alleges that although she was classified as an independent contractor before being classified as an employee, her work under both categorizations constitutes an employment relationship for purposes of the FLSA. *Id.* ¶ 87. Finally, Plaintiff claims that Defendants have a "common practice, policy, or plan of failing to keep accurate [time] records and failing to pay minimum wage and overtime in violation of the FLSA." *Id.* ¶ 135.

On June 29, 2016, Plaintiff commenced the instant FLSA collective action, seeking to vindicate her rights and those of similarly situated employees. *See id.* at 27; *id.* Ex. A. Over the next nine months, seven other mobile medical examiners opted into the action. Doc. 45 at 1. Those examiners, however, worked only in New York and Florida. *Id.* As a result, on April 12, 2017, Plaintiff sought the contact information of other medical examiners employed by Defendants so that she could "demonstrate that a sufficient number of similarly situated plaintiffs exist from geographically diverse locations to justify conditional certification of a nationwide collective." *Id.* On May 3, 2017, Magistrate Judge Kevin Fox granted Plaintiff's request. Doc. 572 ¶ 2 (concluding that "permitting the gather of [putative class members'] contact information would be in this circumstance in furtherance of [the FLSA]"). Following Defendants' timely

objections, on June 23, 2017, this Court overruled those objections and directed Defendants to "produce the contact information for all potential class members for the time period of three years prior to the filing of the Complaint." Doc. 59.

Thereafter, counsel for Plaintiff emailed a subset of examiners on the contact list provided by Defendants, asking them if they would be willing to discuss their experience working for Defendants. Doc. 572 ¶¶ 5–6. The email expressly noted that it "[was] not a solicitation." Doc. 572, Ex. 1. Counsel for Plaintiff received over 1,000 responses to that initial email. Doc. 572 ¶ 7. Due to the large volume of responses, counsel for Plaintiff determined that responding by phone call to each response would be inefficient and instead sent a second email that outlined a series of questions attempting to determine if examiners were similarly situated to Plaintiff. *Id.* ¶ 9. That email also expressly noted that it was not a solicitation, but informed examiners that they were welcome to join the action and asked for a declaration from those who elected to opt-in. Doc. 572, Ex. 2. The second email also encouraged examiners to opt in by stressing that the "statute of limitations continues to run on your claims until you join this lawsuit or decide to file another action of your own." *Id.*

Since then, over 430 Quest mobile medical examiners hailing from at least 43 states and the District of Columbia have opted into this action (the "Opt-In Plaintiffs"). Memorandum of Law in Support of Plaintiff's Motion for Conditional Collective Certification ("Pl.'s Mem."), Doc. 514, at 2–3; *see e.g.*, Docs. 62–471, 474, 478–482. Those mobile medical examiners, are comprised of individuals Quest classifies into three categories: independent contractors, examiners who were independent contractors and later were classified as employees, and examiners who were always classified as employees. Pls.'s Mem. at 3.

On October 20, 2017, Plaintiff filed a Motion for Conditional Certification of her FLSA collective action and issuance of a Court-approved notice to putative collective members, pursuant to Section 216(b) of the FLSA. Doc. 513. In support of the motion, Plaintiff has submitted affidavits from 55 examiners who work in 24 different states. Doc. 515 Ex. 1. Like Vecchio, each of the examiners who submitted affidavits avers that they were principally paid by appointment, that on an "average day" they spent "a significant amount of time preparing for . . . appointments, travelling between appointments, and doing post-appointment work," and that they were not compensated for any of that work. *Id.* ¶ 8. As a result, they aver that they have not been paid minimum or overtime wages. *Id.* ¶ 9.

On October 24, 2017, Defendants asked the Court to compel Vecchio, along with five Opt-In Plaintiffs who filed declarations in this action, to appear for depositions so that Defendants could "test the foundation of [their] testimony" prior to filing their response papers. Doc. 519 at 3. Recognizing the minimal burden that Plaintiff bears at the conditional certification stage, the Court denied Defendants' request on the basis that it would amount to a "'weigh[ing] [of] evidence and . . . credibility,'" which courts in this Circuit generally do not permit. Doc. 528 at 2 (quoting *Stevens v. HMSHost Corp.*, No. 10 Civ. 3571, 2012 WL 4801784, at *3 (E.D.N.Y. Oct. 10, 2012) (citing *Ferreira v. Modell's Sporting Goods, Inc.*, No. 11 Civ. 2395, 2012 WL 2952922, at *3 (S.D.N.Y. July 16, 2012)).

