# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARIA VECCHIO, individually, and on
behalf of all others similarly-situated,

Plaintiff,

vs.

QUEST DIAGNOSTICS INC.,
EXAMONE WORLD WIDE, INC., and
EXAMONE LLC,

Defendants.

No. 1:16-cv-05165-ER-KNF

# DECLARATION
# OF
# STEPHANIE PLANCICH, PH.D.

September 9, 2019



# Table of Contents

I.      Summary of Assignment and Opinions ............................................................. 3

II.     Qualifications ..................................................................................................... 4

III.    Materials Relied Upon ........................................................................................ 4

IV.     Estimation of Hours Worked and "Effective Wages" ..................................... 5

V.      Methodology for Calculation of Damages ........................................................ 7
V.1.    Minimum Wage ...................................................................................................... 7
V.2.    Overtime ................................................................................................................. 8
V.3.    Other Damages ....................................................................................................... 8

VI.     Illustration of Methodology: Estimated Damages for Named Plaintiff Maria
        Vecchio ................................................................................................................. 9

VII.    Conclusion .......................................................................................................... 10

# I.   Summary of Assignment and Opinions

1.      I understand that Plaintiffs in the above-captioned litigation allege that ExamOne World Wide, Inc., ExamOne LLC, and Quest Diagnostics, Inc. (collectively, the "Defendants") failed to:

- pay minimum wage;
- pay overtime;
- pay spread-of-hours pay;
- reimburse for necessary business expenses, and
- accurately calculate hours worked,

under the FLSA, New York Labor Law, and New York Codes, Rules and Regulations.[1]

2.      I was asked by counsel for Plaintiffs to review pay records and selected deposition testimony in order to determine whether a methodology could be developed to calculate class-wide damages associated with Plaintiffs' allegations, assuming the Court finds the Defendants liable.

3.      Based on a review of the available data, I find that a reliable methodology can be used to identify Federal and New York minimum wage violations for class members.  Similarly, overtime hours can be estimated for the proposed class.  Using these estimates, damages can be calculated on a class-wide basis.[2]

4.      As an illustration, I have estimated preliminary alleged minimum wage, overtime, and other damages for the named Plaintiff, Maria Vecchio.

---

[1] Plaintiffs allege failure to pay minimum wage under the FLSA (§ 206) and NYLL (§ 652); failure to pay overtime under the FLSA (§ 207), NYLL (§ 652), and NYCRR (12 § 142-2.2); failure to pay spread-of-hours pay under NYLL (§ 652) and NYCRR (12 § 142-2.2); and failure to accurately calculate hours worked under NYLL (§ 195).

[2] Given the available data we have reviewed, we have not developed an estimate of aggregate damages associated with unpaid business expenses.  If we receive additional data related to such expenses, we may be able to develop a damages estimate in the future.

## II.   Qualifications

5.      I am an Associate Director at NERA and have been with the firm since 2002. Before joining NERA, I earned a B.Sc. in Economics from the London School of Economics, University of London, and a Ph.D. in Economics from the Massachusetts Institute of Technology ("MIT"). My graduate education included coursework in microeconomics, macroeconomics, and econometrics, with focus areas in labor economics and public finance. At NERA, I have estimated alleged damages in cases alleging wage and hour violations, discrimination, and wrongful termination. I have also worked on regulatory and litigation matters related to ERISA.

6.      My C.V., including my most recent four years of testimony and ten years of publications, is included as Exhibit A.

7.      NERA is being compensated for my time in this matter at an hourly rate of $680. Members of my team who have provided assistance in this matter are being billed by NERA at their customary hourly rates. Neither NERA's compensation, nor my own, is in any way contingent upon the outcome of this proceeding. Throughout this report, I have used the terms "I" and "my" to refer to work performed by me and/or others under my direction.

## III.   Materials Relied Upon

8.      In preparing this report, I relied upon the following materials:

a.  Service register data for a sample of 13 employees—for each pay period, an employee's service register includes the service type, service date, and paid amount of service;

b.  Deposition testimony and exhibits from 12 employees, describing the time they spent pre, during and post appointments;

c.  Pay schedule for services performed (the "Pay Schedule"), with reported hourly rate, attached as Exhibit 8 to the Deposition of Michelle Dunn;

d.  Electronic time punch records for 85 employees, "Time Punches.xlsx," which we understand were not used to calculate compensation for employees;

e.  Complaint, *Maria Vecchio v. Quest Diagnostics Inc., ExamOne World Wide, Inc., and ExamOne LLC*, dated June 29, 2016; and

4

f.   Federal and New York statutes, including FLSA (29 U.S.C. §§ 206-207), New York Labor Law (NYLL) (§§ 195, 652), and New York Codes, Rules and Regulations (NYCRR) (12 § 142).

9.   A full list of Materials Relied Upon is attached as **Exhibit B.**

## IV.   **Estimation of Hours Worked and "Effective Wages"**

10.   Plaintiffs worked as Mobile Examiners ("Examiners"), performing physical examinations and basic lab work at the homes or businesses of customers.  Defendants would assign some number of appointments to each Examiner each work day.  For each appointment, the Examiner would be required to perform one or more services or procedures, *e.g.*, drawing blood, taking physical measurements, and conducting cognitive tests.

11.   Plaintiffs were compensated for each service performed at each appointment according to the Pay Schedule, but they were not explicitly compensated for time spent traveling between appointments or for the paperwork and lab work required before or after their appointments.

