UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA VECCHIO, individually, and on behalf of all others similarly-situated,<br><br>Plaintiff,<br>v.<br><br>QUEST DIAGNOSTICS, INC., EXAMONE WORLD WIDE, INC., and EXAMONE LLC,<br><br>Defendants. | **THIRD AMENDED CLASS ACTION COMPLAINT**<br><br>Civil Action No.: 1:16-cv-05165-ER-KNF |
| MARIA VECCHIO, individually, and on behalf of all others similarly-situated,<br><br>Plaintiff,<br>v.<br><br>QUEST DIAGNOSTICS, INC., EXAMONE WORLD WIDE, INC., and EXAMONE LLC,<br><br>Defendants. | Civil Action No.: 1:19-cv-05194-ER |

Plaintiff above, on behalf of herself and on behalf of those similarly situated, by and through undersigned counsel, brings this action pursuant to the New York State Labor Law Fair Labor Standards Act ("FLSA") against ExamOne World Wide, Inc. ExamOne LLC (collectively, "ExamOne") and Quest Diagnostics Inc. (or as corrected in The Settlement Agreement for Submission to the Court "Quest Diagnostics Incorporated") ("Quest Diagnostics," and, together with ExamOne, "Defendants"), and allege by and for her Complaint against Defendants as follows:

## NATURE OF THE ACTION

1.  Plaintiff and the Class she seeks to represent are Mobile Examiners ("Mobile Examiners") who visit patients (most commonly insurance applicants) at their homes or places of business, and conduct physical examinations and basic lab work for the purposes of insurance and benefits eligibility and underwriting.

2.  Mobile Examiners are primarily compensated on a per-exam basis, and the compensation per exam averages at about $20.00. But as detailed in this Complaint, Mobile Examiners perform significantly more work than just the actual exam itself.

3.  In fact, when taking into account, *inter alia,* the duration of the exams themselves, the extensive amount of travel to, from, and between appointments, and the additional lab work, paperwork, and administrative work Medical Examiners must conduct in addition to the actual exams -- as well as the significant unreimbursed expenses they incur in connection with their work -- Mobile Examiners' per hour compensation is often well below the New York state minimum wage, sometimes significantly so.

4.  Mobile Examiners also routinely work more than ten hours per day and more than 40 hours per week, but do not receive any overtime compensation or spread-of-hours pay.

5.  Plaintiff thus brings this action to remedy Defendants' violations of New York state law, specifically New York Labor Law, Article 6, §§ 190 *et seq.* and Article 19, §§ 650 *et seq.* (collectively the "NY Labor Law"), and the FLSA 29 U.S.C. §§ 206 and 29 U.S.C. §§ 207 (collectively the "FLSA Claims").

6.  Plaintiff alleges that Defendants regularly and routinely failed to pay minimum wage, fail to pay overtime, fail to pay spread-of-hours pay, fail to reimburse for necessary business expenses, and fail to accurately calculate hours worked. Plaintiff seeks to bring these claims on behalf of herself and the Class of Mobile Examiners similarly situated, as well as any and all of their

representatives, heirs, administrator, executors, beneficiaries, agents and assigns, as applicable and without limitation

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA.

8.      The Court has subject matter jurisdiction over the state law claims pursuant to U.S.C. § 1332(d) because this is a class action with an amount in controversy in excess of $5,000,000, exclusive of interest and costs, and at least one member from the class is a citizen of a state different from at least one Defendant. Alternatively, the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 *et seq.* because (i) many of the acts and transactions giving to this action occurred in this District; (ii) Defendants are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District through the promotion, marketing, distribution, and sale of its services in this District; and (iii) Defendants currently do substantial business in this District.

## PARTIES

10.     Plaintiff is a citizen of the State of New York and a resident of New York County, residing at 367 Edgecombe Avenue Apt. 43, New York, NY 10031.

11.     Defendant ExamOne World Wide, Inc. is a Pennsylvania corporation with its headquarters and principal base of business in Kansas.

