**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARIA VECCHIO, individually, and on behalf of all others similarly-situated, | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL CONDITIONALLY CERTIFYING THE CLASS AND COLLECTIVE AND PRELIMINARY APPROVAL OF THE CLASS AND COLLECTIVE ACTION SETTLEMENT** |

MARIA VECCHIO, individually, and on behalf of all others similarly-situated,

                Plaintiffs,

     v.

QUEST DIAGNOSTICS, INC., EXAMONE WORLD WIDE, INC., and EXAMONE LLC,

                Defendants.

Civil Action No.:  1:16-cv-05165-ER-KNF

MARIA VECCHIO, individually, and on behalf of all others similarly-situated,

                Plaintiffs,

     v.

QUEST DIAGNOSTICS, INC., EXAMONE WORLD WIDE, INC., and EXAMONE LLC,

                Defendants.

Civil Action No.:  1:19-cv-05194-ER

# Table of Contents

TABLE OF AUTHORITIES ....................................................................................................... iii-vi

PRELIMINARY STATEMENT ..................................................................................................... 1

STATEMENT OF FACTS .............................................................................................................. 2

    I.     The parties engaged in extensive motion practice prior to settlement. ........................... 2

    II.    The likely damages ceiling in this case is low. ............................................................. 3

    III.   Plaintiffs' counsel is well qualified. .............................................................................. 4

    IV.   Counsel's fees and expenses for litigating this complex case are reasonable. ................. 8

    V.    Named Plaintiff was an active participant throughout the litigation. ............................. 12

    VI.   The settlement agreement's terms are fair ..................................................................... 12

LEGAL STANDARD .................................................................................................................... 13

ARGUMENT ................................................................................................................................. 14

    I.     The parties have bona fide FLSA disputes .................................................................... 14

    II.    The settlement agreement represents a fair and reasonable resolution of the parties'
          disputes ......................................................................................................................... 14

       a.    The parties engaged in extensive discovery before settlement .................................. 15

       b.    Settling now would allow the parties to avoid the enormous expenses related to
           discovery, further motion practice, and trial. ........................................................... 15

       c.    There has been no fraud or collusion. ...................................................................... 16

       d.    Plaintiffs' counsel is well qualified and experienced. .............................................. 17

       e.    The settlement amount is fair given the risks of litigation and projected recovery. ...... 17

       f.    The reaction of the Class has been positive. ............................................................ 18

       g.    Establishing a Class and maintaining it through trial would not be simple. ................. 18

       h.    Defendants' ability to withstand a greater judgment ................................................. 19

    III.   The requested payments for attorneys' fees and expenses are reasonable. .................... 19

    IV.   The requested service fee award is reasonable ............................................................... 23

    V.    The Court should certify the settlement class. .............................................................. 24

    VI  The Settlement Class Meets the Legal Standard for Class Certification. ....................... 24

       a.    *Numerosity* .......................................................................................................... 25

       b.    *Commonality* ....................................................................................................... 25

       c.    *Typicality* ............................................................................................................ 26

       d.    *Adequacy of the Named Plaintiff* ......................................................................... 27

       e.    *Common Questions Predominate* .......................................................................... 28

       f.    *A Class Action Is a Superior Mechanism* ............................................................. 29

CONCLUSION ................................................................................................................ 30

## TABLE OF AUTHORITIES

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591, 623 (1997) ................................................................................................. 28, 29

*Anderson v. Sara Lee Corp.*,
  No. 4:03-cv-00031-H, 2013 WL 12250391, at *1 (E.D.N.C. May 16, 2013) .................................... 18

*Barber v. Kimbrell's Inc.*,
  577 F.2d 216, 226 (4th Cir. 1978) ............................................................................................. 19

*Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-cv-00738-RNC, 2014 WL 3778211, at *6 (D. Conn.
  July 31, 2014) ......................................................................................................................... 22, 23

*Campos v. Goode*,
  No. 10 Civ. 224, 2010 WL 5508100, at *2 (S.D.N.Y. Nov. 29, 2010) ..................................... 27

*Clark v. Ecolab, Inc.*,
  2009 WL 6615729 (S.D.N.Y. 2009) ........................................................................................ 27, 28

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473, 483 (2d Cir. 1995) ................................................................................................. 25

*County of Summit et al. v. Purdue Pharma LP et al.*,
  1:18-op-45090 ........................................................................................................................... 4

*Day v. NuCO2 Mgmt., LLC*,
  No. 1:18- cv-02088, 2018 WL 2473472, at *1 (N.D. Ill. May 18, 2018) ....................... 13, 16, 21, 23

*deMunecas v. Bold Food, LLC*,
  No. 09 Civ. 440, 2010 WL 3322580, at *2 (S.D.N.Y. Aug. 23, 2010) ..................................... 27

*Denney v. Deutsche Bank AG*,
  443 F.3d 253, 270 (2d Cir. 2006) ............................................................................................. 24

*Devine v. City of Hampton, Virginia*,
  No. 4:14-cv-81, 2015 WL 10793424, at *2 (E.D. Va. Dec. 1, 2015) .................................... 15, 16, 17

*Devlin v. Ferrandino & Son, Inc.*,
  No. 15-cv-4976, 2016 WL 7178338, at *9 (E.D. Pa. Dec. 9, 2016) .................................... 22, 23

*Diaz v. E. Locating Serv., Inc.*,
  No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) ........................................ 27,29

*Dziennik v. Sealift, Inc.*,
  No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) ................................. 27

*Edelen v. Am. Residential Servs., LLC,*
    No. DKC 11-cv-2744, 2013 WL 3816986, at *4 (D. Md. July 22, 2013) ..........................................24

*Faile v. Lancaster County,*
    No. 0:10-cv-02809-CMC, 2012 U.S. Dist. LEXIS 189610, at *12 (D.S.C. Mar. 8, 2012) ...............13

*Frank v. Eastman Kodak Co.,*
    228 F.R.D. 174, 181 (W.D.N.Y. 2005) ..................................................... 19, 25, 26, 27, 29

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147, 157 n.13 (1982) ..........................................................................25

*Graudins v. Kop Kilt, LLC,*
    No. 14-cv-2589, 2017 WL 736684, at *11 (E.D. Pa. Feb. 24, 2017) ......................................22, 23, 24

*Green v. Wolf Corp.,*
    406 F.2d 291, 301 (2d Cir. 1968) ......................................................................29

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) .........................................................................29

*In re Austrian & German Bank Holocaust Litig.,*
    80 F. Supp. 2d at 178 n.9 (alterations and citation omitted) .........................................19

*In re Dollar Gen. Stores FLSA Litig.,*
    No. 5:09-MD-1500, 2011 WL 3904609, at *2 (E.D.N.C. Aug. 23, 2011)...................... 14, 15, 16, 17

*In re Initial Pub. Offering Sec. Litig.,*
    471 F.3d 24 (2d Cir. 2006)............................................................................28

*In re Rent-Way Sec. Litig.,*
    305 F. Supp. 2d 491, 509 (W.D. Pa. Dec. 22, 2003).................................................17

*In re Visa Check/MasterMoney Antitrust Litig.,*
    280 F.3d 124, 136 (2d Cir. 2001) ..................................................................28, 29

*Kamean v. Local 363, Int'l Bhd. of Teamsters,*
    109 F.R.D. 391, 394 (S.D.N.Y. 1986) ................................................................25
*Lauren Byrne v. Santa Barbara Hospitality Services Inc. et al.,*
    5:17-cv-00527..............................................................................................4