## II. CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION

### A. Legal Standard

Pursuant to the FLSA, an individual may file suit against an employer on behalf of himself and "other employees similarly situated" who give "consent in writing" to become party plaintiffs. 29 U.S.C. § 216(b) (2012). "District courts have discretion to facilitate this collective

action mechanism by authorizing that notice be sent to potential plaintiffs informing them of 'the pendency of the action and of their opportunity to opt-in as represented plaintiffs.'" *Mark v. Gawker Media LLC*, No. 13 Civ. 4347 (AJN), 2014 WL 4058417, at *2 (S.D.N.Y. Aug. 15, 2014) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010)).

The Second Circuit has endorsed a two-step framework for determining whether a court should certify a case as a collective action under § 216(b). *See Myers*, 624 F.3d at 554–55; *see also Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016). This process entails an analysis of whether prospective plaintiffs are "similarly situated" at two different stages: an early "notice stage," and again after discovery is largely complete. *See McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (citing *Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009)) (quotation marks omitted). At stage one, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the Plaintiffs with respect to whether a[n] FLSA violation has occurred." *Myers*, 624 F.3d at 555 (citations omitted). At stage two, after additional plaintiffs have opted in, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.* If the court concludes that they are not similarly situated, the action may be "de-certified," and the opt-in plaintiffs' claims "may be dismissed without prejudice." *Id.*

Here, Plaintiff seeks a step one, conditional certification of this collective action under the FLSA, and a determination that the proposed notice to putative opt-in plaintiffs is proper. "Because minimal evidence is available" at this early stage of the proceedings, and because the Court "retain[s] the ability to reevaluate whether the plaintiffs are similarly situated," Plaintiff

6

faces a "'relatively lenient evidentiary standard.'" *McGlone*, 867 F. Supp. 2d at 442 (quoting *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) and *Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007)). She must only make "a 'modest factual showing' that [Plaintiff] and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). "The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions,' but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id.* (internal citations omitted). "Accordingly, in deciding whether to grant the [Plaintiff's] motion, the Court must merely find 'some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims' of a particular practice." *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 346 (E.D.N.Y. 2012) (quoting *Sbarro*, 982 F. Supp. at 261). To demonstrate that such a factual nexus exists, "plaintiffs can rely on the pleadings, but only as supplemented by other evidence, such as affidavits from named plaintiffs, opt-in plaintiffs, or other putative collective action members." *Guan Ming Lin v. Benihana Nat. Corp.*, 275 F.R.D. 165, 173 (S.D.N.Y. 2011) (citing *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007) (noting that "the appropriate inquiry at this pre-discovery stage is whether the putative class alleged by Plaintiffs is similarly situated based on the pleadings and any affidavits").

In considering Plaintiff's motion, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007). It merely "examines the pleadings and affidavits to determine whether the named plaintiffs and putative class members

are similarly situated." *McGlone*, 867 F. Supp. 2d at 442 (citations omitted). If the Court finds that they are, it will conditionally certify the class and order that notice be sent to potential class members. *Id.*

B. Discussion

1. **Conditional Certification**

Plaintiff asks the Court to conditionally certify this FLSA collective action, composed of "[a]ll persons who were employed *directly* by Defendants as Mobile Examiners (or similar job position), whether designated as independent contractors or employees, at any time in the three years prior to the filing of this Complaint." Pl.'s Mem. at 11 (agreeing to narrow their collective definition to exclude individuals employed by Quest through a third party).[3] Plaintiff contends that putative collective members are similarly situated because they have substantially similar job requirements and pay provisions that require them to work off-the-clock hours without receiving adequate compensation. *Id.* at 7.