12.   To identify days on which Plaintiffs failed to earn the minimum wage, or weeks in which they worked overtime, I developed a methodology to estimate hours worked for each Plaintiff.  The steps we followed are:

a.   Estimate the time spent performing services:  Plaintiffs were compensated for each service according to a rate schedule.  In the Pay Schedule, a base hourly rate of $13.97 is reported.  Dividing the compensation for each service by this hourly rate, number of hours each service is estimated to take according to Defendants' compensation structure is calculated.  *See* **Exhibit C**.

b.   Estimate the time spent pre-appointments and post-appointments:  Plaintiffs allege that they spent time before their first appointment contacting prospective clients and preparing paperwork.[3]  After their last appointment, Plaintiffs spent additional time completing and uploading paperwork, processing and packaging specimens, and mailing the results per the instructions of each insurance

---

[3] For testimony that includes contacting prospective clients, *see* "Deposition of Lisa Hughes," pp. 33-35; and "Deposition of Brittany Wood," pp 19, 22. For testimony that includes printing and organizing paperwork, *see* "Deposition of Latrilla Cassey," pp. 18-19; and "Deposition of Maria Vecchio," pp. 50-53.

company.[4]  I understand that there are no electronic records of this time worked. Given that there is no available electronic or other data recording this work time, I have relied on the testimony of a selection of Plaintiffs to estimate pre- and post-appointment time.[5]  Specifically, 12 depositions were carefully reviewed and all estimates of pre- and post-appointment activities and corresponding time estimates from the deponents were coded.[6] *See* **Exhibit D** for a summary of the coding results.  Using this data, I can estimate the average amount of time spent pre- and post-appointment.[7]

c.  Estimate the time spent traveling between appointments:  Similarly, at this time, I understand that no records exist to systematically record the travel time between appointments for Examiners.  Consequently, the estimated travel time between appointments has been coded from Plaintiffs' testimony, and the average travel time is calculated based on this coded data as an estimate (**Exhibit D**).  Only the time spent between each appointment is included, not time spent traveling to the first appointment or home from the last appointment of the day.  If it appears from the service register data that multiple appointments are likely at the same location (*e.g.*, a husband and wife), this is counted as one appointment for the purpose of estimating travel time.

d.  Estimate total time worked:  Each Plaintiff has electronic records in his or her service register data reflecting the number of appointments and services performed each work day—I have received a selection of this data for 13 Plaintiffs.  Using this data and the time estimates calculated from Defendants' Pay Schedule, the Examiner-specific time spent on services can be calculated for each day.  To this estimate, the average pre- and post-appointment time estimates, as well as average travel time to each appointment, can be added based on the coded Plaintiffs' testimony.  These calculations are Plaintiff- and day-specific, based on the number of appointments each day.

---

[4] For testimony that includes completing paperwork, *see* "Deposition of Reshondra Parks," pp. 52-54. For testimony that includes processing and shipping specimens, *see* "Deposition of Crystal Broady," pp. 18-19, 27, 53-55; and "Deposition of Maria Vecchio," pp. 23, 64, 68-69, 97.

[5] Punch records were provided for some employees, which I understand are generated from a telephone-based system (Examiners call the system to "punch in" and "punch out" for the day).  I understand from counsel and from review of Plaintiffs' testimony that this system was not used for compensation and did not systematically capture Examiners' pre- and post-appointment time worked.  Some Examiners testified that they did not punch in every day they worked, and this inconsistent pattern of punches is observed in the electronic records (*See*, "Deposition of Alexis Harris," pp. 67-69; and "Deposition of Reshondra Parks," pp. 71-83).  Consequently, I do not find this punch data to be a reliable estimate of time worked and so do not rely on it in any analysis.

[6] The testimony of all the Examiners made available to us at this time is included in this analysis.  If additional testimony is provided, I can update the analysis to incorporate such testimony.  I understand that the deposed Plaintiffs are not necessarily a random sample of all class members, but counsel has informed me that Courts have accepted the use of selected testimony as the basis for calculation of damages when no other records exist (*See*, *Reich v. New Eng. Telecomms. Corp.*, *Indergit v. Rite Aid Corp.*, and *Hernandez v. NJK Contrs., Inc.*).  If requested, I could design a random sample/questionnaire of class members as an alternative method to estimate time worked.

[7] There is variability in Plaintiffs' estimates of time worked.  Our methodology is based on the average of the estimated ranges.  As a sensitivity test, estimates could alternatively be calculated based on the median estimates (where the median represents the midpoint of the data, and so is not affected by low or high "outlier" observations), if requested by the Court.

13.     After estimating the hours worked for each Plaintiff on each work day, the following statistics can be calculated:

      e.  <u>Weekly hours worked</u>: For each Plaintiff, I have or can obtain electronic data for all days worked. I can estimate the hours worked each day and sum this up by week. Then, I can calculate whether each Examiner has worked more or less than 40 hours each week.

      f.  <u>"Effective wage" rate</u>: From the service registers data, I know the total amount of dollars paid to each Plaintiff. This includes the amounts paid for services performed, and it may include other "flat" payments such as bonus or "no show" payments.[8] By adding up all payments made per day and week and dividing by the estimated hours worked per day and week, the daily and weekly "effective wage" rates can be calculated.[9]

## V.     Methodology for Calculation of Damages

14.     Using the calculated hours worked each day and week as described above, as well as the calculated "effective wage" rate, damages can be calculated for the class.