12.     Defendant ExamOne World Wide, Inc. is licensed to and does in fact conduct business in New York.   Indeed, ExamOne has at least three New York offices, including at 708 Third Avenue, Suite 315, New York, New York 10017, at 950 New Loudon Road, Latham, New York 12110, and at 300 Cross Keys Office Park, Suite 380, Fairport, New York 14550.

13. On information and belief, ExamOne World Wide, Inc. is a wholly owned subsidiary of Quest Diagnostics.

14. On information and belief, ExamOne LLC is a Delaware corporation.

15. On information and belief, ExamOne LLC is a wholly owned subsidiary of ExamOne World Wide, Inc.

16. Quest Diagnostics is a Delaware corporation with its headquarters and principal place of business in New Jersey.

17. On information and belief, Quest Diagnostics is licensed to and does in fact conduct business throughout the United States, including in New York.

18. At all times relevant to this Action, Defendants transacted business in this District.

## STATEMENT OF FACTS

19. ExamOne, a Quest Diagnostics Company, is a leading provider of risk assessment testing for life insurance companies.

20. Plaintiff and the Class she seeks to represent were employed by the Defendants as Mobile Examiners, and/or served as Independent Contractors providing services as Mobile Examiners.

21. Each of Plaintiff and the Class she seeks to represent provided services to Defendants within the last six (6) years.

**Mobile Examiners' Extensive Job Responsibilities**

22. Plaintiff's and other Mobile Examiners' duties include going to private appointments for applicants who need to submit paperwork and/or undergo physical exams in connection with their applications for life insurance, other insurance, or benefits.

23. The appointments are conducted at the behest of the relevant insurance company and/or benefits provider.

4

24. These appointments typically take place at clients' private homes or offices.

25. The exams include tasks such as asking detailed questions about applicant health and medical history, taking height and weight measurements, measuring blood pressure, measuring pulse, taking blood and urine samples, and taking measurements with an electrocardiogram.

26. In addition to client exams, Mobile Examiners are also responsible for numerous additional tasks. For example, in preparation for exams, Mobile Examiners are responsible for, by way of example, the following tasks: (i) scheduling exams; (ii) calling, texting, and/or e-mailing applicants, including to confirm exams, and to inform applicants how to prepare for exams, including by fasting; (iii) mapping out routes to, from, and between exams; (iv) printing out and reviewing paperwork for exams (which paperwork was frequently voluminous); (v) assembling exam kit, including needles, tubes, labels, gloves, and other supplies; and (vi) assembling and bringing necessary equipment for exams, including a stethoscope, blood pressure cuff, electrocardiogram or EKG machine, centrifuge, and scale. This "pre-exam" work is time consuming, and often takes 30-60 minutes per applicant to complete.

27. Mobile Examiners often have to travel long distances to, from, and between examinations, sometimes over 50 miles for just one exam. Notably, Defendants often fail to make an effort to schedule successive exams within geographic proximity to one another. As a result, Mobile Examiners' travel time (and expenditures, as detailed below) is maximized rather than minimized.

28. The exams themselves are often extremely time consuming. For example, for a "paramed" examination, which is an examination Mobile Examiners are frequently required to conduct, Mobile Examiners have to obtain a full medical history from the applicant, including all medical conditions, treating physicians, and prescribed medications for the last ten (10) years, and record the information obtained on voluminous paperwork. Each "yes" answer has to be

accompanied by the "Five Ds" (Date, Diagnosis, Doctor, Drugs, Duration). And if the applicant does not know the name, address, or phone number of a treating physician, the name of prescribed medication, or other information, the Mobile Examiner has to research this information on his/her own time.

29. Mobile Examiners also have to take three (3) separate blood pressure and pulse readings, obtain blood samples, obtain urine samples, at times obtain EKG readings, at times conduct a comprehensive cognitive evaluation of the patient, and complete related paperwork. In sum total, exams frequently exceed 60-90 minutes in duration.