*Lomascolo v. Parsons Brinckerhoff, Inc.,*
    No. l:08-cv-1310 (AJT/JFA), 2009 U.S. Dist. LEXIS 89129, at *10 (E.D. Va. Sept. 28, 2009) ....13

*Maley v. Del Global Techs. Corp.,*
    186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ..........................................................18

*Marisol A. v. Giuliani*,
    126 F.3d 372, 377 (2d Cir. 1997) ................................................................. 25, 26

*McBean v. City of N.Y.*,
    228 F.R.D. 487, 502 (S.D.N.Y. 2005) ................................................................ 28

*McMahon v. Olivier Cheng Catering & Events, LLC*,
    No. 08 Civ. 8713, 2010 WL 2399328, at *2 (S.D.N.Y. Mar. 3, 2010) .................. 27

*Osman v. Grube, Inc.*,
    No. 3:16-cv-00802-JJH, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) ..... 13, 22, 23

*Reade-Alvarez v. Eltman, Eltman & Cooper*, P.C.,
    237 F.R.D. 26, 31 (E.D.N.Y. 2006) .................................................................. 25

*Rehberg v. Flowers Baking Co. of Jamestown*, LLC,
    2015 WL 1346125, at *8, 16 (W.D.N.C. Mar. 24, 2015) .................................. 25

*Rivera v. Dixson*,
    No. TDC-14-cv-2901, 2015 WL 427031, at *3 (D. Md. Jan. 30, 2015) ............... 14

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*,
    No. 94 Civ. 5587. 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003) ............... 18

*Robidoux v. Celani*,
    987 F.2d 931, 936-37 (2d Cir. 1993) ................................................................ 26

*Rossini v. Ogilvy & Mather, Inc.*,
    798 F.2d 590, 598 (2d Cir. 1986) ..................................................................... 28

*Smith v. Krispy Kreme Doughnut Corp.*,
    No. 1:05-cv-00187, 2007 WL 119157, at *1 (M.D.N.C. Jan. 10, 2007) ............ 19, 20, 21, 22, 23

*Taylor v. Progress Energy, Inc.*,
    415 F.3d 363, 374 (4th Cir. 2005) .................................................................... 13

*Thompson v. Qwest Corp.*,
    No. 17-cv-1745-WJM-KMT, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018) ....... 21,23

*Torres v. Gristede's Corp.*,
    No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006) ......................... 28

*Toure v. Cent. Parking Sys. of N.Y.*,
    No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) ............... 27

*Villegas v. J.P. Morgan Chase & Co.*,
    No. 09-cv-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) ......... 16

v

**Rules**

Federal Rule of Civil Procedure 23
  ("Rule 23")................................................................................................13, 24, 26, 27, 28, 29

Maria Vecchio respectfully submits this memorandum of law in support of her unopposed motion to conditionally certify the class and collective, and preliminary approval of class and collective action (hereinafter "Preliminary Approval Motion" or "the Motion") settlement agreement between her, on behalf of all Plaintiffs that did not opt-out of this Fair Labor Standards Act (FLSA) and State Law action, and Defendants Quest Diagnostics, Inc., Examone World Wide, Inc., and Examone, LLC (collectively "Defendants").

## PRELIMINARY STATEMENT

Plaintiff Maria Vecchio ("Vecchio"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, respectfully submit this Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Approval of Settlement and Dismissal of Action with Prejudice.

Plaintiffs worked as Mobile Examiners ("Examiners"), performing physical examinations and basic lab work at the homes or businesses of customers. Defendants would assign some number of appointments to each Examiner each work-day. For each appointment, the Examiner would be required to perform one or more services or procedures, *e.g.,* drawing blood, taking physical measurements, or conducting cognitive tests

The parties zealously litigated this action at every stage. They engaged in extensive motion practice in relation to Vecchio's motion for conditional certification and a variety of secondary issues. They went through an opt-in process where over 2,700 Examiners joined the case. They analyzed extensive data that Defendants produced for each of those Examiners, so that they could calculate damages under a variety of scenarios. They negotiated before an experienced wage-and-hour mediator and conducted further private, arm's-length discussions after mediation. Only then did the parties finally come to a fair and reasonable settlement, which appropriately balances the risks and costs of continuing to litigate against the likely benefits to Plaintiffs. On this motion,

1

Vecchio requests the Court's approval of this settlement agreement, which includes payment of attorneys' fees, litigation expenses, and a service award.

## STATEMENT OF FACTS

**I.    The parties engaged in extensive motion practice prior to settlement.**

Vecchio filed the complaint on June 29, 2016. (Declaration of Salvatore C. Badala ¶ 2.) Defendants' filed an answer to the complaint on September 6, 2016. (*Id.* ¶ 3.) The parties then stipulated to dismiss specific counts (Counts II, IV, V, and VI) from the Complaint leaving all but the FLSA claims in the complaint on October 11, 2017. (*Id.* ¶ 13.)

On October 20, 2017, Vecchio filed a Motion for Conditional Certification of the Fair Labor Standards Act Collective and Issuance of Court-Approved Notice. (*Id.* ¶ 14.) The parties completed briefing on the conditional-certification motion in November. (*Id.* ¶ 15.) On April 30, 2018, the court granted Vecchio's motion for conditional certification. (*Id* ¶ 16.)

On February 21, 2020, the Defendants filed a motion to Decertify the class and partial summary judgement. The parties completed briefing on the decertification and summary judgment issues in May of 2020. On September 18, 2020, the Court granted Defendants Motion for Decertification and Motion for Partial Summary Judgement dismissing Vecchio's minimum wage claims, the overtime claims of 32 opt-in plaintiffs with prejudice, and the claims of all remaining opt-in plaintiffs without prejudice.

During the 90-day opt-in period, over 2,700 Examiners joined this case. (*Id.* ¶ 20.)

On June 25, 2020, the parties virtually mediated before Carol Wittenberg. (*Id.* ¶ 21.) Wittenberg has successfully mediated numerous high-profile labor and employment cases.     (*Id.* ¶ 21.) However, the parties walked away from the mediation remaining far apart in a proposed settlement.

The parties participated in a second virtual mediation on December 17, 2020 before Marc Isserles. Isserles has successfully mediated numerous high-profile labor and employment cases. (*Id.*  ¶ 22.) The parties reached a preliminary settlement agreement during the mediation.      (*Id.* ¶ 22.)

The settlement agreement was finalized over the next five months and executed on September 17, 2021. (*Id.* ¶ 24 & Ex. 1.) The parties then amended the Settlement Agreement on November 19, 2021. (*Id.* ¶ 24)

On September 27, 2021 Plaintiffs filed the Third Amended Complaint pursuant to the Settlement Agreement to include all New York State claims and FLSA claims.

On December 10, 2021 the Settlement Agreement was re-filed at the request of the Clerk of the Court

On August 25, 2022 the Court held a conference concerning the Settlement Agreement, denying without prejudice the Motion to Certify directing the parties to resubmit revised motions in accordance with the Court's instructions on the record.

## II.    The likely damages ceiling in this case is low.

Defendants produced significant discovery, which allowed counsel to calculate damages under multiple scenarios for the Plaintiffs who joined this action. (*Id.* ¶ 81.) Specifically, they produced the following information for each weekly pay period for all Plaintiffs: the amount that Defendants paid them; the average time spent per appointment; the and the appropriate service fee for each treatment.