In response, Defendants contend that Plaintiff cannot establish that she is similarly situated to putative collective members for three reasons. First, Defendants effectively assert that the evidence they have proffered rebuts that showing.[4] Defendants' Memorandum of Law in Opposition to Conditional Certification ("Defs.' Mem.") Doc. 540 at 18, 22–24. Second, they assert that Plaintiff's declaration, and those of the other 54 examiners (most, if not all, of whom appear to be Opt-In Plaintiffs), are "vague" and "identical," and therefore should not be

---

[3] As a result of this revised collective definition, five examiners have withdrawn their opt-ins. Pl.'s Mem. at 12 n.5.

[4] Defendants also expend several pages of their brief arguing that "conditional certification is not automatic." Defs.' Mem. at 14–17. The Court is well aware of the burden that Plaintiff bears at the conditional certification stage, and as Defendants concede, it is a "modest" one. *Id.* at 15.

considered by the Court. *Id.* at 18. Third, and finally, Defendants argue that Plaintiff has not demonstrated that she and putative opt-in plaintiffs are victims of an identifiable policy or plan. *Id.* at 19.

### a) Defendants' Evidence

In support of their claim that Plaintiff and putative opt-in plaintiffs are not similarly situated, Defendants rely on a declaration from Quest's Director of Strategic Services, Rick Kingcade, as well as 20 declarations from medical and mobile medical examiners[5] employed by Defendants. *See* Docs. 541–561.[6] Defendants contend that the medical examiner declarations they proffer support the contention that "Plaintiff's alleged experiences were the exception, rather than the rule." Defs.' Mem. at 22. On that basis, they conclude that putative collective members cannot possibly be sufficiently similar to the exceptional circumstances confronted by Plaintiff. Defendants, however, cite no case law for the proposition that they may rely on their own affidavits to contradict the sworn testimony of Plaintiff and other examiners. Moreover, as the Court previously informed Defendants in rejecting their request to compel deposition testimony from Plaintiff, it will not "'weigh evidence and determine credibility'" at the conditional certification stage. Doc. 528 at 2 (quoting *Stevens*, 2012 WL 4801784, at *3 (citing *Ferreira*, 2012 WL 2952922, at *3); *see also Lynch*, 491 F. Supp. 2d at 368 (noting that "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations" at the conditional certification stage). Accordingly,

---

[5] Mobile examiners are distinguished from medical examiners only insofar as mobile examiners conduct their work primarily by travelling to see clients, whereas medical examiners primarily work at one location.

[6] Attached to Kingcade's declaration are a Quest examination manual, excerpts of Quest's employee handbook that outlines the company's compensation policies, and timesheets for Plaintiff and several other examiners who have submitted declarations. *See* Doc. 541, Exs. A–J.

9

Defendants' affidavits will not be considered in connection with Defendants' opposition to this motion for conditional certification.

### b) Sufficiency of Plaintiff's Declarations

Defendants next contend that the Court should not consider the 55 declarations proffered by Plaintiff and other mobile medical examiners because the declarations are virtually identical and conclusory. Defs.' Mem. at 18. For support, Defendants rely on *Hamadou v. Hess Corp.*, for the proposition that statements in a declaration are deemed "conclusory where they fail to identify particular employees or make specific allegations." 915 F. Supp. 2d 651, 665 (S.D.N.Y. 2013) (quotation marks omitted). As Plaintiff notes, however, *see* Pl.'s Reply at 5 n. 7, that case merely stands for the proposition that a Court will not credit a plaintiff who makes bald assertions—based on a single affidavit—that *other* employees are similarly situated. *Hamadou*, 915 F. Supp. 2d at 665 (citing *Morales v. Plantworks, Inc.*, No. 05 CIV. 2349 (DC), 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006) (noting that conclusory allegations exist where plaintiffs submitted a single affidavit to baldly assert that "[t]here are over 20 current and former employees that are similarly situated to [p]laintiffs and have been denied minimum wage and overtime compensation")). In contrast, where, as here, a plaintiff identifies "particular employees" and makes "specific allegations," courts are entitled to rely on those statements. *Id*. In the present case, there are 55 current or former employees who specifically attest to their own experience of not being paid minimum and overtime wages for work performed pre- and post-appointment. Because these examiners specifically attest to their own experiences, their declarations are entitled to the Court's consideration. Moreover, taken together, these

declarations provide sufficient indicia that Defendants did maintain a common practice, across their geographic locations.