### V.1.     Minimum Wage

15.     For each day and week worked, I can determine whether each Plaintiff received the Federal minimum wage by comparing the "effective wage" as described above to the statutory requirement of $7.25.[10]

16.     Similarly, for New York Plaintiffs, the daily and weekly "effective wage" can be compared to the New York state statutory requirements. These New York minimums changed over time: $8.00 for 2014, $8.75 for 2015, $9.00 for 2016, $11.00 for 2017, $13.00 for 2018, and $15.00 after 2018.[11]

---

[8] This includes service types such as "Discretionary P", "No Show", and "Performance Fee", which do not add to hours worked. However, "No Show" services are considered appointments with travel time and pre- and post-appointment time.

[9] In addition to performing mobile examinations, some Plaintiffs also had days for which they received an hourly rate, *e.g.*, for working at health fairs. In the data reviewed, Plaintiffs always received either $25.00 or $13.97 when paid hourly. I have included this hourly compensation in the calculation of effective wages.

[10] *See,* FLSA § 206.

[11] *See,* NYLL § 652. The minimums for 2017, 2018, and 2019 refer to New York City employers with 11 or more employees.

17.     After identifying the weeks in which the Plaintiffs were paid less than the applicable minimum wage, I can calculate the difference between their "effective wage" for that week and the applicable statutory minimum rate. This difference multiplied by the number of hours worked in that week is a formulaic measure of minimum wage damages that can be computed on a class-wide basis.

## V.2.     Overtime

18.     For each week worked, each Plaintiff's total hours of work can be estimated as described above. I can identify all weeks in which each Plaintiff worked more than 40 hours. For these weeks, I can calculate the number of hours over 40 worked.

19.     Uncompensated overtime can then be computed formulaically, as directed by the Court.[12] For example, we can apply the formula:

*Maximum ["effective wage" or statutory minimum wage] \* 0.5 \* (Hours worked over 40) = Uncompensated Overtime,*

for each Plaintiff and week.

## V.3.     Other Damages

20.     Other damages potentially include spread of hours payments for Plaintiffs in New York State. In New York, the law requires that an employee shall receive one hour's pay at the basic minimum hourly wage rate, for any day in which the spread of hours exceeds 10 hours.[13]

21.     For each day worked, each Plaintiff's total hours of work can be estimated as described above. Using these estimates, I can identify all days in which each Plaintiff worked more than 10 hours, and, for each of these occurrences, I can sum up an hour of pay at the statutory minimum wage under the New York Labor Law to calculate damages formulaically.

---

[12] No overtime compensation is recorded in any of the service registers data provided. In addition, Plaintiffs testify that they did not receive any overtime compensation. For example, deponents who testify to working more than 40 hours per week (*See,* "Deposition of Latrilla Cassey," pp. 64-65; and "Deposition of Kenneth Pomerantz," p. 58) also testify that they never received overtime compensation (*See,* "Deposition of Latrilla Cassey," p. 66; and "Deposition of Kenneth Pomerantz," p. 70).

[13] *See,* 12 NYCRR §§ 142-2.4, 142-2.18.

22.     In addition, to the extent that the Court determines that there are any statutory penalties associated with each minimum wage or overtime violation, the dollar amount of these penalties can be computed using the same underlying data.

23.     I understand that Plaintiffs also allege that they were not reimbursed for out-of-pocket business expenses. While there is some deposition testimony about such expenses, at this time I do not have sufficient data to estimate aggregate unreimbursed expenses on a class-wide basis. To the extent that these expenses are not included in estimated damages, damages would tend to be understated. If additional data on expenses is provided, these could be incorporated into an estimate of aggregate damages.

## VI.    Illustration of Methodology: Estimated Damages for Named Plaintiff Maria Vecchio

24.     As an illustration of the feasibility of this proposed damages methodology, hours worked and "effective wage" for named Plaintiff Maria Vecchio are estimated using the steps described above. Using these estimates, Ms. Vecchio's damages can be calculated.

25.     Maria Vecchio worked a total of 109 weeks over the period August 2014 through September 2016. Her average weekly effective wage during this time is $11.56 per hour, with weekly effective wages ranging from $8.70 to $22.34. She is estimated to have worked approximately 37 hours per week on average, with weekly hours ranging from 1 hour to 72 hours.[14] *See* **Figure 1** and **Figure 2**.

26.     Based on these estimated weekly hours worked and her weekly "effective wage", we calculate:

- Maria Vecchio had three weeks with New York state minimum wage violations, or 3% of weeks worked. The difference between minimum wage and "effective wage" ranges

---

[14] Using the median exam estimates, her average weekly effective wage is $12.19 per hour, and she is estimated to have worked approximately 35 hours per week on average.

from \$0.02 to \$0.05.  Estimated minimum wage damages are approximately \$5. [15] *See* **Figure 3**.

- Ms. Vecchio worked overtime for 44 weeks—in other words, she had overtime hours for 40% of all her weeks worked.  For these overtime weeks, she worked on average 55 hours a week, approximately 15 hours in excess of a regular 40 hour-work week.  Calculating damages according to the formula described above, estimated overtime damages are approximately \$3,527.  *See* **Figure 4**.