30. Once the exam is completed, a Mobile Examiners' work is not done. Rather, the Mobile Examiner then needs to travel home (or in some circumstances the branch office) in order to complete a number of additional tasks to "close out" the case. Such post-exam tasks include: (i) completing, reviewing, and checking paperwork which frequently involves looking up doctors' names, addresses and phone numbers and other information when the applicant is not able to supply it; (ii) faxing or scanning, copying, and uploading the paperwork -- which paperwork is frequently voluminous, and often has to be rescanned and often has to be sent to multiple parties; (iii) spinning blood samples through a centrifuge; (iv) processing and labeling the blood samples; (v) processing and labeling the urine or other samples; (vi) packaging the paperwork and samples in the appropriate boxes; (vii) affixing the proper Fedex or other address labels to each box; (viii) driving the samples to Fedex or arranging for pick up; (ix) closing out each case in the ExamOne portal; and (x) calling the next days' applicants to schedule and/or confirm. These "post-exam" tasks take Mobile Examiners numerous hours to complete, often a full hour for each applicant.

31. In addition to all of the above tasks, Mobile Examiners have to complete a number of additional administrative type tasks, including (i) reviewing e-mails from ExamOne, which e-mails number 5-10 a day and frequently have to be responded to; (ii) reviewing instructions and advisories

which ExamOne sends on a variety of topics, including instructions regarding the completion of paperwork for each insurance company, instructions regarding the drawing of blood, instructions regarding the conduct of paramed exams, and instructions regarding the use of the ExamOne portal and other ExamOne systems; (iii) conducting quarterly deletion of patient health information; and (iv) conducting periodic software upgrades. Completing these administrative tasks takes significant time, but again, Mobile Examiners are not paid for it.

32.     What is more, in circumstances where a Mobile Examiner prepares for and travels to an applicant's home or office for an exam, but the applicant is not present, refuses to be examined, or otherwise does not go forward with the exam, the Mobile Examiner is not paid, or is at most paid a nominal $10 fee – despite the Mobile Examiner having expended significant time and expense to prepare for and travel to the exam, and wait a requisite 15-20 minutes for the applicant to arrive.

33.     Further, if a Mobile Examiner is unable to obtain a blood or urine sample from the applicant, or does not obtain all required information and signatures on the paperwork, again the Mobile Examiner is not paid – despite the Mobile Examiner's expenditure of significant time and money.

34.     In sum, mobile exams take hours to complete, yet Mobile Examiners are paid on average a mere $20.00 per exam – and only receive that payment if the patient shows up and the exam can be completed. Otherwise, the Mobile Examiner is paid nothing.

**Mobile Examiners' Unreimbursed Expenses**

35.     What is more, Mobile Examiners are not reimbursed or compensated for their travel expenses, such as gas, tolls, parking, mileage, and car maintenance (for those who drove), and bus, train, subway, and/or taxi fares (for those who took public transportation). Such expenses are extensive, averaging 200-300 miles and 2-3 tanks of gas a week.

36.     Mobile Examiners also incur numerous other additional unreimbursed expenses,

including for (i) medical equipment, such as a stethoscope, blood pressure cuff, electrocardiogram or EKG machine, centrifuge, butterfly needles, tubes, bandages, a scale, and measuring tape; (ii) office supplies, such as computers, scanners, printers, paper, toner/ink, pens, notebooks, and clipboards; (iii) coolers and/or refrigerators to keep blood and/or urine samples cool; and (iv) work-related attire.

37. Defendants required Mobile Examiners to incur these expenses, but despite due demand, have and continue to fail to provide reimbursement for them.

38. These expenses are extensive, and total hundreds of dollars a week.

**Defendants' Failure to Pay Minimum Wage, Overtime, and Spread of Hours Pay**

39. Mobile Examiners are only paid a single fee for each exam they performed, not hourly. Such payments average at about $20.00 an exam.

40. As described above, Mobile Examiners spend numerous hours for each exam they perform. When taking into account both the time actually performing exams, the time traveling to and from exams, the extensive pre and post-exam work in connection with each exam, the uncompensated administrative tasks Mobile Examiners are required to perform, and their extensive unreimbursed expenses, Mobile Examiners are paid well below the New York and Federal minimum wage for their work.

41. This is particularly the case in light of the facts that (i) Mobile Examiners are not paid if exams are not completed and (ii) Mobile Examiners are not paid or are at most paid $10 if the applicant fails to be available for their exam; what is termed a "no-show."