Utilizing that data, Plaintiffs' counsel, working with Stephanie Planich of NERA, calculated that the likely damages ceiling in this action is $1,100,000.00.  Notably, this calculation assumes that all the time when mobile examiners were "clocked-in" the Defendants application

and performing work duties—pre-appointment work; post-appointment work; travel time between appointments; etc.—is compensable. If this time is not compensable, maximum damages for the entire collective would be significantly less. (*Id.* ¶ 82)

### III.   Plaintiffs' counsel is well qualified.

Napoli Shkolnik PLLC specializes in class-action, mass-tort, and commercial litigation. (*Id.* ¶ 24.) It is a nationally-recognized firm that has handled numerous high-profile cases across the United States. (*Id.* ¶ 25.)

I am the head of the Napoli Shkolnik Commercial Litigation Department and manage attorneys in the firm's multiple office throughout the country. I have served as lead and co-lead counsel in numerous class and collective actions nationwide. Some of my more recent public settlements include: *Lauren Byrne v. Santa Barbara Hospitality Services Inc. et. al.*, 5:17-cv-00527; *County of Cuyahoga v. Purdue Pharma LP et al* 1:17-op-45004; and *County of Summit et al. v. Purdue Pharma LP et al.*, 1:18-op-45090. I have been practicing law for 8 years (*Id.* ¶ 27.)

Paul J. Napoli is Of Counsel at Napoli Shkolnik PLLC. Paul J. Napoli is a nationally renowned personal injury, medical malpractice, and mass tort litigation attorney with more than 25 years of experience in the legal field. With his well-documented track record in achieving the most successful outcomes in legal cases, Mr. Napoli rates a score of 10 out of 10 on AVVO, the highest possible ranking from the nation's leading lawyer referral and rating service. He is well-known for consistently achieving jury awards and settlements involving multiple millions of dollars for plaintiffs. (*Id.* ¶ 28.)

Hunter J. Shkolnik is a Partner at Napoli Shkolnik PLLC. Mr. Shkolnik leads the discovery and trial teams of various mass tort pharmaceutical and medical device litigations as well as aviation related product liability actions for the firm. He is also active in managing national

litigation and plaintiff litigation groups including the American Association of Justice's Actos Litigation Group. He is currently serving as a chairman, leader or court appointed representative on Plaintiff Steering Committees in various drug and other mass torts. He is also a sought after speaker on issues involving Guidant, Medtronic and St. Jude pacemakers, ICD and Lead Wire recall science and litigation; Cardiac Device product liability litigation, Class Actions topics such as Ethics of Mass Tort Settlements, Lone Pine, State Federal Coordination and Preemption and on multiple occasions, on science related to various pharmaceuticals. Hunter has been included in the New York Metro Super Lawyer list every year since 2006. This peer recognition demonstrates achievement and overall professionalism. (*Id.* ¶ 29.)

Paul Maslo is a former partner at Napoli Shkolnik. He has extensive experience representing plaintiffs in litigation involving employment law, as well as in numerous other areas. Prior to joining Napoli Shkolnik as a partner, he was a litigation associate at Boies Schiller Flexner LLP. He was named a New York Super Lawyers Rising Star in Commercial Litigation in 2017 and 2018. He earned his J.D. at the University of Pennsylvania Law School, M.S. in Biology at Johns Hopkins University, and A.B. in Biology in the College of Arts & Sciences at Cornell University. (*Id.* ¶ 30.)

Danielle J. Marlow was a former Partner at Napoli Shkolnik PLLC. Ms. Marlow has over 23 years of experience, and Ms. Marlow's particular practice areas include class actions, financial services and securities litigation, employment litigation, estate litigation, real estate litigation, breach of fiduciary duty and derivative claims, shareholder and partnership disputes, antitrust, breach of contract, business torts, false advertising, claims for unfair competition and misappropriation of trade secrets, and qui tam or "whistleblower" litigation. Ms. Marlow has litigated numerous claims arising out of investments in securities, hedge funds, and other

investment vehicles. She has also litigated numerous business disputes, claims for breach of contract, restrictive covenant claims, real estate and lease disputes, disputes between members of limited liability companies and partnerships, and dissolution proceedings. With respect to class actions, she has both prosecuted and defended against class actions, and is well versed in the Class Action Fairness Act, the requirements of class certification, fact and expert discovery related to class actions, and class action settlements. (*Id.* ¶ 31.)

Andrew Dressel, a former senior associate at Napoli Shkolnik, who earned his law degree at the University of Pennsylvania and was a litigation associate at Boies Schiller before joining the firm. He was named a New York Super Lawyers Rising Star in Commercial Litigation in 2017 and 2018. (*Id.* ¶ 32.)

Robert Gitelman is a partner at Napoli Shkolnik. Mr Gitelman works within the Napoli Shkolnik Products Liability and Asbestos Department. Prior becoming an attorney, Mr. Gitelman worked in various capacities in the Environmental Health and Safety field, including lead and asbestos surveys, overseeing environmental remediation at construction sites, and serving as Director of Safety at New York Methodist Hospital.

Jennifer Liakos was the Managing Partner for the Napoli Shkolnik Los Angeles location, focusing her practice on mass tort litigation, including pharmaceutical product liability, personal injury, and medical device litigation She has been court appointed to several leadership positions, including the Abilify and Viagra products liability litigations. An experienced litigator, Ms. Liakos has testified before the FDA advisory board on amending the regulations concerning generic manufacturer liability.

Matthew Lavin is a Partner in Napoli Shkolnik PLLC's Washington, D.C. office. He is a litigator who represents healthcare providers and their patients, with a particular focus on behavioral healthcare and the substance abuse treatment industry.

Timothy Hulla is a trial attorney who has practiced in asbestos litigation for almost 20 years.

Kardon Stolzman was an Associate at Napoli Shkolnik who worked within the Napoli Shkolnik Personal Injury and Class Action departments. Mr. Stolzman's focus was on asbestos-related cancers serious injuries, and overtime & minimum wage claims.

Thomas A. Narducci is a junior Associate at Napoli Shkolnik PLLC. Mr. Narducci works within the Napoli Shkolnik Commercial Litigation and Class Action Department. Mr. Narducci's practice focuses mostly on disputes involving employment litigation, antitrust, contracts, trade secrets, and partnership liability. (*Id.* ¶ 35.)

Brett Bustamante is an associate in the Aviation and Product Liability departments, handling all phases of litigation from intake to settlement or trial. Mr. Bustamante has represented clients locally and nationally in Mass Tort, Class Action, Pharmaceutical, Commercial, Automobile, Mechanical Product Liability, Aviation, and Personal Injury matters. Brett has been awarded the prestigious Rising Star award by New York Super Lawyers due to his advocacy and litigation knowledge.

Maria Fleming is an associate in the firm's Complex Litigation Department, working out of the Cleveland, Ohio office. She handles motion writing and depositions involving the opioid crisis across the country. Ms. Fleming has experience in corporate compliance where she worked as a compliance analyst for a recruiting company. (*Id.* ¶ 33.)

Syreeta Poindexter was an associate in the firm's Complex Litigation Department, working out of the Cleveland, Ohio office.  She handled motion writing and depositions involving the opioid crisis across the country. (*Id.* ¶ 34.)