The Court also rejects Defendants' claim that the declarations should not be considered because they are virtually identical. Defs.' Mem. at 18–19. Neither of the cases relied on by Defendants supports the assertion that the identically of declarations is a basis for not considering them. Rather, in *Feng v. Hampshire Times*, notwithstanding the fact that the declarations were virtually identical, the courts nonetheless considered the declarations but concluded that they did not provide "a sufficient factual basis on which to conditionally certify a FLSA collective action." No. 14-CV-7102 SHS JLC, 2015 WL 1061973, at *3 (S.D.N.Y. Mar. 11, 2015) ("The principal defect in these affidavits for collective certification is that not one Plaintiff affidavit purports a factual nexus with other putative employees of the Delgado network."). And in *Mendoza v. Casa de Cambio Delgado, Inc.*, the plaintiff there cited only to "a single umbrella-like affidavit," which the court found to be insufficient to make the modest factual showing that plaintiff was similarly situated to other employees. No. 07CV2579 (HB), 2008 WL 938584, at *2 (S.D.N.Y. Apr. 7, 2008).

To the contrary, the mere fact that there are "similarities between the affidavits submitted by [p]laintiff and the opt-in plaintiffs further indicates that they are 'similarly situated.'" *Vaughan v. Mortg. Source LLC*, 2010 WL 1528521, at *8 (E.D.N.Y. Apr. 14, 2010). The Court concludes that Plaintiff's declarations support an "identifiable factual nexus which binds" Plaintiff with the putative collective members, *Guzelgurgenli*, 883 F. Supp. 2d at 346 (quotation marks omitted), because all of the declarations aver that they were medical examiners who were paid only by appointment, but who "[i]n an average day, . . . spent a significant amount of time preparing for [their] appointments, traveling between appointments, and doing post-appointment

11

work," that they were "not compensated for any of [that] work," and that Defendants deliberately paid examiners this way to save themselves money. Doc. 515, Ex. 1 ¶¶ 8–10.

### c) Single Decision, Policy, or Plan

Finally, the Court rejects Defendants' claim that Plaintiff has not demonstrated that she and putative opt-in plaintiffs are victims of an identifiable policy or plan. Defs.' Mem. at 19. Defendants contend that this is so because Plaintiff has "not pointed to a written policy requiring her to work without compensation," and that Defendants' evidence demonstrates that no such written policy exists. *Id.* But such a claim, as framed by Defendants at this point in the litigation, is both legally and factually incorrect. It is legally incorrect because once a plaintiff has plead that they are victims of a policy or plan, "the FLSA does not require that a plaintiff identify a *formal*, facially unlawful policy before obtaining conditional certification of a collective action. To hold otherwise would allow employers to avoid FLSA collective action certification simply by promulgating compliant handbooks and policies, while letting their managers run roughshod over the FLSA's requirements." *Ansoralli v. CVS Pharmacy, Inc.*, 2017 WL 570767, at *2 (E.D.N.Y. Feb. 13, 2017) (emphasis added).

In any event, as a factual matter, although Plaintiff's declarations do not cite to any specific written policies, the declarations submitted on behalf of Plaintiff and other examiners do sufficiently allege they are victims of a common policy (even if not a formal, written one) pursuant to which examiners are paid only per-appointment, but are required to perform considerable work to prepare for and close-out those appointments. Plaintiff and the other examiners assert that they were not compensated for that work, and that as a result they were not paid minimum and overtime wages to which they were entitled. Indeed, those allegations are consistent with certain evidence proffered by Defendants indicating that they maintained a policy

requiring examiners to clock in upon leaving home and to clock out when returning. *See* Doc. 541, Ex. G at 4. This suggests that, as examiners contend, they were *not* permitted to remain clocked in while conducting pre- and post-appointment work. [7] Plaintiff's allegations and declarations are therefore more than sufficient to meet the "'modest factual showing' that [Plaintiff] and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Sbarro*, 982 F. Supp. at 261).[8]