- Ms. Vecchio is estimated to have worked in excess of 10 hours for 145 out of the 422 days she worked.  For these days, Ms. Vecchio was not compensated accurately under the New York State labor law.  Estimating these other damages using the formula described above, Ms. Vecchio is owed approximately \$1,494 in association with the New York spread of hours violation.  *See* **Figure 5**.

27.    Including damages for minimum wage, overtime and spread of hours, gives total estimated damages for Plaintiff Maria Vecchio of approximately \$5,025.

## VII.  Conclusion

28.    Plaintiffs allege that, as Mobile Examiners employed by the Defendants, they were not compensated for time spent performing work pre- and post-appointment and were not compensated for time spent traveling between appointments.  When this work is taken into consideration, they allege that Defendants failed at times to pay the Federal and/or New York State minimum wage and failed to compensate Plaintiffs for overtime work.

29.    Should the Court conclude that such violations occurred, I find that estimates of effective wages earned and hours worked can be calculated for each Plaintiff using the available data.  Although no electronic records were maintained by the Defendants of the time spent pre- or post-appointment, or for travel between appointments, testimony of Plaintiffs can be used to estimate an average time spent on this work, which can be combined with individual service register and payment data to formulaically calculate alleged minimum wage, overtime, and other alleged damages for each class member.

---

[15] Note that Ms. Vecchio does not have Federal minimum wage violations.

30.     My opinions and conclusions as expressed in this report are to a reasonable degree of professional certainty.  My work is ongoing, and my opinions will continue to be informed by any additional material that becomes available to me.

31.     I declare under penalty of perjury under the laws of the United States that the foregoing report is a true and correct summary of my opinions.

Stephanie Plancich
September 9, 2019

11

Exhibit A

# STEPHANIE PLANCICH
## ASSOCIATE DIRECTOR

## Education

**Massachusetts Institute of Technology**
Ph.D., Economics, 2002

**London School of Economics, University of London**
B.Sc., Economics (Hons. First Class), 1995

## Professional Experience

| | |
|---|---|
| 2012- | **NERA Economic Consulting**<br>Associate Director/Vice President |
| 2005-2012 | Senior Consultant |
| 2002-2005 | Consultant<br>Responsible for projects in the areas of securities and finance and mass torts. |
| 2000-2002 | **Massachusetts Institute of Technology**<br>Teaching Assistant<br>Taught undergraduate courses in macroeconomics and microeconomic theory. |
| 1999 | **National Bureau of Economic Research**<br>Research Assistant<br>Analyzed life insurance and actuarial data for Professor Jeffrey Brown, John F. Kennedy School of Government, Harvard University. |
| 1996-1998 | **SAFECO Mutual Funds**<br>Dealer Services Analyst, Registered Shareholder Services Representative (passed Series 6 and 63 exams)<br>Facilitated transactions between Funds and large broker-dealer clients.  Provided customer service to shareholders, with a special emphasis on individual retirement plans. |

## Testimony and Reports (4 years)

Expert Report before the United States District Court, Central District of California *in Collin Shanks et al. v. Jarrow Formulas, Inc.*, August 2019.

Expert Report for Defendants in a confidential arbitration under the Center for Public Resources Rules for Non-Administered Arbitration, New York, New York, November 2018.

Rebuttal reports before the Superior Court of New Jersey Law Division, Bergen County in *Raymond Bailey et al., v. Time Warner Cable Enterprise, LLC*, March 2018.

Deposition and Rebuttal report, in the US District Court, Eastern District of New York in *Oded Greenberg, M.D., v. State University Hospital-Downstate Medical Center, et al.*, February/March 2017.

Rebuttal Report in the Supreme Court of the State of New York County of Kings in *Fashawn Cohen, v. State of New York, Department of New York Correctional Services*, September 2016.


## Publications and Presentations (10 years)

"Trends in Wage and Hour Settlements: 2015 Update," (co-author) NERA Publication, July 2015.

"Cutting Edge Issues in Age Discrimination and the Aging Workforce," panel discussion at the *8th Annual Labor and Employment Law Conference*, hosted by the ABA Section of LEL: Los Angeles, CA. November 2014.

"Product Liability for 2014 and Beyond," hosted by The Knowledge Congress, a web-based broadcast, New York, New York, September 2014.

"Consumer Class Action Settlements: 2010 – 2013 – Settlements Increasing, With a Focus on Privacy," (co-author) NERA Publication, June 2014.

"Trends in Wage and Hour Settlements: 2013 Update," (co-author) NERA Publication, November 2013.

"Trends in Wage and Hour Settlements: 2012 Update," (co-author) NERA Publication, March 2013.

"Current Use of Economic Analyses in Class Certification," presented at Seyfarth Shaw LLP, Boston, Massachusetts, December 2012.

"Economic Analyses of Suitability Claims," as part of a panel titled, "The New FINRA Suitability Rule: Implementation, Enforcement, and Litigation," presented at the Dorsey & Whitney LLP, Securities and Financial Services Fall Conference, Minneapolis, MN, November 2012.

"Wage and Hour Litigation in Canada: Use of Statistics in Class Certification Analyses," presented at International Employment Law: A 2012 Perspective, hosted by The Knowledge Congress, a web-based broadcast, New York, New York, October 2012.

"National Trends in Asbestos Litigation," a panel discussion presented at the Asbestos Litigation Conference: A National Overview and Outlook Credit Crisis, San Francisco, California, September 2012.