42. In sum, Mobile Examiners expend countless hours and dollars in expenses – and are paid a mere approximate $20 per mobile exam. Mobile Examiners thus are being paid far less than minimum wage.

43. Mobile Examiners also frequently work more than 40 hours a week. Yet Mobile

8

Examiners are never paid overtime wages as required under New York and Federal law.

44. Mobile Examiners also log more than ten hours in a single day or log multiple shifts in a single day spanning more than ten hours. But Mobile Examiners never receive spread-of-hours pay as required by New York law.

45. Notably, Mobile Examiners are required by Defendants to "clock in" and "clock out" – despite the fact that they are not paid hourly, but, rather, by the exams performed.

46. In Defendants' instructions to Mobile Examiners regarding "clocking in" and "clocking out," Defendants noted that they were requiring such "clocking in" and "clocking out" pursuant to law, including the laws requiring that Mobile Examiners be paid at least minimum wage. This demonstrates Defendants' awareness of such issues, and their knowing violation of law.

47. Despite the fact that as alleged above, Mobile Examiners performed hours of work outside of actual exams, Defendants only allowed Mobile Examiners to "clock in" and "clock out" when actually performing exams. Defendants' records regarding Mobile Examiners' "clocked" hours thus do not reflect the hours they actually worked.

48. Following the initiation of litigation related to Defendants' practices, Defendants changed their "clocking in" instructions. Specifically, Defendants instructed Mobile Examiners to "clock in" whenever performing any work related to ExamOne and/or insurance applicants, including the "pre exam" and "post-exam" work, as described above.

49. Following this change in policy, several mobile Examiners logged 50 hours or more a week.

50. In response to the clear demonstration of the fact that Mobile Examiners are working well in excess of 40 hours a week – without receiving overtime or other requisite compensation – Defendants quickly reverted to their previous policy and only allowed Mobile Examiner to be "clocked in" when actually seeing patients.

9

51. Defendants also engaged in other practices to avoid paying overtime, including (i) asking Mobile Examiners to revise their hours – or actually revising Mobile Examiners' hours for them; (ii) blocking off Mobile Examiners' schedules when they are working "too many" hours in a given week; and (iii) taking applicants off a Mobile Examiners' schedule and giving them to another Mobile Examiner when the Examiner in question has "too many" hours in a given week.

52. This conduct demonstrates knowing violation of the New York Labor law, FLSA and other applicable laws.

53. What is more, Defendants fail to maintain adequate records of the hours worked and services performed by Mobile Examiners, as well as the amounts paid to Mobile Examiners – again in clear violation of law.

## CLASS ALLEGATIONS

54. Plaintiff brings this action on behalf of herself and all other similarly situated individuals (the "Class") pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff and the Class were or are employed by Defendants as Mobile Examiners in New York during the applicable statutory period.

55. Plaintiff and the Class are current and former employees of Defendants within the meaning of the NY Labor Law and the FLSA and were employed by Defendants within six years of the date this Complaint was filed.

56. The Class is defined as follows:

all persons who (a) contracted or otherwise arranged with any Defendant or any related or affiliated entity to perform services as a Mobile Examiner (b) in New York at any time between June 29, 2010 and the date of the Preliminary Approval Order or (c) in any other state, territory or locality in the United States at any time between June 29, 2010 and the date of Preliminary Approval Order.

57. Excluded from the Class are Defendants and their officers and directors.

58. This action has been brought and may properly be maintained on behalf of the Class

proposed herein under the criteria set forth in CPLR Section 901 *et seq.*  The Class claims satisfy the numerosity, commonality, predominance, typicality, adequacy, superiority, and ascertainability requirements of the provisions of the CPLR.

59. <u>Numerosity</u>. Although the exact number and identity of Members of the Class are uncertain and can only be ascertained through appropriate discovery, the number is great enough that joinder would be impracticable. Upon information and belief, Defendants employ hundreds if not thousands of individuals as Mobile Examiners in the United States, including New York State.

60. <u>Commonality and Predominance</u>. There are questions of law and fact that are common to the Class and predominate over any questions affecting only individual members of the Class. The damages sustained by Plaintiff and the other members of the Class flow from the common nucleus of operative facts surrounding Defendants' misconduct.

61. Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

    a. Whether Defendants failed and continue to fail to pay overtime compensation in violation of the NY Labor Law;

    b. Whether Defendants' failure to pay overtime to Plaintiff and the Class was willful within the meaning of the NY Labor Law;

    c. Whether Defendants' failure to pay overtime to Plaintiff and the Class was willful within the meaning of the FLSA;

    d. Whether Defendants failed and continue to fail to pay minimum wage in violation of the NY Labor Law;

    e. Whether Defendants' failure to pay minimum wage to Plaintiff and the Class was willful within the meaning of the NY Labor Law;

    f. Whether Defendants' failure to pay minimum wage to Plaintiff and the Class was willful within he meaning of the FLSA;

    g. Whether Defendants failed and continue to fail to reimburse employees for necessary expenses in violation of the NY Labor Law;

    h. Whether Defendants failed and continue to fail to pay spread-of-hours in violation

of NY Labor Law;

i.  Whether Defendants' failure to pay spread-of-hours to Plaintiff and the Class was willful within the meaning of the NY Labor Law;

j.  Whether Defendants failed and continue to fail to provide a detailed statement concerning wage calculations as required by the NY Labor Law; and

k.  Whether Defendants failed and continue to fail to make and maintain accurate records of actual time worked by Plaintiff and the Class in violation of the NY Labor Law.

62. Any defenses raised by Defendants, to the extent that any such defenses apply, are applicable generally to Plaintiff and the entire Class, and are not distinguishable as to individual class members.

63. <u>Typicality</u>. The claims of the Plaintiff herein are typical of the claims of the members of the Class as a whole, all of whom have sustained and/or will sustain damages, as a result of the common course of conduct of Defendants as complained of in this class action complaint. The claims of Plaintiff are typical of the Class because Defendants subjected all Class members to the same course of conduct.

64. The claims for violation of the NY Labor Law and FLSA are brought pursuant to CPLR Section 901 *et. seq.* by Plaintiff on behalf of herself and the Class, because Plaintiff's claims are similar to the claims of the members of the Class.

65. Plaintiff and the Class are similarly situated, have substantially similar contract agreements and pay provisions, and are subject to Defendants' common practice, policy, or plan of failing to keep accurate records and failing to pay minimum wage, overtime, and spread-of-hours pay in violation of the NY Labor Law and FLSA.

66. <u>Adequacy</u>. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained attorneys highly experienced in the prosecution of complex employment and labor law class action litigation. Neither Plaintiff nor her attorneys have

any interests antagonistic to the Class. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the proposed Class and have the financial resources to do so.

67. <u>Superiority</u>. Plaintiff and Class members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit.

68. Individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class may be in the millions of dollars, the individual damages incurred by each Class member resulting from Defendants' wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

69. Individual Class members do not have a significant interest in individually controlling the prosecution of separate actions, and the individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. Plaintiff knows of no difficulty in the management of this action that would preclude its maintenance as a class action. To the contrary, a class action in this matter will avoid case management difficulties and provide multiple benefits, including efficiency, economy of scale, unitary adjudication with consistent results, and equal protection of the rights of each Class member, all by way of the comprehensive and efficient supervision of the litigation by a single court.

70. <u>Ascertainability</u>. The identity and address of each Class member can be readily ascertained through Defendants' records. Class members may be notified of the pendency of this action via first class mail and/or by use of techniques in a form of notice that has been used

customarily in class actions, subject to court approval.

## COUNT I
### Failure to Pay Minimum Wage under NY Labor Law § 652

71. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

72. At all times relevant to this action, Defendants were Plaintiff's employers within the meaning of New York Labor Law §§ 2 and 651.

73. At all times relevant to this action, Plaintiff was Defendants' employee within the meaning of New York Labor Law §§ 2 and 651.

74. Defendants willfully required, suffered, or permitted Plaintiff to work for less than the minimum wage in violation of the State Minimum Wage Act, New York Labor Law § 652.