Jorge Varela was an associate at Napoli Shkolnik. Mr. Varela worked within the Napoli Shkolnik Complex Litigation department. Mr. Varela's handled motion writing and depositions involving the opioid crisis across the country. (*Id.* ¶ 36.)

Harold May is a senior paralegal at Napoli Shkolnik PLLC. He has been a paralegal for over 20 years. Mr. May as well as other paralegals and supporting staff. (*Id.* ¶ 37.)

Robert Gali, is the Chief Technology Officer at Napoli Shkolnik. Prior to joining Napoli Shkolnik, Mr. Gali was the Director, Management Information Systems at Dropbox.

## IV.    Counsel's fees and expenses for litigating this complex case are reasonable.

Salvatore C. Badala performed a significant amount of work on this case, including virtually all research and drafting. As such, he billed 75.6 hours, not counting the time he spent drafting this motion for approval of the settlement. (*Id.* ¶ 39 & Ex. 2.) His standard hourly billing rate is $625. (*Id.* ¶ 39) Thus, his time on this matter is worth 75.6 x $625 = $47,250.00. (*Id.*).

Paul J. Napoli billed 3.3 hours on this matter. (*Id.* ¶ 40 & Ex. 2.) His standard hourly billing rate is $875. (*Id.* ¶ 40.) Thus, his time on this matter is worth 3.3 x $875 = $2,887.50. (*Id.* ¶ 40.)

Hunter J. Shkolnik billed 5.1 hours on this matter. (*Id.* ¶ 41 & Ex. 2.) His standard hourly billing rate is $875. (*Id.* ¶ 41.) Thus, his time on this matter is worth 5.1 x $875 = $4,462.50. (*Id.* ¶ 41.).

Paul Maslo billed 559.9 hours on this matter. (*Id.* ¶ 42 & Ex. 2.) His standard hourly billing rate is $625. (*Id.* ¶ 42.) Thus, his time on this matter is worth 559.9 x $625 = $349,937.50 (*Id.* ¶ 42.).

Andrew Dressel billed 400.4 hours on this matter. (*Id.* ¶ 43 & Ex. 2.) His standard hourly billing rate is $625. (*Id.* ¶ 43.) Thus, his time on this matter is worth 400.4 x $625 = $250,250.00. (*Id.* ¶ 43.).

Robert Gitelman billed 2.5 hours on this matter. (*Id.* ¶ 44 & Ex. 2.) His standard hourly billing rate is $625. (*Id.* ¶ 44.) Thus, his time on this matter is worth 2.5 x $625 = $1,562.50. (*Id.* ¶ 44.).

Danielle Marlow billed 472.2 hours on this matter. (*Id.* ¶ 45 & Ex. 2.) His standard hourly billing rate is $625. (*Id.* ¶ 45.) Thus, his time on this matter is worth 472.2 x $625 = $295,125.00. (*Id.* ¶ 45.).

Jennifer Liakos billed 11.3 hours on this matter. (*Id.* ¶ 46 & Ex. 2.) His standard hourly billing rate is $625. (*Id.* ¶ 46.) Thus, his time on this matter is worth 11.3 x $625 = $7,062.50. (*Id.* ¶ 46.).

Matthew Lavin billed 6.5 hours on this matter. (*Id.* ¶ 47 & Ex. 2.) His standard hourly billing rate is $625. (*Id.* ¶ 47.) Thus, his time on this matter is worth 6.5 x $625 = $4,062.50. (*Id.* ¶ 47.).

Timothy Hulla billed 13.7 hours on this matter. (*Id.* ¶ 48 & Ex. 2.) His standard hourly billing rate is $625. (*Id.* ¶ 48.) Thus, his time on this matter is worth 13.7 x $625 = $8,562.50. (*Id.* ¶ 48.).

Kardon Stolzman billed 20.8 hours on this matter. (*Id.* ¶ 49 & Ex. 2.) His standard hourly billing rate is $450. (*Id.* ¶ 49.) Thus, his time on this matter is worth 20.8 x $620 = $13,000.00. (*Id.* ¶ 49.).

Thomas A. Narducci billed 267.95 hours on this matter. (*Id.* ¶ 50 & Ex. 2.) His standard hourly billing rate is $375. (*Id.* ¶ 50.) Thus, his time on this matter is worth 267.95 x $375 = $100,481.25. (*Id.* ¶ 50.).

Brett Bustamante billed 11.75 hours on this matter. (*Id.* ¶ 51 & Ex. 2.) His standard hourly billing rate is $375. (*Id.* ¶ 51.) Thus, his time on this matter is worth 11.75 x $375 = $4,406.25. (*Id.* ¶ 51.).

Maria Fleming billed 179.3 hours on this matter. (*Id.* ¶ 52 & Ex. 2.) Her standard hourly billing rate is $375. (*Id.* ¶ 52.) Thus, his time on this matter is worth 179.3 x $375 = $67,237.50. (*Id.* ¶ 52.).

Syreeta Poindexter billed 210.5 hours on this matter. (*Id.* ¶ 53 & Ex. 2.) Her standard hourly billing rate is $375. (*Id.* ¶ 53.) Thus, his time on this matter is worth 210.5 x $375 = $78,937.50. (*Id.* ¶ 53.).

Harold May, a paralegal at Napoli Shkolnik, billed 827.48 hours on this matter. (*Id.* ¶ 54 & Ex. 2) His standard hourly billing rate in $275. (*Id.* ¶ 54.) Thus, his time on this matter is worth 827.48 x $275 = $227,557.00. (*Id.* ¶ 54.).

Robert Gali, the head of Information Technology (IT) at Napoli Shkolnik, billed 5.5 hours on this matter. His standard hourly billing rate is $275.00. (*Id.* ¶ 55.) Thus, his time on this matter is worth 5.5 x $275 - $1,512.50. (*Id.* ¶ 55.).

Eric Chan, billed 2.55 hours on this matter. His standard hourly billing rate is $175.00. (*Id.* ¶ 56.) Thus, his time on this matter is worth 2.5 x $175 - $446.25. (*Id.* ¶ 56.).

Christian Lopez, billed 2.5 hours on this matter. His standard hourly billing rate is $175.00. (*Id.* ¶ 57.) Thus, his time on this matter is worth 2.5 x $175 - $437.50. (*Id.* ¶ 57.).

Deicy Cordero, billed 6.2 hours on this matter. His standard hourly billing rate is $175.00. (*Id.* ¶ 61.) Thus, his time on this matter is worth 6.2 x $175 - $1,085.00. (*Id.* ¶ 61.)

Christopher Merrill, billed 1.4 hours on this matter. His standard hourly billing rate is $175.00. (*Id.* ¶ 62.) Thus, his time on this matter is worth 1.4 x $175 - $245.00. (*Id.* ¶ 62.)

Hubert Mendizabal, billed 0.5 hours on this matter. His standard hourly billing rate is $175.00. (*Id.* ¶ 63.) Thus, his time on this matter is worth 0.5 x $175 - $87.50. (*Id.* ¶ 63.)

Jorge Varela, billed 192.86 hours on this matter. His standard hourly billing rate is $175.00. (*Id.* ¶ 64.) Thus, his time on this matter is worth 192.86 x $175 - $33,750.50. (*Id.* ¶ 64.)

Mia Warren, billed 0.1 hours on this matter. Her standard hourly billing rate is $175.00. (*Id.* ¶ 65.) Thus, his time on this matter is worth 0.1 x $175 - $17.50. (*Id.* ¶ 65.)