### 2. Scope of Notice

Likewise, the Court finds that Plaintiff's request for nationwide conditional certification is warranted by Plaintiff's showing that examiners from across the country are subject to a

---

[7] As noted above, although examiners are required to clock in and out for certain work, they contend that they were not compensated on an hourly basis even for the hours that they recorded. Rather, they were paid a per-procedure rate for all exams to which they travelled, and paid an hourly rate, for the periodic, scheduled shifts they worked at health fairs or a client's office. *See* Compl. ¶ 81 ("Although Plaintiff's calls to the '800' number provide a record of her hours worked, she is not compensated on an hourly basis, but is instead paid at a fixed per-procedure rate."); *id.* ¶¶ 82–84 (noting that Plaintiff periodically works a scheduled shift at a health fair or at the location of a corporate client, and "[was] paid at an hourly rate" under those circumstances").

[8] Defendants also suggest that the Court should deny conditional certification because the inclusion of independent contractors prohibits Plaintiff from demonstrating that all putative collective members are similarly situated. *See* Defs.' Mem. at 17 ("Plaintiff cannot establish that examiners and contractors in the proposed nationwide collective are similarly situated."); 21 ("Plaintiff's declarations also do not detail (nor does Plaintiff's motion explain) why Contractors would be entitled to minimum wage or overtime in the first place."). Where a putative collective includes independent contractors who dispute that classification and aver that they are similarly situated to individuals classified as employees, their inclusion in the putative class does not defeat a motion for conditional certification. *See Balarezo v. NTH Connect Telecom, Inc.*, No. 07–5243, 2008 WL 1944116 (N.D. Cal. May 2, 2008) (rejecting similar argument on the basis that "[t]he fact that certain of those technicians may have to demonstrate that they improperly were categorized as independent contractors as part of proving their claims does not mean that they cannot be included in the same class with other technicians who were [classified as employees]"); *see also Meseck v. TAK Commc'ns, Inc.*, No. CIV. 10-965 JRT AJB, 2011 WL 1190579, at *5 (D. Minn. Mar. 28, 2011) (same). Here, the independent contractors who have submitted affidavits clearly dispute that classification. They aver that they were "treated like an employee" because Defendants exercised control over them, instructed them how to do their job, monitored their performance, prohibited them from forming their own relationships with individuals and insurance companies, and did not limit the duration of their working relationship, among other claims. *See e.g.*, Doc. 515, Ex. 1 (Declaration of independent contractor Cara Baines) ¶¶ 11–22. Accordingly, the Court concludes that independent contractors may be included in the proposed collective at the conditional certification stage.

nationwide policy that requires them to do work for which they are not compensated. This conclusion is supported by the considerable number of affidavits (55) submitted on behalf of examiners from 24 states. *See* Doc. 515, Ex. 1; *see, e.g.*, *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 404 (S.D.N.Y. 2012) (granting conditional certification of a nationwide class and noting "[o]ther courts have found plaintiffs to be similarly situated when they made common allegations that dual-edged policies [of limiting overtime and imposing a sales quota] . . . effectively required them to work uncompensated overtime"); *Raimundi v. Astellas U.S. LLC*, No. 10 Civ. 5240, 2011 WL 5117030, at *1 (S.D.N.Y. Oct. 27, 2011) (granting conditional certification of a nationwide class on the basis that "representatives nationwide held the same general job description and were exempt from overtime pay"). Moreover, as noted by Plaintiff, courts in this circuit have conditionally certified nationwide collectives supported by fewer affidavits representing far fewer geographic locations. *See* Pl.'s Mem. at 10 (citing *Varghese v. JP Morgan Chase & Co.*, 2016 WL 4718413, at *8 (S.D.N.Y. Sept. 9, 2016) ("Courts *routinely* grant conditional certification to a national class where evidence is presented from multiple employees from multiple locations nationwide.") (emphasis added; quotation marks and alterations omitted); *Guttentag v. Ruby Tuesday, Inc.*, No. 12 CV 3041 (HB), 2013 WL 2602521, at *2 (S.D.N.Y. June 11, 2013) (certifying nationwide FLSA collective over defendant's objection that a class of 115,009 individuals in 710 restaurants in 39 states was "too large and diverse" to be certified on basis of "individual declarations and depositions of Plaintiffs and opt-in Plaintiffs [from] eight different restaurants located in four different states"); *Tomkins v. Amedisys, Inc.*, No. 3:12CV1082 (WWE), 2014 WL 129407, at *2 n.1 (D. Conn. Jan. 13, 2014) (certifying nationwide FLSA collective where plaintiffs similarly alleged they were "compensated according to the pay-per-visit method and deprived of . . . proper overtime