"Damage Estimation in Wrongful Termination Cases: Impact of the Great Recession," (co-author), NERA Publication, March 2012.

"Trends in Wage and Hour Settlements: 2011 Update," (co-author), NERA Publication, March 2012.

"Understanding and Mitigating the Influence of Gender Differences in Negotiation Effectiveness," presented at Jackson Lewis LLP, Chicago, Illinois, January 2012.

"Trends in Mass Torts Litigation, Through 2011 and Beyond," presented at The Product Liability and Environmental Law Seminar, hosted by McGivney & Kluger, P.C., New York, NY, October 2011.

"Samples and Surveys in Wage and Hour Litigation," presented at Winston & Strawn LLP, Chicago, Illinois, June 2011.

"2011 and Beyond: Predicting Mass Tort Litigation, Focus on Pharmaceutical Torts," presented at EECMA Spring 2011 Meeting and Conference, hosted by the Emerging and Environmental Claims Managers Association, Captiva Island, FL May 2011.

"Recent Trends in Wage and Hour Settlements," (co-author), NERA Publication, March 2011.

"Trends 2010 Mid-Year Study: Filings Decline as the Wave of Credit Crisis Cases Subsides, Median Settlement at Record High," (co-author), NERA Publication, July 2010.

"Using Statistics in Wage and Hour Litigation," presented at Paul Hastings, June 2010.

"The Economic Impact of New MMSEA Regulations," (co-author) published in *Law360*, April 14, 2010.

"Securities Litigation in the Crisis: Focus on Regulatory Action and Financial Firms," presented at the Ross Institute Roundtable, Stern School of Business, New York University, March 2010.

"Trends in Securities Class Action Litigation," presented at Bank of America, March 2010.

"Recent Trends in Securities Class Action Litigation: 2009 Year End Update," (co-author), NERA Publication, December 2009.

"Class Certification in Wage and Hour Litigation: What Can We Learn from Statistics?" (co-author), NERA Publication, November 2009.

"Empirical Issues in Wage and Hour Litigation: The New Era," presented at O'Melveny & Myers, August 2009.

August 2019

**Exhibit B**

**Materials Relied Upon**

– Complaint, *Maria Vecchio, individually, and on behalf of all others similarly-situated, Plaintiff, against Quest Diagnostics Inc., ExamOne World Wide, Inc., and ExamOne LLC, Defendants*, United States District Court for the Southern District of New York, June 29, 2016, Case No. 1:16-cv-05165-ER-KNF.

– Testimony and Exhibits of Maria Vecchio.

– Testimony and Exhibits of Michelle Dunn.

– Testimony and Exhibits of Reshondra Parks.

– Testimony and Exhibits of Alexis Harris.

– Testimony and Exhibits of Savanna Thomas.

– Testimony and Exhibits of Crystal Broady.

– Testimony and Exhibits of Lisa Hughes.

– Testimony of Kenneth Pomerantz.

– Testimony and Exhibits of Kendra Whiteside Fantroy.

– Testimony and Exhibits of Brittany Wood.

– Testimony of Latrilla Cassey.

– Testimony of Eulanda Ellis.

– Fair Labor Standards Act of 1938, As Amended, U.S. Code, Title 29, §§ 206-207.

– New York Labor Laws, Article 6, § 195.

– New York Labor Laws, Article 19, §§ 651-652.

– New York Codes, Rules and Regulations, Title 12, § 142.

– *Hernandez v. NJK Contrs., Inc.*, United States District Court for the Eastern District of New York, May 1, 2015, Case No. 09-CV-4812 (RER).

– *Indergit v. Rite Aid Corp.*, United States District Court for the Southern District of New York, June 17, 2014, Case No. 08 Civ. 9361 (JPO).

– *Reich v. S. New Eng. Telecomms. Corp.*, United States Court of Appeals for the Second Circuit, July 31, 1997, Docket Nos. 95-6207 (L), 95-6239 (CON).

– Electronic Data:

   o Service Registers Data for Latrilla Cassey, "QUEST011410.XLS" - "QUEST011429.XLS".

- o  Service Registers Data for Michelle Dunn, "QUEST011501.XLS" - "QUEST011518.XLS".

- o  Service Registers Data for Mary Hough, "QUEST011927.XLS" - "QUEST012012.XLS".

- o  Service Registers Data for Lisa Hughes, "QUEST012013.XLS" - "QUEST012118.XLS".

- o  Service Registers Data for Sallie Laurel, "QUEST012236.XLS" - "QUEST012257.XLS".

- o  Service Registers Data for Melinda Miller, "QUEST012531.XLS" - "QUEST012596.XLS".

- o  Service Registers Data for Dana Orange-Champion, "QUEST012806.XLS" - "QUEST012832.XLS".

- o  Service Registers Data for Reshondra Parks, "QUEST012833.XLS" - "QUEST012892.XLS".

- o  Service Registers Data for Kenneth Pomerantz, "QUEST013062.XLS" - "QUEST013079.XLS".

- o  Service Registers Data for Marci Rasco, "QUEST013084.XLS" - "QUEST013169.XLS".

- o  Service Registers Data for Teri Skelton, "QUEST013464.XLS" - "QUEST013498.XLS".

- o  Service Registers Data for Maria Vecchio, "QUEST013796.XLS" - "QUEST013849.XLS".