75. As a result of Defendants' New York Labor Law violations, Plaintiff and the Class she seeks to represent are entitled to recover from Defendants amounts to be proven at trial for unpaid minimum wages, liquidated damages equal to 100% of the total wages found to be due, reasonable attorney's fees, and the costs of the action, pursuant to New York Labor Law§ 663(1).

## COUNT II

### Failure to Pay Minimum Wage Under the FLSA (29 U.S.C. § 206)

76. Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

77. Section 6 of the FLSA, 20 U.S.C. § 206, establishes the right to be paid minimum wage. Section 16(b) of the FLSA, 29 U.S.C. § 216 (b), entitles an employee to recover all unpaid wages, an equivalent amount as liquidated damages, and reasonable attorneys' fees and costs.

78. At all times relevant to this action, Defendants willfully failed and refused to pay Plaintiff the federal minimum wages required by the FLSA, to Plaintiff's damage in amounts to be proven at trial.

79. At all times relevant to this Complaint, the Defendants have been and continue to be

"employers" within the meaning of the FLSA 29 U.S.C. § 203 (d).

80. At all times relevant to this Complaint, Defendants employed and continue to employ Plaintiff and the Collective within the definition of the FLSA 29 U.SC. § 203 (e)(1).

81. At all times relevant to this Complaint, Defendants were enterprises "engaged in commerce" as defined in 29 U.S.C. § 203 (s)(1)(A)(ii), because they had gross operating revenues in excess of $500,000.00.

82. Plaintiff has consented to writing to be a part of this action pursuant to 29 U.S.C. § 216(b). Plaintiff's signed consent form is attached as Exhibit A.

83. Defendants have failed to make, keep, and preserve records with respect to each of the Plaintiff and the Collective she seeks to represent, sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. § 201 *et. seq.,* including 29 U.S.C. § 211 (c) and § 215(a).

84. Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

85. Plaintiff on behalf of herself and the Collective she seeks to represent request recovery of attorney's fees and costs associated with this cause as provided by 29 U.S.C. § 216(b).

## COUNT III

### Failure to Pay Overtime Under NY Labor Law § 652, 12 NYCRR § 142-2.2

86. Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

87. At all times relevant to this action, Defendants were Plaintiff's employers within the meaning of New York Labor Law §§ 2 and 651.

88. At all times relevant to this action, Plaintiff was Defendants' employee within the meaning of New York Labor Law §§ 2 and 651.

89. Defendants willfully failed to pay Plaintiff overtime compensation at a rate of 1.5

times her regular rate of pay for each hour worked in excess of 40 hours in a workweek as required under New York Labor Law §§ 650 *et seq.*, 12 NYCRR § 146-1.4.

90. As a result of Defendants' New York Labor Law violations, Plaintiff and the Class she seeks to represent are entitled to recover from Defendants amounts to be proven at trial for unpaid overtime wages, liquidated damages equal to 100% of the total wages found to be due, reasonable attorney's fees, and the costs of the action, pursuant to New York Labor Law § 663(1).

## COUNT IV
### Failure to Pay Overtime Under the FLSA (29 U.S.C. § 207)

91. Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

92. The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees at a rate of not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a work week.

93. Plaintiff and the Collective are not exempt from the right to receive overtime pay under the FLSA.

94. Plaintiff and the Collective are entitled to be paid overtime compensation for all overtime hours worked.

95. At all times relevant to this Complaint, defendants had a policy and practice of failing and refusing to pay overtime to its employees for their hours worked in excess of 40 hours per week.

96. As a result of Defendants' failure to compensate its employees, including Plaintiff and the Collective, at a rate not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a work week, Defendants violated and continue to violate the FLSA, 29 U.S.C. § 201 *et. seq.,* including 29 U.S.C. § 211 (c) and § 215(a).

97. Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of FLSA, 29 U.S.C. § 255 (a).

98. Plaintiff on behalf of herself and the Collective she seeks to represent requests

16

recovery of their attorney's fees and costs associated with this cause of action as provided by FLSA, 29 U.S.C. § 216(b).