Michelle Andrade, billed 0.25 hours on this matter. Her standard hourly billing rate is $175.00. (*Id.* ¶ 66.) Thus, his time on this matter is worth 0.25 x $175 - $43.75. (*Id.* ¶ 66.)

Trevelyan Howe, billed 12 hours on this matter. Her standard hourly billing rate is $175.00. (*Id.* ¶ 67.) Thus, his time on this matter is worth 12 x $175 - $2,100.00. (*Id.* ¶ 67.)

Michael Hawrylchak billed 2.4 hours on this matter. His standard billing rate is  $175.00 (*Id*. ¶ 58.) Thus, his time on this matter is worth 2.4 x $175 - $420.00. (*Id*. ¶ 58.)

Nestor Galazara billed 1.5 hours on this matter. His standard billing rate is $175.00 . (*Id*. ¶ 59.) Thus, his time on this matter is worth 1.5 x $175 - $262.50. (*Id*. ¶ 59.)

Charlie DeJesus billed .02 hours on this matter. His standard billing rate is $175.00.  (*Id*. ¶ 60.)  Thus, his time on this matter is worth .02 x $175 - $3.50. (*Id*. ¶ 60.)

The litigation expenses include, for example, mediation fees ($10,981.11); travel to and from hearings and the mediation, as well as lodging, accommodations, and other related expenses ($8,058.58); The NERA Group, an economics firm that assisted with the damages calculations

used in the mediation and during settlement negotiations ($317,493.54); Angeion Group, the third-party administrator that provided notice to collective members and managed the opt-in process ($45,000.00); and various miscellaneous charges. (*Id.* ¶ 75 & Ex. 3.).

## V. Named Plaintiff was an active participant throughout the litigation.

Vecchio has actively participated in this litigation. (*Id.* ¶ 76.) Prior to filing this case, she did an extensive amount of work gathering documents and summarizing relevant facts for the complaint. (*Id.* ¶ 77.) She also reviewed the complaint before filing. (*Id.* ¶ 77.) Vecchio has kept in contact with counsel and has been available to answer questions at every stage of the case. (*Id.* ¶ 78.) She advocated for class members and always put their interests before her own. (*Id.* ¶ 79.) He reviewed the settlement agreement to ensure that it is fair. (*Id.* ¶ 80.)

## VI. The settlement agreement's terms are fair

The maximum gross settlement amount is $1,100,000.00. (Settlement Agreement § 4, Badala Decl. Ex. 1.) This amount "covers and includes all wage and hour claims asserted or that could have been asserted in the FLSA Action (as amended) and the New York Law Action of all Settlement Class Members." (Ex. 1.) Specifically, at least $303,591.11 will be paid to Plaintiffs that have opted into the litigation, $10,000 will compensate Vecchio for the services she rendered on behalf of the FLSA collective, $366,666.67 will be paid in attorneys' fees, $354,724.22 will go towards litigation expenses, including no more than $45,000.00 will be paid to Angeion Group, the settlement administrator. (Ex. 1.)

As shown in Ex. D to the settlement agreement, if Plaintiff opts-out of this settlement, each Plaintiff will receive at least $100. The remaining Settlement Amount (approximately $200,500.00) is then distributed to Plaintiffs pro rata based on their service time.[1]

## LEGAL STANDARD

A plaintiff may settle and release FLSA claims against an employer by obtaining court approval. *See Taylor v. Progress Energy, Inc.*, 415 F.3d 363, 374 (4th Cir. 2005). "Courts greatly favor the settlement[] of cases and allowing litigants to achieve their own resolution of disputes." *Faile v. Lancaster County*, No. 0:10-cv-02809-CMC, 2012 U.S. Dist. LEXIS 189610, at *12 (D.S.C. Mar. 8, 2012) (*citing Lomascolo v. Parsons Brinckerhoff, Inc.*, No. l:08-cv-1310 (AJT/JFA), 2009 U.S. Dist. LEXIS 89129, at *10 (E.D. Va. Sept. 28, 2009)).

"A one-step settlement approval process is appropriate for this FLSA . . . collective action[] and has been used in other collective actions." *Day v. NuCO2 Mgmt., LLC*, No. 1:18- cv-02088, 2018 WL 2473472, at *1 (N.D. Ill. May 18, 2018) (collecting cases). "Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions." *Id.* (citation omitted). *See also Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) (endorsing and employing the one-step FLSA settlement approval process).

When approving a settlement, the court must determine whether the agreement reflects a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Taylor*, 415 F.3d at 374. Courts generally consider the following factors in determining whether the resolution is fair

---

[1]For example, if a person worked there for six years, they would receive more than a person who has worked there for two years.  f  If, however, Defendants are unable to produce information calculating service time for each Plaintiff, settlement proceeds will be distributed evenly to each Plaintiff.

and reasonable: "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiff; (5) the probability of plaintiff's success on the merits and the amount of the settlement in relation to the potential recovery." *In re Dollar Gen. Stores FLSA Litig.*, No. 5:09-MD-1500, 2011 WL 3904609, at *2 (E.D.N.C. Aug. 23, 2011) (quotation marks omitted). Where the settlement agreement provides for an award of attorneys' fees, the court also examines whether that amount is reasonable. *Id.*

## ARGUMENT

### I.   The parties have bona fide FLSA disputes.

As reflected in prior motion practice, Plaintiffs argue that they are misclassified as independent contractors and are really employees. As such, they should be entitled to minimum wage and overtime. They also contend that travel time; pre-appointment work; and post-appointment work are compensable. Defendants take the opposite position on all issues. These disputes are merely the tip of iceberg. "Thus, there are genuine disputes that support the concept of a negotiated settlement of this FLSA claim." *Rivera v. Dixson*, No. TDC-14-cv-2901, 2015 WL 427031, at *3 (D. Md. Jan. 30, 2015).

### II.   The settlement agreement represents a fair and reasonable resolution of the parties' disputes.

The settlement agreement fairly and reasonably resolves this case: (A) the parties engaged in significant settlement-related discovery; (B) settling now will allow the parties to achieve a resolution of this litigation before they incur substantial discovery, motion, and trial-related expenses; (C) the parties engaged in arm's-length settlement negotiations with the assistance of a well-qualified mediator; (D) Plaintiffs' counsel is well-credentialed and has ample experience in

14

wage-and-hour litigation; and (E) the amount of the settlement properly reflects the relative merits of Plaintiffs' claims and Defendants' defenses, in light of the risks and uncertainty of the litigation.

### a.   The parties engaged in extensive discovery before settlement.

Both parties hired an expert who each submitted an expert report, and there had been over 50 depositions taken across the country, including Plaintiff's expert. Additionally, the parties examined this expert report and damages calculations, as well as the evidence Defendants' submitted with their opposition to Vecchio's motion for conditional certification and partial summary judgement. Thus, "the parties have had adequate time to assess each other's claims and defenses, and to properly weigh the benefits of a settlement before trial." *In re Dollar Gen. Stores FLSA Litig.*, 2011 WL 3904609, at *3. Additional discovery would not have a material impact on the parties' respective views of the case.

### b.   Settling now would allow the parties to avoid the enormous expenses related to discovery, further motion practice, and trial.

Over 2,700 Examiners have opted into this litigation. If the parties were to take discovery on only 10% of them, that would still mean over 270 sets of discovery requests, document productions, and depositions. Discovery of that magnitude would take several years and cost millions of dollars. This complex case would also require the use of numerous experts.