compensation" and offered "declarations or deposition testimony from ten Clinicians who . . . worked in eight different states")). The fact that over 430 examiners from 43 states and the District of Colombia have already opted into this action, only strengthens this conclusion. *See e.g.*, Docs. 62–471, 474, 478–482. Accordingly, the Court conditionally certifies this nationwide FLSA collective action.

### 3. Form and Method of Plaintiff's Proposed Notice

Plaintiff requests that the Court (1) order Defendants to "produce an updated contact list of names, last known home addresses, telephone numbers (including cellular), work and personal e-mail addresses, work locations, and dates of employment for all Quest medical examiners nationwide;" (2) authorize Plaintiff's "counsel to distribute notice to putative collective members via regular mail and e-mail;" (3) authorize Plaintiff's counsel "to send a reminder notice via regular mail and e-mail half-way through the notice period;" (4) grant "examiners 90 days to join this action;" and (5) authorize Plaintiff's counsel to call potential collective members if their email and addresses are invalid. Pl.'s Mem. at 12–13. In response, Defendants oppose distribution of notice and raise objections to the form and method of the notice. For the reasons set forth below, the Court approves Plaintiff's proposed form and method of notice, but denies Plaintiff's request to compel Defendants to submit an updated contact list.

#### a) Opposition to the Distribution of Notice

In objecting to the distribution of notice, Defendants contend that Plaintiff has already improperly distributed nationwide notice and that the Court should therefore deny Plaintiff's request to "issue a new notice" at this juncture. Defs.' Mem. at 25; *see also id.* at 16. Although the Court does not endorse Plaintiff's prior communications with putative collective members, it concludes that those communications are not sufficient to bar Plaintiff's distribution of official

15

notice. As an initial matter, Defendants point to no case law supporting the assertion that communications with putative collective members provides a basis for denying distribution of a court approved notice. Rather, Defendants point to *Bouder v. Prudential Fin., Inc.*, a case in which the court granted a defendant's motion to cease and desist from distributing notice without properly filing a motion for conditional certification and receiving Court approval. No. CIV.A. 06-CV-4359DMC, 2007 WL 3396303, at *3 (D.N.J. Nov. 8, 2007). No such motion was filed by Defendants in this action. Moreover, the notice in *Bouder* was "deceptive, [and] misleading and contain[ed] numerous false statements." *Id.* Defendants do not assert that the communications here were misleading or contained false statements. Having reviewed Plaintiff's communications, the Court is persuaded that the initial communication was not an unauthorized notice soliciting putative collective members to join the action, nor does it contain misleading or false statements. Doc. 571, Ex. 1 (expressly stating that "[t]his is not a solicitation" and seeking to ask individuals "questions about [their] experience with Quest/ExamOne").

That being said, the Court notes that Plaintiff's subsequent communications are not consistent with the FLSA's conditional certification process. Although the second email communication also stated that it was not a solicitation, in substance it strongly encouraged putative collective members to join the litigation. Doc. 572, Ex. 2 ("[Y]ou are free to join the lawsuit if you like. We obviously welcome your participation. Joining the lawsuit only requires you to complete a simple half-page form. Significantly, the statute of limitations continues to run on your claims until you join this lawsuit or decide to file another action of your own. So, it is to your advantage to join this action or file a separate complaint as soon as possible if you are interested in pursuing your claims."). Plaintiff subsequently sent opt-in forms to individuals they