- o  Service Registers Data for Janet Wehrli, "QUEST013964.XLS" - "QUEST014057.XLS".

- o  "Time Punches.xlsx".

- o  List of Plaintiffs, "1.Master List 7.24.2019 with addresses.xlsx".

**Exhibit C**
**Estimated Hours to Perform Service According to Defendants' Pay Schedule**

| Service | Estimated Hours to Perform Service [1] |
|---|---|
| (1) | (2) |
| 2 Day Urine | 0.92 |
| Auth form specl | 0.13 |
| B/P Recheck | 0.88 |
| Blood & EKG | 1.76 |
| Blood Draw | 0.98 |
| Blood NO UA | 1.03 |
| Blood Pressure | 0.93 |
| Blood w/stats | 1.29 |
| Cloc+OAS W/Serv | 1.17 |
| Consent Form | 0.13 |
| DBS no urine | 0.87 |
| Doc 16 pages | 0.17 |
| Document Handle | 0.17 |
| Drug Screen UA | 1.01 |
| DWR & TUG | 1.08 |
| EKG | 1.50 |
| Ekg Bld Stats | 1.87 |
| EMST Cognitive | 1.33 |
| Emst LTC Par Bd | 2.19 |
| Emst para blood | 1.92 |
| Ind FingerSt | 1.03 |
| LEV1 w/service | 1.17 |
| LEV2 w/service | 1.17 |
| LTC Para&Blood | 1.49 |
| MA Blood UA Mea | 1.16 |
| Measurment Form | 0.51 |
| Mob Assessment | 0.83 |
| Older Age supl | 1.04 |
| Para & Blood | 1.34 |
| Para & EKG | 1.88 |
| Para & Saliva | 1.26 |
| Para Bld UA E | 2.22 |
| Para Blood Ua | 1.40 |
| Para EKG BD E | 1.98 |
| Para Exam | 1.21 |
| Para w/HOS | 1.32 |
| ParaEkg UA | 1.94 |
| ParaEkgBlood | 2.15 |
| ParBldUAGuag | 1.64 |
| PhysicalMeasure | 0.88 |
| Questionnaire | 0.13 |
| repeat blood dr | 1.03 |
| Saliva Test | 0.95 |
| Saliva/Stats | 1.08 |

**Exhibit C**
**Estimated Hours to Perform Service According to Defendants' Pay Schedule**

| Service | Estimated Hours to Perform Service [1] |
|---|---|
| (1) | (2) |
| SC Blood Stand | 1.03 |
| SC Blood Ua | 1.03 |
| Short Form | 1.05 |
| ShrtForm&Bd | 1.58 |
| Signature | 0.77 |
| Urine Only | 0.88 |
| Urine Recheck | 0.88 |
| Urine w/Stats | 1.05 |
| WCL ADL w/serv | 1.17 |
| WCL CLOX w/serv | 0.82 |
| Weight recheck | 0.88 |

**Notes and Sources:**

- Pay schedule for various services performed (the "Pay Schedule"),
  with reported hourly rate of $13.97, were attached as Exhibit 8 to the Deposition of Michelle Dunn.
  To calculate the estimated hours to perform each of the specified services, the fee for the specified
  service is divided by the hourly rate.

Exhibit D

Estimates for Work Performed by Mobile Examiners in Deposition Testimony[1]

| Mobile Examiner (1) | Deposition Date (2) | Branch Office (3) | Number of Appointments[2] Per Day (count) (4) | Pre-Appointment Time Per Appointment (minutes) (5) | Pre-Appointment Time Per Day (minutes) (6) | Post-Appointment Time Per Appointment (minutes) (7) | Post-Appointment Time Per Day (minutes) (8) | Travel Time Between Appointments (minutes) (9) |
|---|---|---|---|---|---|---|---|---|
| Broady, Crystal[3] | March 28, 2019 | Alpharetta, GA | 1, 4, 4-6, 5 | - | 30-60 | 90, 90-120, 120] | - | 15-20 |
| Casey, Latrilla | April 2, 2019 | Plano, TX | 1, 1-20, 2, 10-12 | 30-60 | 240-300 | 180 | - | 30-60 |
| Dunn, Michelle | February 23, 2019 | New York, NY | 5-6, 6 | [60, 120-180 | - | [60, 120-180 | - | [10-20, 30-40, 60] |
| Ellis, Eulanda | April 2, 2019 | Fort Worth, TX | 1, 100] | 60 | 15-30, 30-60-120, 120] | 120-240 | [60, 240, 240-300] | - |
| Harris, Alexis | February 26, 2019 | Towson/Lutherville, MD | [1-2, 9] | [30, 60-90, 120] | - | [30, 120] | - | 10, 15, 60 |
| Hughes, Lisa | March 28, 2019 | Lutherville, MD; Alpharetta, GA; VA | 1, 1-2, 4, 6 | 15-60 | 120-180, 180-240, 360 | [15, 60 | 180-240 | [6, 10-15, 20-30, 30-45, 45-50 |
| Parks, Reshondra | February 25, 2019 | Rockville, MD; Fairfax, VA | 1, 3, 4-5, 5, 6-7, 10-15] | 15 | 90 | 15, 30, 60, 90 | 120-180, 150, 240] | 15 |
| Pomerantz, Kenneth | March 28, 2019 | Alpharetta, GA | 1, 1-2, 2, 3, 5-6 | [30, 60, 60-120, 150] | [120, 180 | 20, 45-60, 60 | 120 | 15, 20-60, 27 |
| Thomas, Savanna | March 27, 2019 | Alpharetta, GA | 1, 4-5] | - | - | [60-90, 180] | - | 10-15 |
| Vecchio, Maria | February 22, 2019 | New York, NY | 2-4, 10, 10-12 | 15 | 20-25-30, 30-60, 120] | 15-30 | 60, 120-180 | 10, 10-15, 15-30, 30, 30-45 |
| Whiteside Fantroy, Kendra | April 1, 2019 | Red Oak, TX; Plano, TX | 1, 3-4 | - | - | 60-120 | - | 15-20 |
| Wood, Brittany | April 1, 2019 | Plano, TX | 1, 3, 5-6 | [10, 30-45 | - | 30-45-60 | 150-180, 180-240] | 5-25, 45 |