## COUNT V
### Failure to Pay Spread-of-Hours Under NY Labor Law § 652, 12 NYCRR § 142-2.2

99. Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

100. Plaintiff routinely worked more than ten hours per day.

101. Defendants willfully failed to pay Plaintiff an extra hour of pay at the basic minimum wage rate for each day Plaintiff had a spread of hours in excess of ten hours per day, in violation of New York Labor Law §§ 650 *et seq.*

102. As a result of Defendants' New York Labor Law violations, Plaintiff and the Class she seeks to represent are entitled to recover from Defendants an amount to be proven at trial for unpaid spread-of-hours pay, liquidated damages equal to 100% of the spread-of-hours pay found to be due, reasonable attorney's fees, and costs of the action, pursuant to New York Labor Law § 663(1).

## COUNT VI
### Violation of Wage Theft Prevention Act, NY Labor Law § 195

103. Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

104. Plaintiff's paystubs do not identify Plaintiff's rate or rates of pay and basis thereof, the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, the number of overtime hours worked, the applicable piece rate or rates of pay, or the number of pieces completed at each piece rate, as required under the Wage Theft Prevention Act, NY Labor Law § 195.

105. Defendants willfully failed to provide this required information along with Plaintiff's paystubs.

106. The failure to provide adequate paystub information obstructed Plaintiff's ability to

determine whether she was being paid in compliance with state and federal law.

107. As a result of Defendants' violation of the Wage Theft Prevention Act, Plaintiff and the members of the Class she seeks to represent are each entitled to recover $250 for each workday that the violations occurred or continue to occur, not to exceed a total of $5,000, together with costs and reasonable attorney's fees.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests relief against Defendants as set forth below:

a. Determining that the Class claims alleged herein may be maintained as a class action pursuant to Section 901 of the CPLR *et. seq.* and issuing an order certifying the Class as defined above;

b. Appointing Plaintiff Maria Vecchio as the representative of the Class and her Counsel as Class Counsel;

c. Issuing notice to the Class of this action;

d. Awarding Plaintiff and the Class unpaid minimum wages and an additional equal amount as liquidated damages, pursuant to NY Labor Law §§ 198(1-a), 663(1);

e. Awarding Plaintiff and the Class unpaid minimum wages and an additional equal amount as liquidated damages, pursuant to 29 U.S.C. FLSA, § 206(b);

f. Awarding Plaintiff and the Class unpaid overtime wages and an additional equal amount as liquidated damages, pursuant to NY Labor Law § 663(1);

g. Awarding Plaintiff and the Class unpaid overtime wages and an additional equal amount as liquidated damages, pursuant to 29 U.S.C. FLSA, § 207;

h. Awarding Plaintiff and the Class unpaid spread-of-hours pay, as well as an additional equal amount as liquidated damages pursuant to NY Labor Law § 663(1);

i. Awarding Plaintiff and the Class damages for violations of the Wage Theft Prevention Act, pursuant to NY Labor Law § 198(1-d);

j. Awarding Plaintiff pre-judgment and post-judgment interest, pursuant to New York CPLR §§ 5001 and 5004;

k. Awarding Plaintiff the costs of this action together with reasonable attorney's fees pursuant to NY Labor Law §§ 198 and 663(1);

l.  Awarding damages, including actual, general, special, incidental, statutory, punitive, treble, liquidated, and consequential to Plaintiff and Class members in an amount to be determined at trial;

m.  Issuing a declaratory judgment that the practices complained of herein are unlawful under the NY Labor Law, Article 6, §§ 190 *et seq.* and Article 19, §§ 650 *et seq.*;

n.  Issuing an injunction prohibiting Defendants from continued unlawful practices, policies and patterns set forth herein;

o.  Awarding pre-judgment and post-judgment interest as provided by law;

p.  Awarding reasonable attorneys' fees and costs; and

q.  Awarding such other and further relief that this Court deems appropriate.

Dated: September 28, 2021

Respectfully submitted,

/s/ Salvatore C. Badala
Salvatore C. Badala
NAPOLI SHKOLNIK PLLC
360 Lexington Avenue, 11th Floor
New York, New York 10017
Telephone: (212) 397-1000
Fax: (646) 843-7603
Email: SBadala@NapoliLaw.com
**Counsel for Plaintiff**