"Therefore, the settlement[], if approved, would enable the[] [parties] to avoid the time and expense of further litigation to resolve the moving [P]laintiffs' claims, whether through summary judgment or trial." *In re Dollar Gen. Stores FLSA Litig.*, 2011 WL 3904609, at *3. *See also Devine v. City of Hampton, Virginia*, No. 4:14-cv-81, 2015 WL 10793424, at *2 (E.D. Va. Dec. 1, 2015) ("The parties also litigated certification in a contested motion resolved before settlement. Both the

discovery conducted, and the stage of proceedings, suggest the parties' decision to settle was well informed.")

   c.   **There has been no fraud or collusion.**

The parties have vigorously litigated every stage of this case, including certification, decertification, and summary judgement. (Badala Decl. ¶ 14-19.) *See, e.g.*, *In re Dollar Gen. Stores FLSA Litig.*, 2011 WL 3904609, at *3 ("The court finds that there is a complete absence of evidence of fraud or collusion. It is clear from the record and the undersigned's numerous interactions with counsel that while they were professional in their dealings with one another, they zealously pursued their respective clients' interests.")

Extensive arm's-length negotiations between experienced counsel and use of a mediator are further evidence that the settlement was not collusive. *See, e.g.*, *Day*, 2018 WL 2473472, at *1 ("Here, the settlement meets the standard for approval. The settlement was the result of pre-suit investigation and substantial arm's-length negotiations over disputed issues between counsel well versed in wage and hour law, with the assistance of a neutral mediator."); *Devine* 2015 WL 10793424, at *2 (finding no fraud or collusion because "[t]he settlement reached by the parties . . . was concluded following arms-length negotiation, during which both sides were represented by experienced counsel," and "[t]he parties also participated in multiple meetings with Magistrate Judge Nathaniel Fox, as well as Mediator Wittenberg and Mediator Isserles to facilitate the mediated settlement"); *Villegas v. J.P. Morgan Chase & Co.*, No. 09-cv-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) ("[T]he Settlement was reached following two sessions with a private mediator experienced in wage and hour class actions. This tends to support the conclusion that the settlement process was not collusive.").

Accordingly, there is no evidence of fraud or collusion.

### d. Plaintiffs' counsel is well qualified and experienced.

As provided above, Plaintiffs are represented by well-credentialed attorneys with significant labor-and-employment experience. *See, e.g.*, *In re Dollar Gen. Stores FLSA Litig.*, 2011 WL 3904609, at *3 (approving settlement where counsel had "significant experience handling matters such as the instant litigation"). Moreover, because "settlement negotiations took place at arm's-length between highly experience[d] and competent counsel[,] [t]heir assessment of the settlement as fair and reasonable is entitled to considerable weight." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. Dec. 22, 2003). *See also Devine*, 2015 WL 10793424, at *2 ("In evaluating a settlement a court is entitled to rely on the judgment of experienced counsel for the parties and should hesitate to substitute its own judgment for that of counsel. Counsel believe the settlement is fair and reasonable, and although the court is not bound by counsel's opinion, it is nonetheless entitled to great weight.") (quotation marks, text alterations, ellipses, and citation omitted).

### e. The settlement amount is fair given the risks of litigation and projected recovery.

The settlement agreement reflects an exceptional result for Plaintiffs. The risks and costs of continued litigation are high. Defendants would vigorously defend this action on the merits, and there is a significant chance that they would prevail. For example, the court in *Razak*, 2018 WL 1744467, found at summary judgment that drivers were independent contractors as a matter of law. *See, e.g.*, *In re Dollar Gen. Stores FLSA Litig.*, 2011 WL 3904609, at *3 ("[The court] has evaluated [the settlement] in light of the probability of the moving plaintiffs' success, taking into account specifically the entry of summary judgment by . . . other courts against plaintiffs in cases similar to those at issue. The court concludes that the amounts payable to the moving plaintiffs

under the settlement agreement are fair and reasonable under the circumstances presented."). If that occurred here, or if Plaintiffs survived summary judgment but a jury ruled against them on the misclassification issue at trial, Plaintiffs would get nothing. There is a similar risk that the Court would also decide at summary judgment—or a jury at trial—that wait time is not compensable. That would result in Plaintiffs' total damages being less than $100,000.00.

Thus, the settlement agreement fairly and reasonably resolves Plaintiffs' claims. *See, e.g.*, *Anderson v. Sara Lee Corp.*, No. 4:03-cv-00031-H, 2013 WL 12250391, at *1 (E.D.N.C. May 16, 2013) ("The Court further finds the settlement was negotiated at arm's length by the parties and is a fair and reasonable resolution of the claims asserted and released by the Plaintiffs, in light of the parties' respective prospects for success (or failure) were the case to proceed to trial on the merits.").

### f.   The reaction of the Class has been positive.

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp*., 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.,* No. 94 Civ. 5587. 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003). Here, the Notices explicitly informed class members of their rights and the procedures to participate in the NYLL and FLSA settlements.

### g.   Establishing a Class and maintaining it through trial would not be simple.

Even if preliminary class status is granted, the risk of maintaining that class certification through trial is also present. Further, Defendants may argue on a decertification motion that individual questions preclude class certification. The claims at issue are vulnerable to a highly

individualized analysis on a person-by-person basis, such as which, if any, class members were required to travel between clients' homes without compensation and how often, what their primary language is, and what their individual understanding was regarding the content of the wage notices and wage statements provided by Defendants. Risk, expense, and delay permeate such a process. Settlement eliminates this risk, expense, and delay. This factor also favors final approval.

### h.  Defendants' ability to withstand a greater judgment.

Defendants' ability to withstand a greater judgment is uncertain. However, even if Defendants were able to withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig*., 80 F. Supp. 2d at 178 n.9 (alterations and citation omitted)).

Here, the Settlement Agreement provides Class Members with reasonable and more prompt relief than they would receive at the conclusion of the litigation, presumably several years from now, and which relief is not guaranteed due to the risks involved in proving liability and damages.

## III.  The requested payments for attorneys' fees and expenses are reasonable.

Courts routinely award counsel 1/3 of the gross common fund as attorneys' fees and reimbursement of litigation expenses.

"On the question of attorneys' fees, . . . in a common fund case such as this, a reasonable fee is normally a percentage of the Class recovery." *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05-cv-00187, 2007 WL 119157, at *1 (M.D.N.C. Jan. 10, 2007). To determine the reasonableness of the fee award, courts consider the following factors, which were adopted by the Fourth Circuit in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978): "(1) time and labor expended; (2) novelty and difficulty of the questions raised; (3) skill required

to properly perform the legal services; (4) attorney's opportunity costs in pressing the litigation; (5) customary fee for like work; (6) attorney's expectation at the outset of litigation; (7) time limitations imposed by the client or circumstances; (8) amount in controversy and results obtained; (9) experience, reputation and ability of the attorney; (10) undesirability of the case within the legal community in which the suit arose; (11) nature and length of the professional relationship between the attorney and client; and (12) fee awards in similar cases." *Smith*, 2007 WL 119157, at *1.