16

believed were similarly situated. *Id.* Ex. 3. The dissemination of such communications prior to the Court's approval of notice is improper. Nothing in Magistrate Judge Fox's or this Court's rulings ordering Defendants to produce the contact information of potential collective members granted Plaintiff permission to distribute opt-in forms to those individuals. *See* Docs. 572 ¶ 2; 59. And, indeed, in their letter requesting the production of contact information, Plaintiff's counsel assured the Court that they did not seek employee contact information to solicit additional plaintiffs. Doc. 45 at 3 (noting that "[w]hile [Quest has] speculated that the list might be used for impermissible solicitation purposes, there is no basis at this time to believe that the process will be abused"). Plaintiff's counsel is therefore admonished as to the impropriety of such behavior, and should ensure it does not occur again.

### b) Objections to the Form and Method of Notice

Defendants contend that the form and method of notice are improper because it (1) does not sufficiently describe their defenses; (2) contains an "overly lengthy" 90 day opt-in period; (3) requests e-mail notice; (4) requests a reminder half-way through the opt-in period; (5) requests permission to call collective members for whom home and e-mail addresses are invalid; and (6) insufficiently defines the class and class period. Defs.' Mem. at 25.

The proposed notice contains only a brief recitation of Plaintiff's position. Doc. 515, Ex. 2. Thus, the Court concludes the statement that "Quest denies that it has violated the FLSA" is sufficient. *See Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009) (finding virtually identical statement sufficient in view of plaintiff's brief explanation of its case). Likewise, given the potential size of this nationwide collective, the Court concludes that the 90-

day opt-in period, email notice, and phone calls where mail and email addresses are invalid,[9] is appropriate. *See Varghese v. JP Morgan Chase & Co.*, No. 14 CIV. 1718 (PGG), 2016 WL 4718413, at *9 (S.D.N.Y. Sept. 9, 2016) (authorizing 90-day notice period for nationwide collective, concluding that "courts in this district have found . . . email notice in addition to notice by first class mail is entirely appropriate," finding phone calls appropriate where other means of contact are unavailable, and finding reminder notice appropriate); *Chhab v. Darden Restaurants, Inc.*, No. 11 Civ. 8345 NRB, 2013 WL 5308004, at * 16 (S.D.N.Y. Sept. 20, 2013) (finding "reminder notice is appropriate" because it was consistent with purpose of FLSA); *Sherrill v. Sutherland Glob. Servs., Inc.*, 487 F. Supp. 2d 344, 351 (W.D.N.Y. 2007) (finding 90 day notice period appropriate). Finally, Defendants have offered no basis for concluding the class is insufficiently defined, and the Court approves the definition and class period as set forth in Plaintiff's brief: "All persons who were employed directly by Defendants as Mobile Examiners (or similar job position), whether designated as independent contractors or employees, at any time in the three years prior to the filing of this Complaint." Pls. Mem. at 11–12 (emphasis omitted). Counsel for Plaintiff must therefore amend the notice to reflect this class definition prior to distributing it. The Court, however, denies Plaintiff's request for updated contact information. As noted above, counsel for Plaintiff has already received the contact information for potential opt-in plaintiffs and reached out to them, and approximately 430 plaintiffs have already opted in. Under these circumstances the Court sees no basis for imposing any additional production obligations on Defendants.

---

[9] Some courts in this district have rejected plaintiffs' requests to call potential opt-in plaintiffs out of a concern for disclosing personal information. *See Michael v. Bloomberg L.P.*, No. 14 Civ. 2657 (TPG), 2015 WL 1810157, at *4 (S.D.N.Y. Apr. 17, 2015) (noting that "privacy concerns have precluded courts from ordering the disclosure of certain personal information, including telephone numbers"). That concern does not arise in the context of this motion, where Defendants have already disclosed employee contact information, including employee phone numbers.

## III. CONCLUSION

Accordingly, the Court GRANTS Plaintiff's request for conditional certification of her FLSA collective action and approves the notice, as set forth above. The Clerk of Court is respectfully directed to terminate the motion, Doc. 513.

SO ORDERED.

Dated: April 30, 2018
        New York, New York

                                                                                                Edgardo Ramos, U.S.D.J.