Notes and Sources:

[1] Estimates are taken from a Mobile Examiner's respective deposition.

All unique estimates are recorded. Note, e.g., that "5" and "5-10" are considered unique estimates, despite overlapping.

Time estimates refer to the total amount of time an Examiner spends on a certain type of work.

Estimates include point estimates (e.g. "5 minutes" is coded as "5") and range estimates (e.g. "5 to 10 minutes" is coded as "5-10-15"). Where an Examiner provides multiple numbers in an uninterrupted answer, they are assumed to represent a range unless the Examiner indicates otherwise.

Time estimates are separated between those that refer to a single appointment and those that refer to a day's workload. These distinctions are explicit within the deposition or inferred from the context. It is not possible to determine if the low per-day estimates listed refer to days when an Examiner has exactly one appointment.

"[" notation marks where an Examiner explicitly states or affirms a minimum or maximum (e.g. "[5" is to be read as "at least 5" and "5]" is to be read as "at most 5")

An estimate which an Examiner explicitly conditions with "more than" or "less than" is recorded as a point estimate if that point would be a unique addition to its corresponding list of estimates.

[2] For appointment estimates, lists are adjusted to remove estimates of "0".

[3] For Crystal Broady, the estimate of total pre-appointment time per day is taken from the sums of low and high estimates for the two main components of pre-exam work: "Paperwork and Supplies" and "Client Contact".



Figure 1
Estimated Weekly Effective Wage Per Hour
*Maria Vecchio*



Figure 2
Estimated Time Worked
*Maria Vecchio*

**Figure 3**
**Estimated Minimum Wage Damages**
*Maria Vecchio*

| Week | Weekly Effective Wage [1] | New York Minimum Wage [2] | Minimum Wage Violation | Estimated Hours Worked [3] | Estimated Damages |
|------|------|------|------|------|------|
| (1) | (2) | (3) | (4) | (5) | (6) |
| | | | (3) - (2) | | (5) - (4) |
| 2015 Week 6 | $ 8.72 | $ 8.75 | $ 0.03 | 31 | $ 0.83 |
| 2015 Week 41 | $ 8.70 | $ 8.75 | $ 0.05 | 40 | $ 2.22 |
| 2016 Week 2 | $ 8.97 | $ 9.00 | $ 0.03 | 49 | $ 1.48 |

**Estimated Minimum Wage Damages:  $  4.53**

**Notes and Sources:**

[1] To calculate weekly effective wages the total amount of dollars paid each
week from Maria Vecchio's service register data are summed and divided by the estimated
hours worked each week (This includes the amounts paid for services performed,
and it may include other "flat" payments such as bonus or "no show" payments).

[2] *See* NYLL § 652.

[3] Hours worked are estimated using Maria Vecchio's service register data reflecting the
number of appointments and services. This includes time performing specific
services, time spent pre-appointments and post-appointments, and time spent traveling
between appointments. *See* Exhibit C and Exhibit D for detail on the inputs used to
estimate hours worked. *See* Paragraph 11 of the Declaration for detail on the methodology
used to estimate the hours.