Application of these factor overwhelmingly supports awarding Plaintiffs' counsel 1/3 of the gross common fund as attorneys' fees:

| Factor | Application |
|---|---|
| Time and labor | In total, Plaintiffs' counsel devoted 3,302.06 hours of attorney and paralegal time to this matter. *See, e.g.*, *id.* at *2 ("Class Counsel dedicated significant time and effort to pursuing litigation on behalf of the class. The time and labor expended to date (at least 1089 hours of attorney time and 772 hours of paralegal time) tends to support the reasonableness of the requested fee award."). |
| Novelty and difficulty | The main issue in this case—whether Plaintiffs, members of the gig economy, are misclassified as independent contractors—involves a "highly complex and quickly-evolving area of the law," which "tends to support the reasonableness of the requested fee award." *Id.* The difficulty of this matter is also evidenced by the extensive motion practice between the parties, which included briefing on a motion to dismiss, a motion for conditional certification, and a variety of secondary issues. Moreover, only Plaintiffs' counsel was able to conditionally certify a nationwide collective of Quest employees (which, was later decertified). Counsel in both *Rojas* and *Haider* attempted to do so as well, but they failed. |
| Required skill | Dealing with the novel issues involved in this case, managing a large national collective action, and litigating against sophisticated counsel all cut in favor of approving the fee request. *See, e.g.*, *id.* ("The Court recognizes that it takes skilled counsel to manage a nationwide class action, carefully analyze the facts and legal claims and defenses under ERISA, and bring a complex case to the point at which settlement is a realistic possibility. Additional skill is required when the opponent is a sophisticated corporation with sophisticated counsel. This factor tends to support the reasonableness of the requested fee award."). |

| Opportunity costs | "As it is unquantified, this factor does not tend to support the reasonableness of the requested fee award." *Id.* |
|---|---|
| Customary fee | "In this jurisdiction, contingent fees of one-third (33%) are common. This factor provides support for the reasonableness of the requested fee award." *Id.* |
| Attorneys' expectation | "Class Counsel have informed the Court that their expectation at the outset of this case was that Defendants would present a vigorous defense. [Badala Decl. ¶ 68.] Indeed, Defendants filed comprehensive motions to dismiss, which is consistent with the expectation of Class Counsel. This factor tends to support the reasonableness of the requested fee award." *Smith*, 2007 WL 119157, at *2. |
| Time limitations | There were many times when the demands of this litigation prevented Plaintiffs' counsel from taking on other work. (Badala Decl. ¶ 68.) *See, e.g.*, *Smith*, 2007 WL 119157, at *2 ("Class Counsel notes that there were many times when the demands of this litigation precluded other paying work. This factor tends to support the reasonableness of the requested fee award."). |
| Amount in controversy and results | As provided above, "[t]he proposed settlement, considered as a percentage of the conservatively-estimated potential recovery, represents a highly favorable recovery for the . . . Class. This factor tends to support the reasonableness of the requested fee award." *Smith*, at *2. |
| Experience and reputation | "The experience, reputation and ability of Class Counsel strongly supports the reasonableness of the requested fee award." *Id.* at *3. |
| Undesirability of the case | There has been significant interest in suing Defendants. *Id.* |
| Length of relationship between attorneys and client | "Class Counsel did not have professional relationships with [the] Named Plaintiff prior to this litigation. This factor tends to support the reasonableness of the requested fee award." *Id.* |
| Fee awards in similar cases | There are numerous cases awarding class counsel 1/3 of the gross common fund as attorneys' fees. *See, e.g.*, *Day*, 2018 WL 2473472, at *2 ("The Court grants Plaintiffs' Counsel's request for one-third of the $900,000 Gross Settlement Amount ($300,000) as reasonable attorneys' fees. Courts in the Northern District of Illinois often have approved one-third of the settlement fund as attorneys' fees in FLSA collective actions. The Seventh Circuit has instructed district courts to award attorneys' fees that approximate the market rate. One-third of the total settlement fund is consistent with market rate in the Northern District of Illinois charged by experienced plaintiffs' counsel in contingent-fee wage and hour class and collective actions.") (citations omitted); *Thompson v. Qwest Corp.*, No. 17-cv-1745-WJM-KMT, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018) ("In situations such as this, where the Proposed Settlement creates a |

> common fund, attorneys' fees of one-third or thereabouts are generally deemed reasonable."); *Osman*, 2018 WL 2095172, at *3 ("One-third of the common fund is a reasonable attorneys' fee award and has been approved in similar FLSA collective actions in this judicial district.") (quotation marks omitted); *Graudins v. Kop Kilt, LLC*, No. 14-cv-2589, 2017 WL 736684, at *11 (E.D. Pa. Feb. 24, 2017) ("[T]he requested attorneys' fees of one third of the Settlement Fund are well within the range of fees awarded in similar cases."); *Devlin v. Ferrandino & Son, Inc.*, No. 15-cv-4976, 2016 WL 7178338, at *9 (E.D. Pa. Dec. 9, 2016) ("An award of approximately one-third of the common fund as an attorney's fee to class counsel is common in FLSA class action settlements."); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-cv-00738-RNC, 2014 WL 3778211, at *6 (D. Conn. July 31, 2014) ("The Court awards Plaintiffs' Counsel . . . one-third of the Gross Settlement Amount. This amount is reasonable. Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel. Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA.") (quotation marks and citations omitted).

"It is not necessary for the Court to conduct a lodestar analysis, but if one were to 'cross-check' the requested [33.33]% fee against the range of reasonable fee awards under a lodestar analysis, it is apparent that a 'lodestar cross-check' confirms the reasonableness of the requested percentage fee." *Smith*, 2007 WL 119157, at *3. Here, Plaintiffs' counsel devoted 3,302.06 hours of attorney and paralegal time to this matter, which has a value of $1,506,943.50—*significantly more* than the $366,666.67 in fees that they are requesting. Even if the Court cuts counsel's hourly rates in half, the value of their services surpasses the fee request. *See, e.g., Bozak*, 2014 WL 3778211, at *7 ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers. Here, Plaintiffs' Counsel do not seek a lodestar multiplier, but rather will almost certainly recover less than their actual loadstar." (quotation marks and citations omitted). *See also Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018) ("A percentage-of-the-fund attorneys' fee award is reasonable

when it amounts to double the loadstar attorneys' fees incurred by the plaintiffs' counsel."); *Devlin*, 2016 WL 7178338, at \*10 ("Class Counsel's request for \$516,667.00 in fees represents a multiplier of approximately 2.32 of the lodestar amount . . . Multiples ranging from 1 to 4 are often used in common fund cases."); *Smith*, 2007 WL 119157, at \*3 (awarding fee with a "multiplier of approximately 1.6 over the lodestar").

The Court should also order the reimbursement of counsel's litigation expenses. *See, e.g.*, *Smith*, 2007 WL 119157, at \*3-4 ("An attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved . . . . Class Counsel's request for reimbursement of actual expenses incurred to date totaling \$87,433.32 is hereby approved as fair and reasonable."); *Day*, 2018 WL 2473472, at \*2 (awarding 1/3 of gross common benefit fund as attorneys' fees and reimbursing all expenses); *Osman*, 2018 WL 2095172, at \*6 (same); *Graudins*, 2017 WL 736684, at \*12 (same); *Devlin*, 2016 WL 7178338, at \*11 (same); *Bozak*, 2014 WL 3778211, at \*7 (approving "over \$30,557.00 in out of pocket costs prosecuting this case, including costs for electronic research, court fees, court reporters, deposition transcripts, postage and courier fees, working meals, photocopies, telephone calls, travel and Plaintiffs' portion of the mediator's fees," as well as \$686,666.66 for attorneys' fees).