**Figure 4**
**Estimated Overtime Damages**
*Maria Vecchio*

| Week | Weekly Effective Wage [1] | New York Minimum Wage [2] | Estimated Hours Worked Overtime [3] | Estimated Damages |
|---|---|---|---|---|
| (1) | (2) | (3) | (4) | (5) |
| | | | | =max[(2),(3)]*(4)*.5 |
| 2014 Week 51 | $ 9.27 | $ 8.00 | 22 | $ 103 |
| 2015 Week 3 | $ 13.25 | $ 8.75 | 16 | $ 105 |
| 2015 Week 15 | $ 9.69 | $ 8.75 | 18 | $ 86 |
| 2015 Week 16 | $ 12.79 | $ 8.75 | 12 | $ 80 |
| 2015 Week 21 | $ 11.65 | $ 8.75 | 8 | $ 44 |
| 2015 Week 27 | $ 8.89 | $ 8.75 | 12 | $ 54 |
| 2015 Week 30 | $ 9.90 | $ 8.75 | 4 | $ 20 |
| 2015 Week 32 | $ 11.27 | $ 8.75 | 4 | $ 24 |
| 2015 Week 34 | $ 10.77 | $ 8.75 | 11 | $ 58 |
| 2015 Week 38 | $ 12.69 | $ 8.75 | 5 | $ 29 |
| 2015 Week 41 | $ 8.70 | $ 8.75 | 0 | $ 2 |
| 2015 Week 42 | $ 17.19 | $ 8.75 | 4 | $ 31 |
| 2015 Week 45 | $ 13.22 | $ 8.75 | 15 | $ 99 |
| 2015 Week 46 | $ 9.13 | $ 8.75 | 9 | $ 40 |
| 2015 Week 47 | $ 12.57 | $ 8.75 | 10 | $ 66 |
| 2015 Week 49 | $ 9.42 | $ 8.75 | 26 | $ 123 |
| 2015 Week 51 | $ 9.75 | $ 8.75 | 13 | $ 64 |
| 2016 Week 2 | $ 8.97 | $ 9.00 | 9 | $ 42 |
| 2016 Week 3 | $ 10.04 | $ 9.00 | 29 | $ 144 |
| 2016 Week 4 | $ 9.88 | $ 9.00 | 28 | $ 137 |
| 2016 Week 5 | $ 12.16 | $ 9.00 | 21 | $ 126 |
| 2016 Week 6 | $ 9.46 | $ 9.00 | 25 | $ 116 |
| 2016 Week 7 | $ 10.38 | $ 9.00 | 26 | $ 137 |
| 2016 Week 8 | $ 10.14 | $ 9.00 | 28 | $ 141 |
| 2016 Week 10 | $ 12.48 | $ 9.00 | 16 | $ 97 |
| 2016 Week 11 | $ 16.04 | $ 9.00 | 15 | $ 119 |
| 2016 Week 14 | $ 12.39 | $ 9.00 | 21 | $ 127 |
| 2016 Week 15 | $ 12.29 | $ 9.00 | 22 | $ 134 |
| 2016 Week 16 | $ 9.57 | $ 9.00 | 19 | $ 90 |
| 2016 Week 17 | $ 9.72 | $ 9.00 | 18 | $ 86 |
| 2016 Week 18 | $ 16.74 | $ 9.00 | 7 | $ 58 |
| 2016 Week 20 | $ 10.90 | $ 9.00 | 4 | $ 20 |
| 2016 Week 21 | $ 10.73 | $ 9.00 | 8 | $ 41 |
| 2016 Week 22 | $ 9.50 | $ 9.00 | 6 | $ 26 |

**Figure 4**
**Estimated Overtime Damages**
*Maria Vecchio*

| Week | Weekly Effective Wage [1] | New York Minimum Wage [2] | Estimated Hours Worked Overtime [3] | Estimated Damages |
|------|------|------|------|------|
| (1) | (2) | (3) | (4) | (5) |
| | | | | =max[(2),(3)]*(4)*.5 |
| 2016 Week 24 | $ 9.17 | $ 9.00 | 6 | $ 27 |
| 2016 Week 25 | $ 9.25 | $ 9.00 | 6 | $ 26 |
| 2016 Week 27 | $ 9.48 | $ 9.00 | 11 | $ 54 |
| 2016 Week 28 | $ 9.26 | $ 9.00 | 17 | $ 77 |
| 2016 Week 30 | $ 9.19 | $ 9.00 | 28 | $ 131 |
| 2016 Week 31 | $ 10.78 | $ 9.00 | 33 | $ 177 |
| 2016 Week 33 | $ 12.95 | $ 9.00 | 14 | $ 89 |
| 2016 Week 34 | $ 16.05 | $ 9.00 | 7 | $ 53 |
| 2016 Week 35 | $ 10.05 | $ 9.00 | 32 | $ 161 |
| 2016 Week 36 | $ 9.61 | $ 9.00 | 13 | $ 63 |

**Estimated Overtime Damages:  $   3,527**

**Notes and Sources:**

[1] To calculate weekly effective wages the total amount of dollars paid each week from Maria Vecchio's service register data are summed and divided by the estimated hours worked each week (This includes the amounts paid for services performed,  and it may include other "flat" payments such as bonus or "no show" payments).

[2] *See* NYLL § 652.

[3] Overtime is defined as the hours worked over 40 hours. Hours worked are estimated using Maria Vecchio's service register data reflecting the number of appointments and services. This includes time performing specific services, time spent pre-appointments and post-appointments, and time spent traveling between appointments. *See* Exhibit C and Exhibit D for detail on the inputs used to estimate hours worked. *See* Paragraph 11 of the Declaration for detail on the methodology used to estimate the hours.

**Figure 5**
**Estimated Spread of Hours Damages [1]**
*Maria Vecchio*

| Year | Days 10+ Hours [2] | New York Minimum Wage [3] | Estimated Damages |
|---|---|---|---|
| (1) | (2) | (3) | (4) |
| | | | (2) * (3) |
| 2014 | 9 | $ 8.00 | $ 72 |
| 2015 | 72 | $ 8.75 | $ 630 |
| 2016 | 88 | $ 9.00 | $ 792 |

| Estimated Spread of Hours Damages: | $ 1,494 |
|---|---|

**Notes and Sources:**

[1] *See* 12 NYCRR §§ 142-2.4, 142-2.18.

[2] Hours worked are estimated using Maria Vecchio's service register data reflecting the number of appointments and services. This includes time performing specific services, time spent pre-appointments and post-appointments, and time spent traveling between appointments. *See* Exhibit C and Exhibit D for detail on the inputs used to estimate hours worked. *See* Paragraph 11 of the Declaration for detail on the methodology used to estimate the hours.

[2] *See* NYLL § 652.