## IV.    The requested service fee award is reasonable.

The requested \$10,000 service fee award for Vecchio's active participation in the litigation "is comparatively on the lower end of awards deemed reasonable." *Thompson*, 2018 WL 2183988, at \*3. *See also Osman*, 2018 WL 2095172, at \*2 (\$7,500); *Day*, 2018 WL 2473472, at \*2 (\$7,000); *Graudins*, 2017 WL 736684, at \*9 (\$7,500); *Devlin*, 2016 WL 7178338, at \*11 (\$7,500); *Bozak*, 2014 WL 3778211, at \*4 (\$10,000); *Smith*, 2007 WL 119157, at \*4 (\$15,000).

23

### V.   The Court should certify the settlement class.

"Having conditionally certified the FLSA collective, [the Court] now must make a conclusive determination as to whether each plaintiff who has opted into the collective is in fact similarly situated to the named plaintiff." *Graudins*, 2017 WL 736684, at *5 (quotation marks omitted). *See also Edelen v. Am. Residential Servs*., LLC, No. DKC 11-cv-2744, 2013 WL 3816986, at *4 (D. Md. July 22, 2013) (when parties agree to settle an FLSA dispute on behalf of a collective of similarly-situated employees, a final determination must be made regarding the appropriateness of certification).

### VI The Settlement Class Meets the Legal Standard for Class Certification.

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). The Court should now grant final certification because all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23") are met. Plaintiff respectfully requests that the Court certify the Class, as defined in the Settlement Agreement. Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the Court to find that: "[Q]uestions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* at (b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a

standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (*quoting Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### a. *Numerosity*

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiff clearly satisfies the numerosity requirement as there are multiple class members.

### b. *Commonality*

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005). There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181. In Plaintiff's view, the required relationship between the claims of Plaintiff and those of the class clearly exists here. This case involves numerous common issues.

Here, all Plaintiffs are current or former employees of Quest. Although they allege differing numbers of hours worked and thus different damages, all present the common claim that they were paid less than minimum wage and are owed overtime. See, e.g., *Rehberg v. Flowers Baking Co. of Jamestown*, LLC, 2015 WL 1346125, at *8, 16 (W.D.N.C. Mar. 24, 2015) (concluding that "the

similarities between the Plaintiffs' claims far outweigh their differences" because "[w]hile each distributor may have carried out the essential functions of his job slightly differently, . . . all distributors were instructed to carry out their jobs subject to the Distributor Agreement, had substantially similar job duties, were subject to a common policy of being classified as independent contractors, and now claim violations . . . based on this classification."); *id.* at *17 ("Given that Defendants ha[d] a well-established company policy of classifying all distributors as independent contractors, the court is less concerned by the variations in Plaintiffs' employment circumstances."). Thus, Plaintiffs satisfy the commonality requirement.

### c. *Typicality*

Typicality is also satisfied. Typicality is satisfied "when each class member's claim rises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks omitted). "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani,* 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, Plaintiff's claims arise from the same factual and legal circumstances that form the bases of the Rule 23 Class Members' claims. Plaintiff and the Rule 23 Class Members performed the same or similar job duties during the Class Period. Plaintiff makes the same allegations regarding unpaid travel time compensation. Because Plaintiff's wage and hour claims arise from the same factual and legal circumstances that form the basis of the Rule 23 Class Members' claims, Plaintiff satisfies the typicality requirement. See *Dorn v. Eddington Sec., Inc.*, 2011 WL 382200, at

*2 ("Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(3) because Plaintiffs' claims for overtime pay, regular wages, and unlawful tips arise from the same factual and legal circumstances that form the bases of the class members' claims."); *Clark v. Ecolab, Inc*., 2009 WL 6615729, at *4 (S.D.N.Y.,2009; *Frank*, 228 F.R.D. at 182.

### d. *Adequacy of the Named Plaintiff*

Named Plaintiff, Maria Vecchio, is an adequate class representative. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.23(a)(4). "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and … have no interests antagonistic to the interests of other class members." *Toure v. Cent. Parking Sys. of N.Y*., No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted); see also *Campos v. Goode, No*. 10 Civ. 224, 2010 WL 5508100, at *2 (S.D.N.Y. Nov. 29, 2010); *McMahonv. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *2 (S.D.N.Y. Mar. 3, 2010). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.,* No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks omitted). Here, Plaintiff satisfies the adequacy requirement because there is no evidence that Plaintiff and class members' interests are at odds – on the contrary, Plaintiff's interests are clearly aligned with the interests of the class. *See Diaz v. E. Locating Serv., Inc*., No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (finding adequacy requirement met where plaintiffs' interests were not antagonistic or at odds with those of class members); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *2 (S.D.N.Y. Aug. 23, 2010) (same); *McMahon v. Olivier Cheng Catering & Events*, LLC, 2010 WL 2399328, at *2 (same). E. Certification Is Proper Under Rule 23(b)(3). Rule 23(b)(3) requires that

the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation*." Amchem Prods., Inc. v. Windso*r, 521 U.S. 591, 623 (1997). Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 598 (2d Cir. 1986).

### e.  *Common Questions Predominate*

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole…. predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig*., 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted), abrogated on other grounds by Miles v. Merrill Lynch & Co. *In re Initial Pub. Offering Sec. Litig*., 471 F.3d 24 (2d Cir. 2006). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check*, 280 F.3d at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). Here, class members' common factual allegations and common legal theory predominate over any factual or legal variations among Class Members. See *Clark*, 2009 WL 6615729, at *5 (common factual allegations and common legal theory predominated over factual and legal variations among Class Members in wage and hour misclassification case); *Torres v. Gristede's Corp*., No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006), at *16 (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual

calculations of overtime wages"). The only individualized issues pertain to the calculation of damages, and it is well-settled that individualized damages calculations do not defeat predominance. See Frank, 228 F.R.D. at 183 (collecting cases holding that calculation of damages in overtime litigation does not impact the predominance analysis). Plaintiff therefore satisfies Rule 23(b)(3).

### f.   *A Class Action Is a Superior Mechanism*

Plaintiff also satisfies the superiority requirement. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp*., 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3). Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. See *Hanlon v. Chrysler Corp*., 150 F.3d 1011 (9th Cir. 1998). Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. See *Amchem,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.") (internal citation omitted); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.") Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 140 (internal quotation marks omitted). 1023 (9th Cir. 1998); *Diaz*, 2010 WL 5507912, at *3. Plaintiff and class members have limited financial resources with which to

prosecute individual actions. Here, concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction. Class treatment will create uniform resolution of the issues and achieve judicial economy, convenience and fairness to all parties.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) certify the settlement class; (2) grant final approval of the *Joint Stipulation of Settlement and Release* as fair, reasonable, adequate and binding on all Class Members who have not timely opted-out; (3) approve the FLSA settlement; and (4) fully and finally dismiss the Litigation with prejudice.


Dated: October 11, 2022

Respectfully submitted,

*/s/ Salvatore C. Badala*
Salvatore C. Badala
NAPOLI SHKOLNIK PLLC
400 Broadhollow Rd. #305
Melville, New York 11747
Telephone: (212) 397-1000
Facsimile: (646) 843-7603
Email: sbadala@napolilaw.com


*Counsel for Plaintiffs*