# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA VECCHIO, individually, and on behalf of all others similarly-situated,<br><br>Plaintiff,<br><br>v.<br><br>QUEST DIAGNOSTICS, INC., EXAMONE WORLD WIDE, INC., and EXAMONE LLC,<br><br>      Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT, SERVICE AWARD, ATTORNEYS' FEES AND EXPENSES, ADMINISTRATION COSTS AND THE ENTRY OF FINAL JUDGMENT**<br><br>Civil Action No.: 1:16-cv-05165-ER-KNF |
| MARIA VECCHIO, individually, and on behalf of all others similarly-situated,<br>Plaintiff,<br>v.<br>QUEST DIAGNOSTICS, INC., EXAMONE WORLD WIDE, INC., and EXAMONE LLC,<br>      Defendants. | Civil Action No.:  1:19-cv-05194-ER |

## TABLE OF CONTENTS

STATEMENT OF RELEVANT FACTS .................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................. 2

    I.    THE SETTLEMENT SHOULD BE APPROVED BECAUSE ITS TERMS ARE
FAIR, REASONABLE AND ADEQUATE ....................................................... 7

        A.    Procedural Fairness ................................................................... 8

        B.    Substantive Fairness .................................................................. 9

    II.    THE COURT SHOULD APPROVE THE SETTLEMENT OF THE FLSA
CLAIMS ................................................................................................. 15

    III.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ........................ 18

        A.    The Settlement Class Meets the Legal Standard for Class Certification. ............. 18

    IV.    THE REQUESTED SERVICE FEE AWARD IS REASONABLE ........................ 24

    V.    THE PROPOSED ATTORNEYS' FEE AND COSTS ARE FAIR AND
REASONABLE ........................................................................................ 25

        A.    The Time and Labor Expended by Counsel ................................. 26

        B.    The Magnitude and Complexities of the Litigation ...................... 29

        C.    The Risk of Litigation ............................................................. 30

        D.    The Quality of Representation ................................................... 31

        E.    The Requested Fee in Relation to the Settlement ......................... 31

        F.    Public Policy Considerations .................................................... 33

    VI.    THE PROPOSED ATTORNEYS' FEE AND COSTS ARE FAIR AND
REASONABLE ........................................................................................ 33

    VII. ADMINISTRATION FEES ..................................................................... 34

CONCLUSION ................................................................................................. 35

# TABLE OF AUTHORITIES

Cases                                                                                          Page(s)

*Ansoumana v. Gristede's Operating Corp.*,
   201 F.R.D. 81 (S.D.N.Y. 2001) ..................................................................................... 15

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty of Albany*,
   522 F.3d 182 (2d Cir. 2008) ......................................................................................... 26

*Asare v. Change Grp. Of N.Y., Inc.*,
   2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ...................................................... 24, 26

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ....................................................................... 9, 27, 32

*Behzadi v. Int'l Creative Mgmt. Partners*, LLC,
   2015 WL 4210906 (S.D.N.Y. July 9, 2015) ................................................................ 31

*Bijoux v. Amerigroup New York*, LLC,
   2016 WL 2839797 (E.D.N.Y. May 12, 2016) ....................................................... 28, 30

*Castagna v. Madison Square Garden, L.P.*,
   2011 WL 2208614 (S.D.N.Y. June 11, 2011) .............................................................. 12

*Cheeks v. Freeport Pancake House, Inc.*,
   796 F.3d 199 (2d Cir. 2015) ......................................................................................... 15

*Chhab v. Darden Rests., Inc.*,
   2016 WL 3004511 (S.D.N.Y. May 20, 2016) .............................................................. 19

*Chowdhury v. Brioni Am., Inc.*,
   2017 WL 5953171 (S.D.N.Y. Nov. 29, 2017) ............................................................. 16

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ............................................................................. 8, 10, 29

*Clark v. Ecolab*,
   2010 WL 1948198 (S.D.N.Y. 2010) ........................................................................... 31

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) ........................................................................................... 18

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ......................................................................................... 7, 8

*Davis v. J.P. Morgan Chase & Co.*,
   827 F.Supp.2d 172 (W.D.N.Y.2011) ........................................................................... 32

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ......................................................................................... 17

*Diaz v. E. Locating Serv.*, Inc.,
   2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ............................................................. 21

*Dorn v. Eddington Sec., Inc.*,
   2011 WL 382200 (S.D.N.Y. January 21, 2011) .......................................................... 19

*Flores v. Anjost Corp.*,
   2014 WL 321831 (S.D.N.Y.,2014) ........................................................................ 28, 30

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
   104 F. Supp. 3d 290 (E.D.N.Y. 2015) ......................................................................... 10

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ........................................................ 14

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ........................................................................... 19

*Gilliam v. Addicts Rehab. Ctr. Fund*,
   2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ..................................... 31

*Glatt v. Fox Searchlight Pictures,* Inc.,
   811 F.3d 528 (2d Cir. 2016) ......................................................... 22, 23

*Goldberger*,
   209 F.3d ............................................................................... 24, 26, 30

*Green v. Wolf Corp.*,
   406 F.2d 291 (2d Cir. 1968) ............................................................. 22

*Hall v. ProSource Techs., LLC*,
   2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ............................... 28, 30

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .......................................................... 22

*Henry v. Little Mint, Inc.*,
   2014 WL 2199427 (S.D.N.Y. May 23, 2014) ................................... 27

*Hernandez v. Immortal Rise, Inc.*,
   306 F.R.D. 91 (E.D.N.Y., 2015) ...................................................... 23

*HVT, Inc, v. Port Authority of N.Y. and N. J.*,
   2018 WL 6079932 (E.D.N.Y. Nov. 21, 2018) ................................... 26

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................... 10, 13

*In re Dollar Gen. Stores FLSA Litig.*,
   2011 WL 3904609 ....................................................................... 16, 17

*In re Gilat Satellite Networks,* Ltd.,
   2007 WL 2743675,n.41 (E.D.N.Y. Sept. 18, 2007) .......................... 31

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003) .............................................. 32

*In re Ira Haupt & Co.*,
   304 F. Supp. 917 (S.D.N.Y. 1969) ................................................... 12

*In re Lloyd's Am. Trust Fund Litig.*,
   2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ................................. 27

*In re Nissan Radiator/Transmission Cooler Litig.*,
   2013 WL 4080946 (S.D.N.Y. May 30, 2013) ................................... 26

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................... 12

*In re Penthouse Exec. Club Comp. Litig.*,
   2014 WL 185628 (S.D.N.Y. Jan. 14, 2014) ..................................... 26

*In re Rite Aid Corp. Secs. Litig.*,
   146 F. Supp. 706 (E.D. Pa. 2001) .................................................... 14

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) .............................................. 26

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001) ............................................................. 21

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ........................................................ 12
*Johnson*,
2011 WL 4357376 .................................................................. 27, 28
*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
109 F.R.D. 391 (S.D.N.Y. 1986) ............................................... 19
*Khait v. Whirlpool Corp.*,
2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ...................... 13, 31
*Kochilas v. National Merchant Services, Inc.*,
2015 WL 5821631 (E.D.N.Y. 2015) ......................................... 30
*Lipstein v. 20X Hospitality LLC*,
2023 WL 1928860 (S.D.N.Y. Jan. 25, 2023) ........................... 23
*Long v. HSBC USA Inc.*,
2015 WL 5444651 (S.D.N.Y. Sept. 11, 2015) .......................... 10
*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) .......................... 11, 12, 28
*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997) ..................................................... 20
*Marisol A. v. Giuliani*,
185 F.R.D. 152 (S.D.N.Y. 1999) ............................................... 13
*Massiah v. MetroPlus Health Plan, Inc.*,
2012 WL 5874655 (E.D.N.Y.,2012) ......................................... 24
*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2d Cir. 2007) ..................................................... 26
*McBean v. City of N.Y.*,
228 F.R.D. 487 (S.D.N.Y. 2005) .............................................. 21
*Miltland Raleigh-Durham v. Myers*,
840 F. Supp. 235 (S.D.N.Y. 1993) ........................................... 33
*Mohney v. Shelly's Prime Steak*,
2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) .......................... 31
*Morris v. Affinity Health Plan, Inc.*,
859 F. Supp. 2d 611 (S.D.N.Y. 2012) ........................................ 8
*Myers v. Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010) ..................................................... 22
*Navarrete v. Milano Mkt. Place, Inc.*,
2019 WL 4303347 (S.D.N.Y. Sept. 11, 2019) ......................... 31
*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) ..................................................... 14
*Oscar v. BMW of N. Am., LLC*,
274 F.R.D. 498 (S.D.N.Y. 2011) .............................................. 18
*Peoples v. Annucci*,
180 F. Supp. 3d 294 (S.D.N.Y. 2016) ........................................ 8
*Pucciarelli v. Lakeview Cars, Inc.*,
2017 WL 2778029 (E.D.N.Y. June 26, 2017) .......................... 24
*Quow v. Accurate*,
2018 WL 3368673 (S.D.N.Y. July 10, 2019) ........................... 15

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
    2012 WL 651640 (S.D.N.Y. Feb. 24, 2012) ................................................ 27, 31

*Reade-Alvarez v. Eltman, Eltman & Cooper*, P.C.,
    237 F.R.D. 26 ........................................................................................ 18

*Reichman v. Bonsignore, Brignati & Mazzotta*, P.C.,
    818 F.2d 278 (2d Cir. 1987) ...................................................................... 33

*Riedel v. Acqua Ancien Bath N.Y. LLC*,
    2016 WL 3144375 (S.D.N.Y. May 19, 2016) .............................................. 10

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*,
    2003 WL 21136726 (S.D.N.Y. May 15, 2003) ............................................ 11

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ................................................................ 18, 20

*Romero v. La Revise Assocs., L.L.C.*,
    58 F. Supp. 3d 411 (S.D.N.Y. 2014) .......................................................... 10

*Sanders v. CJS Solutions Group*, LLC,
    2018 WL 620492 (S.D.N.Y. Jan. 30, 2018) ................................................ 23

*Sewell v. Bovis Lend Lease, Inc.*,
    2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) .............................................. 27

*Siddiky v. Union Square Hospitality Grp.*, LLC,
    2017 WL 2198158 (S.D.N.Y. May 17, 2017) ......................................... 24, 29

*Sierra v. Spring Scaffolding LLC*,
    2015 WL 10912856 (E.D.N.Y. Sept. 30, 2015) ...................................... 12, 23

*Singh v. MBD Construction Mgmt., Inc.*,
    2018 WL 2332071 (S.D.N.Y. May 23, 2018) .............................................. 31

*Spann v. AOL Time Warner, Inc.*,
    2005 WL 1330937 (S.D.N.Y. June 7, 2005) ................................................. 8

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F.Supp.2d 254 (S.D.N.Y.,2003) .......................................................... 14

*Thompson v. Qwest Corporation*,
    2018 WL 2183988 (D.Colo., 2018).............................................................. 23

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................... 7, 8, 12

*Wolinsky v. Scholastic Inc.*,
    900 F. Supp. 2d 332 (S.D.N.Y. 2012) ........................................................ 16

*Zelster v. Merrill Lynch & Co., Inc.*,
    2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ............................................ 25

Statutes

29 U.S.C. § 216(b) ...................................................................................... 28

Rules

Fed. R. Civ. P. 23(a)(1).................................................................................. 18
Fed. R. Civ. P. 23(e)(2)................................................................................... 7
Rule 23 ..............................................................................................Passim

Rule 23(a).................................................................................................................. 18
Rule 23(a)(2).............................................................................................................. 19
Rule 23(a)(3).............................................................................................................. 20
Rule 23(a)(4).............................................................................................................. 20
Rule 23(b) ................................................................................................................. 18
Rule 23(b)(3)................................................................................................. 18, 21, 22

Other Authorities

2016 WL 441422, at *5 (S.D.N.Y. Aug. 19, 2016)..................................................... 15
2015 WL 58216, at *8 ................................................................................................ 32

## <u>STATEMENT OF RELEVANT FACTS</u>

Maria Vecchio, individually and on behalf of Class and Collective Members, by and through her undersigned attorney, respectfully submits this memorandum of law in support of her Unopposed Motion for Final Approval of Class and Collective Action Settlement, Service Award, Attorneys' Fees and Expenses, Administration Costs and the Entry Of Final Judgment ("Final Approval Motion" or "the Motion") in this Fair Labor Standards Act ("FLSA") Litigation and New York Labor Law ("NYLL") Litigation action against Defendants Quest Diagnostics, Inc., Examone World Wide, Inc., and Examone, LLC (collectively "Defendants"). For the reasons set forth herein, and upon the annexed Declaration of Salvatore C Badala, Esq., executed on June 19, 2024 (the "Badala Decl."), and all exhibits annexed thereto, and the Affidavit of Katrina R. Ashley Declaration (the "Ashley Decl."), on behalf Angeion Group, and all the exhibits annexed thereto, and upon all prior pleadings and proceedings had herein, Plaintiff, on consent of the Parties, respectfully requests that the Court grant this motion and enter an Order as follows:

1. Approving as fair and adequate the FLSA settlement for the Claimants pursuant to the Parties' Amended Joint Stipulation of Settlement and Release Settlement Agreement and Release ("Settlement Agreement"), annexed hereto as **Exhibit A**.

2. Approving as fair and adequate the class-wide settlement for the Rule 23 Participating Members pursuant to the Parties' Settlement Agreement;

3. Certifying the Settlement Class and Collective pursuant to Rule 23 and the FLSA for purposes of effectuating the settlement;

4.    Authorizing the distribution of settlement checks to all Claimants who affirmatively joined the FLSA settlement and Participating Members who did not exclude themselves, per the Settlement Agreement, representing their share of the Settlement Fund;

5.    Awarding a Service Award to the Named Plaintiff in the amount of $10,000.00;

6.    Providing for the release of all claims as specified in the Settlement Agreement;

7.    Awarding attorneys' fees in the amount of $366,666.67 for legal services performed in prosecuting and settling the claims in this action, to Class Counsel;

8.    Awarding $354,724.22 for costs and out-of-pocket expenses to Class Counsel;

9.    Awarding $145,000.00 for fees and costs to Angeion Group; and

10. Dismissing this action against Defendants with prejudice, but with the Court's continued jurisdiction over the construction, interpretation, implementation, and enforcement of the Parties' Settlement Agreement and over the administration and distribution of the Settlement Fund.

## FACTUAL AND PROCEDURAL BACKGROUND

These related wage and hour actions brought pursuant to the FLSA and the NYLL concern the claims of Named Plaintiff Maria Vecchio and the Opt-in Plaintiffs (together as "Claimants"), as well as the claims of the Rule 23 New York settlement class ("Participating Class Members," and referred to collectively with Claimants, as "Plaintiffs" or "Class Members"). Plaintiffs respectfully submit this motion seeking final approval of the settlement. Plaintiffs worked as Mobile Examiners ("Examiners"), performing physical examinations and basic lab work at the homes or businesses of customers. Defendants would assign some number of appointments to each Examiner each work-day. For each appointment, the Examiner would be required to perform one or more services or procedures, *e.g.,* drawing blood, taking physical measurements, or conducting cognitive tests.

2

On June 29, 2016, Plaintiff Maria Vecchio filed a Class Action and Collective Action Complaint against Defendants, commencing the action bearing Case No. 16-cv-5165, in which Plaintiff alleged, *inter alia*, class claims under New York State wage and hour laws, as well as collective claims under the Fair Labor Standards Act ("FLSA Litigation"). Plaintiff sought recovery of, among other things, allegedly unpaid employee benefits, minimum and overtime wages, penalties, liquidated damages, and attorneys' fees and costs. After approximately one year of discovery, the parties stipulated to the dismissal without prejudice of the NYLL claims on October 10, 2017. (Dkt. No. 477 (16-cv-5165)).

On April 30, 2018, the Court issued an opinion and order conditionally certifying an FLSA collective. (Dkt. No. 644 (16-cv-5165)). The court further authorized the issuance of a nationwide notice to the collective. By the end of the notice period, over 2,700 plaintiffs had opted in to the FLSA Collective. On April 9, 2019, Plaintiff commenced a separate action against Defendants in the Supreme Court of New York, County of New York, Index No. 652069/2019, asserting the previously dismissed New York State wage claims. Defendants subsequently removed the action to this District on June 3, 2019. (Dkt. No. 1 (19-cv-5194)) ("NY Law Litigation"). The following week, on June 11, 2019, the case was assigned to this Court as related to case 16-cv-5165.

On February 21, 2020, defendants filed motions for decertification and partial summary judgment. (Dkt. Nos. 3174; 3179 (16-cv-5165)). An opinion and order issued on September 18, 2020 granted the motions. (Dkt. No. 3195 (16-cv-5165)). Specifically, the Court decertified the FLSA Collective because Vecchio failed to show that the opt-in plaintiffs were similarly situated to her in any material respect; dismissed with prejudice Vecchio's minimum wage claims, along with the overtime wage claims of 32 specific opt-in plaintiffs; and dismissed without prejudice the claims of all remaining opt-in plaintiffs. *Id.* at 26.

Class Counsel has conducted significant discovery, including but not limited to interviewing Plaintiff and Class Members, reviewing and analyzing thousands of pages of documents produced by Defendants, attending and defending the depositions of approximately fifty (50) Class Members including the Named Plaintiff, and with the aid of an expert reviewing materials and data produced by Defendants. Class Counsel has engaged in extensive motion practice in relation to Vecchio's motion for conditional certification, and a variety of secondary issues. In 2018, the parties went through an opt-in process where over 2,700 Examiners joined the case. Class Counsel has analyzed extensive data that Defendants produced for many of those Examiners so that they could calculate damages under a variety of scenarios, and has evaluated the merits of the claims against Defendants, as well as Defendants' defenses, in the FLSA Litigation and the NY Law Litigation, and has considered the impact of this Agreement on Plaintiffs.

The Parties engaged in extensive negotiations. On June 25, 2020, the parties virtually mediated before Carol Wittenberg, who has successfully mediated numerous high-profile labor and employment cases. However, the parties could not reach an agreement. Thereafter, on December 17, 2020, the parties participated in a second virtual mediation before Marc Isserles who has successfully mediated numerous high-profile labor and employment cases, and the parties reached a preliminary settlement agreement.

During the months thereafter, the parties continued negotiating the final terms of the class settlement and reached a formal agreement. On December 10, 2021, Plaintiff filed an Unopposed Motion for Approval Conditionally Certifying the Class and Collective and Preliminary Approval of the Class and Collective Action Settlement. (Dkt. Nos. 3228 (16-cv-5165), 40 (19-cv-5194)). On August 25, 2022, the Court issued an Order denying Plaintiff's motion without prejudice and

directed Plaintiff to submit revised motions in accordance with the Court's instructions. (Dkt. No. 3238 (16-cv- 5165), 50 (19-cv-5194)).

On October 11, 2022, Plaintiff filed a new Unopposed Motion for Approval Conditionally Certifying the Class and Collective and Preliminary Approval of the Class and Collective Action Settlement, along with an amended joint stipulation of settlement and release. (Dkt. Nos. 3245 (16-cv- 5165), 55 (19-cv-5194)). On April 7, 2023, the Court issued an Opinion and Order granting the motion to conditionally certify the class and collective for purposes of settlement but denying without prejudice the motion for conditional approval of the Amended Settlement Agreement. (Dkt. Nos. 3248 (16-cv-5165), 62 (19-cv-5194)). In the Opinion and Order, the Court enumerated several remaining issues in the Amended Settlement Agreement and directed the parties to further revise the agreement consistent with the Court's Opinion and Order. *Id.* at 11-14. Among other issues, the Court pointed out that Section 4.6(b) of the Amended Settlement Agreement improperly suggested that a class member (as defined in Section 1.3, referenced above), simply by virtue of cashing a settlement check, would join the settlement and release his or her independent right to bring FLSA claims, even if he or she had not filed written consent to join the collective, as required by the FLSA. *Id.* at 12.

On May 31, 2023, the parties submitted an Amended Joint Stipulation of Settlement and Release ("Settlement Agreement"), which is annexed hereto as **Exhibit A.** (*See also* Dkt. No. 3261-1 (16-cv-5165), 71-1 (19-cv-5194)). In accordance with this Court's directive, the parties modified certain terms of the Amended Settlement Agreement involving the release of FLSA claims, for Preliminary Approval of the settlement. By virtue of the revised amendments, all FLSA Claimants (except approximately 2, 700 Claimants who had previously submitted a consent to join form pursuant to the 2018 nationwide notice) were required to submit a written consent to join the

FLSA collective by the Bar Date. The court granted preliminary approval of the Settlement Agreement on June 2, 2023. (Dkt. Nos. 3262 (16-cv-5165), 72 (19-cv-5194)). As part of that Order, the Court authorized notice to Settlement Class Members, as defined in the Settlement Agreement.

Defendants provided Angeion Class Members' names and contact information. Angeion analyzed this information and determined that the settlement covers 15,409 potential Class Members to whom Angeion was required to issue Notice. *See* Ashley Decl. ¶ 5. On January 17, 2024, Angeion Group, disseminated the Notice and Claim Form ("Notice Packet") via the United States Postal Service first class mail, postage prepaid, to 15,278 Class Members, for whom Defendants provided sufficient address information. *See id*. ¶ 6 and Notice Packet annexed thereto as **Exhibit A**. On February 16, 2024, Angeion caused Notice Packets to be mailed via USPS first class mail, postage prepaid, to 176 additional Class Members who were inadvertently not included in the initial notice mailing. (*See id.* ¶ 7).  Although 2,399 Notice Packets were returned as undeliverable, Angeion obtained updated addresses for 1,986 and remailed them accordingly.  *See id*. ¶ 9.  Additionally, on January 17, 2024, Angeion activated a case-specific website, www.QuestDiagnosticsLawsuit.com (the "Settlement Website"), where Class Members were able to either download and print the Claim Form to be completed and mailed via the USPS, or complete and submit their Claim Form online. *See id.* ¶ 10. To date, the Settlement Website has received 1,656 website visits by 1,239 unique users, totaling 3,527 page views. *Id*. Further, on January 16, 2024, Angeion activated the following toll-free number dedicated to this Settlement: 1-844-412-4026, which was accessible is accessible 24 hours a day, 7 days a week. *See id.* ¶ 10. To date, Angeion received 375 calls totaling 1,804 minutes. *See id.* ¶ 13.

The deadline for Class Members to submit a Claim Form was March 18, 2024. Angeion has received 3,569 claim forms submissions.[1] *See id.* ¶14. After receipt of the Notice Packet, no class members have objected to the settlement, and only 11 class members have timely requested exclusion from the settlement. *See id.* ¶ 15 and exclusions annexed thereto as **Exhibit B**.

The maximum gross settlement amount is $1,100,000.00. *See* **Exhibit A**, Settlement Agreement § 4. This amount covers and "includes all wage and hour claims asserted or that could have been asserted in the FLSA Action (as amended) and the New York Law Action of all Settlement Class Members . . . and all attorneys' fees and expenses of Class Counsel, service awards, and the expenses of the settlement administrator. " (*Id.* §1.18)  Specifically, at least $122,165.49 of the Settlement Fund will be paid to Claimants that have opted into the FLSA Litigation, at least $81,443.66 of the Settlement Fund will be paid to Participating Members who did no excluded themselves from NYLL Litigation, $10,000 will compensate Vecchio for the services she rendered on behalf of Class Members, $366,666.67 will be paid in attorneys' fees, $354,724.22 will go towards litigation expenses and $145,000.00 will be paid to Angeion Group, the settlement administrator. Based on Angeion's calculations of the individual award allocations, each Participating Class Member will receive approximately $5.33 and each Claimant (Class Members who opted into the FLSA Litigation) will receive approximately $34.23.

# I.     THE SETTLEMENT SHOULD BE APPROVED BECAUSE ITS TERMS ARE FAIR, REASONABLE AND ADEQUATE

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2). Judicial

---

[1] This amount includes the Claimants who opted into the FLSA Litigation pursuant to the 2018 nationwide notice.

determination of procedural fairness involves examination of the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at \*6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions").

### A. Procedural Fairness

"To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Morris v. Affinity Health Plan, Inc.,* 859 F. Supp. 2d 611, 617-18 (S.D.N.Y. 2012). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also D'Amato*, 236 F.3d at 85. Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Peoples v. Annucci*, 180 F. Supp. 3d 294, 307 (S.D.N.Y. 2016).

Here, the settlement was reached after Plaintiff conducted a thorough investigation and evaluation of the claims, and after extensive negotiations between the parties, including two mediations. Moreover, the parties zealously litigated this action at every stage. They engaged in extensive motion practice in relation to Vecchio's motion for conditional certification and a variety

of secondary issues. Pursuant to the 2018 and 2024 nationwide notices, Plaintiffs went through an extensive opt-in process where over 3,500 Examiners joined the FLSA Litigation. Plaintiff and Class Counsel analyzed extensive data that Defendants produced for most of those Examiners, so that they could calculate damages under a variety of scenarios. They negotiated before an experienced wage-and-hour mediator and conducted further private, arm's-length discussions after mediation. Only then did the parties finally come to a fair and reasonable settlement, which appropriately balances the risks and costs of continuing to litigate against the likely benefits to Plaintiffs. Thereafter, Angeion received the data from Defendants' Counsel and after analyzing this information, determined that the settlement covers 15,409 potential Class Members to whom Angeion was required to issue Notice. Ashley Decl. ¶ 5. Furthermore, as stated above, in addition to mailing notices via USPS, there were other notice mechanisms in place, including a case-specific website, which allowed Class Members to submit their Claim Form online, and a hotline that was accessible 24 hours a day, 7 days a week. *Id*. ¶¶ 10-13.

Based on these factors, the process leading up to settlement, and the post settlement process, strongly indicates procedural fairness.

**B. Substantive Fairness**

In addition to being procedurally fair, the Rule 23 Settlement also satisfies the substantive fairness factors that courts in this Circuit apply when determining whether final approval of a class action settlement is appropriate. *Beckman v. KeyBank*, N.A., 293 F.R.D. 467, 474 (S.D.N.Y. 2013). More specifically, in *Grinnell*, the Second Circuit held that courts should consider the following factors when evaluating a class action settlement for final approval:

(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the state of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), abrogated on other grounds by *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000). Here, an evaluation of the Grinnell factors support the settlement approval.

### 1. The Complexity, Expense, and Likely Duration of the Litigation

This factor is met because both parties will avoid the significant expense of motion practice, expert discovery, and the risk of a lengthy, fact-intensive trial. Courts have repeatedly recognized that cases where plaintiffs must prove that they engaged in off-the-clock work are both fact-intensive and challenging, as it is difficult to establish the parties' claims and defenses. *See, e.g., Riedel v. Acqua Ancien Bath N.Y. LLC*, No. 14 Civ. 7238, 2016 WL 3144375, at *7 (S.D.N.Y. May 19, 2016) (recognizing risks of proving damages for off-the-clock claims); *Long v. HSBC USA Inc.*, No. 14 Civ. 6233(HBP), 2015 WL 5444651, at *4 (S.D.N.Y. Sept. 11, 2015) ("[T]he claims and defenses are fact-intensive and present risks, including the potential inability to prove the number of hours worked and amount of unpaid overtime wages[.]"). Indeed, further litigation would result in "additional expense, including . . . motion practice, trial preparation, trial and appeal, that could meaningfully decrease possible recovery for plaintiffs." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 299–300 (E.D.N.Y. 2015); *Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 420–21 (S.D.N.Y. 2014) (finding, in an FLSA action,

that "the large number of class members and the fact-intensive nature of their claims mean that litigation would likely be lengthy, complex, and expensive"). *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them").

Here, the burden will be especially great because the parties maintain drastically different assessments of whether and how much Plaintiffs worked before and after their scheduled hours. Plaintiffs seek to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. This case has 15,409 putative class members with fact-intensive claims, which would require a complicated and expensive trial and would further delay resolution. Further litigation without settlement would cause additional and unnecessary expense and delay, and such expense and delay would be disproportionate to any likely recovery. Discovery of that magnitude would take several years and cost millions of dollars. Presenting such evidence at trial would consume tremendous amounts of time and resources for both parties. Further, this complex case would also require the use of numerous experts. Accordingly, resolving these claims in a prompt and efficient manner weighs in favor of final approval of the settlement.

## 2. The Reaction of the Class to The Settlement

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.*" Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, No. 94 Civ. 5587. 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003).

Here, the Notice Packet informed class members of their rights and the procedures to participate in the NYLL and FLSA settlements. After receipt of the Notice, no class members submitted objections to the settlement, and only eleven class members have timely requested exclusion from the settlement. *See* Ashley Decl. ¶¶ 15-16.  Therefore, this factor also weighs in favor of final approval.

### 3.  The State of the Proceedings and the Amount of Discovery Completed

To evaluate this factor, "[t]he pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Sierra v. Spring Scaffolding LLC*, 2015 WL 10912856, at *5 (E.D.N.Y. Sept. 30, 2015) (citation omitted).

In this case, the parties engaged in extensive discovery prior to settlement. Specifically, both parties hired an expert who each submitted an expert report, and there had been over 50 depositions taken across the country, including Plaintiff's expert. Additionally, the parties examined this expert report and damages calculations, as well as the evidence Defendants' submitted with their opposition to Vecchio's motion for conditional certification and partial summary judgement. Badala Decl. ¶¶ 14-20. Additional discovery would not have a material impact on the parties' respective views of the case.

### 4.  The Risks of Establishing Liability and Damages

"In assessing the settlement, the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continued risks of litigation." *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *6 (S.D.N.Y. June 11, 2011) (citing *Maley v. Del Global Tech Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002)). Evidently, "[l]itigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). *see Wal-Mart Stores*, 396 F.3d at 118 (recognizing that regardless of the perceived strength of a plaintiff's case, liability is "no sure thing"). Critically, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969). In evaluating the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (quoting *Marisol A. v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)).

As explained above, the risks and costs of continued litigation are high. Defendants would vigorously defend this action on the merits, and there is a chance that they would prevail. Assuming that remaining Plaintiffs survive another round of summary judgment, but a jury ruled against them at trial, Class Members would get nothing. Thus, the settlement agreement fairly and reasonably resolves Plaintiffs' claims.

### 5. The Risks of Maintaining the Class Action Through Trial

As discussed above, continuing this matter through trial would expose Class Members to the possibility of receiving nothing. Additionally, the risk of maintaining that class certification through trial is also present. Critically, "[a] contested class certification motion would likely

require extensive discovery and briefing." *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *6 (E.D.N.Y. Jan. 20, 2010). Moreover, given the factual issues in play, preparing and presenting testimonial and documentary evidence regarding these factual and legal issues at such a trial would consume extensive amounts of time and resources for both sides, and require substantial judicial resources to adjudicate the Parties' disputes. Therefore, a trial of the liability and damages issues would be costly and would further delay resolution. Any judgment could be appealed, thereby extending the duration of the litigation. Therefore, this factor weighs in favor of approval.

6. **The Ability of the Defendants to Withstand a Greater Judgment and the Range of Reasonableness of the Settlement Fund Considering the Best Possible Recovery and Considering all the Attendant Risks of Litigation**

A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005). Significantly, "[t]he determination of a reasonable settlement is not susceptible to a mathematical equation yielding a particularized sum." *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F.Supp.2d 254, 260 (S.D.N.Y.,2003) (*citing Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)) (noting that "in any case there is a range of reasonableness with respect to a settlement"). "In fact, settlement can be approved even when it amounts to only a small percentage of the recovery sought." *Id.; see also In re Rite Aid Corp. Secs. Litig.*, 146 F. Supp. 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically recovered "between 5.5% and 6.2% of the class members' estimated losses") (citation omitted). The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.Supp.2d 254 at 260. "Instead, there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any

particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id.*

Here, the amount of the settlement properly reflects the relative merits of Plaintiffs' claims and Defendants' defenses, in light of the risks and uncertainty of the litigation. As noted above, Defendants produced significant discovery, which allowed counsel to calculate damages under multiple scenarios for the Plaintiffs who joined this action. Badala Decl. ¶ 86. Specifically, they produced the following information for each weekly pay period for all Plaintiffs: the amount that Defendants paid them; the average time spent per appointment; the and the appropriate service fee for each treatment. *Id.* ¶ 87. Thus, the $1,100,000 settlement amount represents a fair value given the attendant risks of litigation and the collection risks discussed above, even though the recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal. Each Class Member who did not opt-out of the settlement will receive a payment. Given the inherent risks of litigation, the settlement represents a significant percentage of the recovery. Further, individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class may be in the millions of dollars, the individual damages incurred by each Class member resulting from Defendants' alleged wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

## II. THE COURT SHOULD APPROVE THE SETTLEMENT OF THE FLSA CLAIMS

In addition to Rule 23 settlements, settlements of FLSA claims also require court approval. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206-07 (2d Cir. 2015). The standard "for approval of an FLSA settlement is lower than for a Rule 23 settlement" because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 Settlement. *Quow v. Accurate Mech.*, 2018 WL 3368673, at *4 (S.D.N.Y. July 10, 2019) (citation omitted). This is because, unlike the Rule 23 procedure, collective members must affirmatively opt into the FLSA litigation in order to join it, but a failure to do so does not prevent them from bringing their own suits at a later date. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Azogue v. 16 for 8 Hospitality LLC*, 2016 WL 441422, at *5 (S.D.N.Y. Aug. 19, 2016) (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* at *5 (citation omitted). "Court approval of an FLSA settlement is appropriate 'when the settlement is reached as a result of contested litigation to resolve *bona fide* disputes.'" *Chowdhury v. Brioni Am., Inc.*, 2017 WL 5953171, at *2 (S.D.N.Y. Nov. 29, 2017).

In evaluating a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test that this Court articulated in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), and which the Second Circuit has recently endorsed. *Fisher v. SD Protection Inc.*, 18-cv-2504, Dkt. No. 65-1, p. 19 (2d Cir. Feb. 4, 2020). The *Wolinsky* factors consider: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement

agreement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *See Wolinsky*, 900 F. Supp. 2d at 335.

As reflected in prior motion practice, Plaintiffs argue that they are misclassified as independent contractors and are really employees. As such, they should be entitled to minimum wage and overtime. They also contend that travel time; pre-appointment work; and post-appointment work are compensable. Defendants take the opposite position on all issues. These disputes are merely the tip of the iceberg. Thus, there are genuine disputes that support the concept of a negotiated settlement of this FLSA claim. Moreover, as explained above, the parties have vigorously litigated every stage of this case, including certification, decertification, and summary judgement. Badala Decl. ¶¶ 75-19. *See, e.g., In re Dollar Gen. Stores FLSA Litig*., 2011 WL 3904609, at *3 ("The court finds that there is a complete absence of evidence of fraud or collusion. It is clear from the record and the undersigned's numerous interactions with counsel that while they were professional in their dealings with one another, they zealously pursued their respective clients' interests").

In sum, the FLSA Litigation settlement should be approved because the settlement agreement fairly and reasonably resolves this case. First, the parties engaged in significant settlement-related discovery. Second, settling now will allow the parties to achieve a resolution of this litigation before they incur substantial discovery, motion, and trial-related expenses. Third, the parties engaged in arm's-length settlement negotiations with the assistance of a well-qualified mediator. Fourth, Plaintiffs' counsel is well-credentialed and has ample experience in wage-and-hour litigation. Fifth, the amount of the settlement properly reflects the relative merits of Plaintiffs' claims and Defendants' defenses, in light of the risks and uncertainty of the litigation. Sixth, the Claimants in this case followed the proper procedures by submitting Claim Forms to affirmatively

join the FLSA litigation and thus affirmatively consented to join the settlement. Because the factors required for approval of a Rule 23 settlement are more extensive and inclusive of those required for approval of a settlement of FLSA claims, Plaintiff does not separately discuss each FLSA factor here. Accordingly, because the Settlement Agreement resolves a clear and actual dispute in contested litigation, after arm's-length settlement negotiations, it should be approved.

## III.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

### A. The Settlement Class Meets the Legal Standard for Class Certification.

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). The Court should now grant final certification because all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23") are met. Plaintiff respectfully requests that the Court certify the Class, as defined in the Settlement Agreement. Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Additionally, Rule 23(b)(3) requires the Court to find that: "[Q]uestions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* at (b)(3). In this Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating

class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper*, P.C., 237 F.R.D. 26, 31 (E.D.N.Y. 2006. As discussed further below, all such factors are satisfied here for settlement purposes.

### 1. Numerosity

Numerosity is met when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In this Circuit, "no magic minimum number establishes numerosity." *Oscar v. BMW of N. Am*., LLC, 274 F.R.D. 498, 504 (S.D.N.Y. 2011) (citation omitted). However, "numerosity is presumed at a level of 40 members . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). The Second Circuit has cautioned that "[d]etermination of practicability depends on all the circumstances surrounding a case, not on mere numbers." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).

Here, Plaintiff clearly satisfies the numerosity requirement as there are multiple class members that would make joinder impracticable. Further, numerosity is presumed because there are more than 40 class members.

### 2. Commonality

The proposed class also satisfies the commonality prong under Rule 23(a)(2), which evaluates "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Commonality is satisfied when "[p]laintiffs and class members bring nearly identical claims arising from Defendants' alleged uniform violations of the FLSA and NYLL." *Chhab v. Darden Rests., Inc*., 2016 WL 3004511, at *2 (S.D.N.Y. May 20, 2016). Although the claims need not be identical, there must be a "unifying thread" among the

19

claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).

In this case, the alleged damages sustained by Plaintiff and the other members of the Class flow from the common nucleus of operative facts surrounding Defendants' misconduct, including, whether Defendants failed to pay overtime compensation and minimum wage in violation of the NY Labor Law. The job responsibilities and the alleged injuries sustained by Plaintiffs were largely the same for all employees notwithstanding Defendants' classification of their employment. For instance, all employees, regardless of classification, allege they have been injured by no receiving proper compensation for travel time between appointments, as well as pre, and post-appointment work, including but not limited to spinning blood, or completing and uploading paperwork for the day. This is enough to establish commonality for purposes of a Rule 23 settlement. *See e.g. Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271 LTS, Slip Copy, 2011 WL 382200, at *2 (S.D.N.Y. January 21, 2011) (commonality was satisfied where common issues involved alleged violations of wage and hour laws by failing to pay overtime, making deductions from class members' pay, and failing to keep accurate records).

### 3. Typicality

Pursuant to Rule 23(a)(3), typicality is satisfied "when each class member's claim rises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir. 1997). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936-37.

Here, the claims of the Plaintiff herein are typical of the claims of the members of the Class as a whole, all of whom have sustained as a result of the common course of conduct of Defendants as complained of in this class action complaint. The claims of Plaintiff are typical of the Class because it is alleged that Defendants subjected all Class members to the same course of conduct. Further, Plaintiff's claims are brought on behalf of herself and the Class, because they have substantially similar contract agreements and pay provisions, which are subject to Defendants' alleged common practice, policy, or plan of failing to keep accurate records and failing to pay minimum wage and overtime in violation of the NYLL and the FLSA. Because Plaintiff's and Class Members' claims arise from the same factual and legal circumstances, the typicality requirement has been met.

### 4. Adequacy of the Named Plaintiff

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.23(a)(4). Adequacy requires that "the proposed class representative must have an interest in vigorously pursuing the claims of the class and must have no interests antagonistic to the interests of other class members." Here, Plaintiff Maria Vecchio satisfies the adequacy requirement because there is no evidence that Plaintiff and class members' interests are at odds. *See Diaz v. E. Locating Serv.*, Inc., No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (finding adequacy requirement met where plaintiffs' interests were not antagonistic or at odds with those of class members); Plaintiff Vecchio was instrumental in the investigation and analysis of the vital facts relevant to the claims and the defenses raised by Defendant throughout the course of the litigation. Badala Decl.  ¶¶ 81-82. Additionally, Plaintiff Vecchio has vigorously pursued the interests of other Class Members, and for purposes of

settlement, the interests of Plaintiff and the class are aligned. Therefore, Plaintiff is an adequate class representative.

### 5. Certification requirements under Rule 23 (b)(3) have been met

The two requirements of 23(b)(3), specifically superiority and predominance, are also satisfied. Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These factors require that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole…. predominate over those issues that are subject only to individualized proof*." In re Visa Check/MasterMoney Antitrust Litig*., 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted), *abrogated on other grounds by Miles v. Merrill Lynch* & Co. *In re Initial Pub. Offering Sec. Litig*., 471 F.3d 24 (2d Cir. 2006). Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of N.Y*., 228 F.R.D. 487, 502 (S.D.N.Y. 2005). Here, as explained above, Plaintiff and the Class were or are employed by Defendants as Mobile Examiners in New York. Questions of law and fact common to the Class as a whole include, but are not limited to, whether Defendants failed to pay overtime compensation and minimum wage in violation of the NYLL and theFLSA.

Further, this case also satisfies the superiority requirement. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp*., 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the

claims in the particular forum. Fed. R. Civ. P. 23(b)(3). Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

Here, individual litigation of the claims of all Class members is economically unfeasible and individual Class members may not have a significant interest in individually controlling the prosecution of separate actions. Additionally, the individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. Thus, a class action is a superior mechanism because such treatment will create uniform resolution of the issues and achieve judicial economy, convenience and fairness to all parties.

### 6. Certification requirements under the FLSA have been met

As to certification of the FLSA, the Second Circuit has endorsed a two-step framework for determining whether a court should certify a case as a collective action under § 216(b). *See Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010*); see also Glatt v. Fox Searchlight Pictures,* Inc., 811 F.3d 528, 540 (2d Cir. 2016). First, the court must make "an initial determination to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether a FLSA violation has occurred.*" Id.* (marks and citations omitted). This determination requires only a "modest factual showing" from plaintiffs that "they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Id.* (marks and citations omitted). Critically, this standard is "'considerably less stringent than the requirements for class certification under Rule 23." *Lipstein v. 20X Hospitality LLC*, 2023 WL 1928860, at *2 (S.D.N.Y.

Jan. 25, 2023) (marks and citations omitted); *see also Sanders v. CJS Solutions Group*, LLC, No. 17 Civ. 3809 (ER), 2018 WL 620492, at *6 (S.D.N.Y. Jan. 30, 2018) (same). Accordingly, the Court should certify the FLSA collective for purposes of effectuating the settlement.

## IV.    THE REQUESTED SERVICE FEE AWARD IS REASONABLE

"Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Hernandez v. Immortal Rise, Inc.,* 306 F.R.D. 91, 101 (E.D.N.Y., 2015) (citation omitted). Indeed, "[i]t is important to compensate plaintiffs for the time they spend and the risks they take." *Id.; see Sierra v. Spring Scaffolding LLC*, 2015 WL 10912856, at *9 (E.D.N.Y. Sept. 30, 2015) (approving service awards of $10,000 and $7,500 to plaintiffs).

Here, Vecchio has actively participated in this litigation. Badala Decl. ¶ 81. Prior to filing this case, she did an extensive amount of work gathering documents and summarizing relevant facts for the complaint. *Id.* ¶ 82. She also reviewed the complaint before filing. *Id*. Vecchio has kept in contact with counsel and has been available to answer questions at every stage of the case. *Id*. ¶ 83. She advocated for class members and always put their interests before her own. *Id*. ¶ 84. She reviewed the settlement agreement to ensure that it is fair. *Id.* ¶ 85. In light of these considerations, the requested $10,000 service fee award for Vecchio's active participation in the litigation "is comparatively on the lower end of awards deemed reasonable." *Thompson v. Qwest Corporation*, 2018 WL 2183988, at *1 (D.Colo., 2018). *See also Massiah v. MetroPlus Health Plan, Inc*., 2012 WL 5874655, at *8 (E.D.N.Y.,2012) (collecting cases approving service awards

ranging from $5,000 to $30,000). Accordingly, the Court should approve the service award sought, to be paid from the Settlement Fund, pursuant to the terms of the Settlement Agreement.

## V.     THE PROPOSED ATTORNEYS' FEE AND COSTS ARE FAIR AND REASONABLE

"Reasonableness is the touchstone for determining attorneys' fees." *Asare v. Change Grp. Of N.Y., Inc*., 2013 WL 6144764, at *18 (S.D.N.Y. Nov. 18, 2013). It is well-established law that "[t]o determine whether a fee is reasonable, courts look to the factors identified by the Second Circuit in *Goldberger*." *Siddiky v. Union Square Hospitality Grp*., LLC, 2017 WL 2198158, at *9 (S.D.N.Y. May 17, 2017) (citing *Goldberger*, 209 F.3d at 50). Those factors are: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Id.* at 50. "Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on other less objective factors, such as the risk of the litigation and the performance of the attorneys." *Pucciarelli v. Lakeview Cars, Inc*., 2017 WL 2778029, at *2 (E.D.N.Y. June 26, 2017) (citation omitted).

The Settlement Agreement, which was preliminarily approved by this Court on June 2, 2023, provides that Plaintiff's Counsel will apply for an award of attorneys' fees and litigation expenses up to $721,390.89. The requested attorneys' fee award of $366,666.67 represents 33% of the settlement amount.  Additionally, in connection with the prosecution of this litigation, Class Counsel requests a total of $354,724.22, which include, for example, mediation fees; travel to and from hearings and the mediation, as well as lodging, accommodations, and other related expenses;

The NERA Group, an economics firm that assisted with the damages calculations used in the mediation and during settlement negotiations; and various miscellaneous charges.

Moreover, the Court-approved Notice Packet which was sent to all Collective and Class Members explained that Plaintiff's counsel would apply for $721,390.89 in attorney's fees and expenses incurred in this action. To date, no Class Member has objected to the requested attorneys' fees or expense reimbursement. The lack of objections to Class Counsel's fee and cost reimbursement request is some indication of the reasonableness of the requested award and weighs in favor of its approval. *Zelster v. Merrill Lynch & Co., Inc.*, No. 13 Civ. 1531, 2014 WL 4816134, at *9 (S.D.N.Y. Sept. 23, 2014) (lack of objections to class counsel's request for one third of the fund "provide[d] support for Class Counsel's fee request").

As explained below, the *Goldberger* factors weigh in favor of awarding Plaintiffs' counsel their requested fees of one-third of the gross settlement fund.

### A. The Time and Labor Expended by Counsel

As of June 11, 2023 the total number of hours expended on this litigation by Napoli Shkolnik is 3,592.43 hours. *See* Badala Decl. ¶ 41. Plaintiffs' Counsel investigated Plaintiffs' claims, drafted a detailed pleading, engaged in discovery, exchanged discovery requests and responses, analyzed employment records, and ESI, interviewed Plaintiff and numerous witnesses, participated in Court conferences and hearings, exchanged extensive correspondence between and among the parties, constantly kept in touch with all of the clients to update them on case developments and respond to inquiries, drafted multiple motions and oppositions, including summary judgment and class certification motions, and participated in two mediations sessions,

one which resulted in the Settlement – amounting to $1,612,855.25 in fees if calculated pursuant to the lodestar. *See id.*, Total Lodestar.

The reasonableness of the requested fee is further confirmed by applying the lodestar method as a "cross check." *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir. 2000*); Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007); *In re Penthouse Exec. Club Comp. Litig*., No. 10 Civ. 1145(KMW), 2014 WL 185628 at *10 (S.D.N.Y. Jan. 14, 2014). The lodestar is calculated based on hourly rates that have been approved by other courts in the Second Circuit and across the country. *See Guttentag, et al. v. Ruby Tuesday, Inc*., No 12 Civ. 3041 (AT), ECF Nos. 107-8, 109 (S.D.N.Y. Oct. 2, 2014) (approving hourly rates of $875-$625 for partners, $585-$555 for senior associates, $390-$375 for junior associates, $315 for head paralegal, and $275-$245 for other paralegals); *Asare v. Change Group of New York, Inc.,* No. 12 CIV. 3371 CM, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013)(approving hourly rates of "$750 per hour for partner time; $500 per hour for senior associate time; $300 per hour for associate time and $150 per hour for paralegal/staff time."); *In re Nissan Radiator/Transmission Cooler Litig*., No. 10 Civ. 7493 (VB), 2013 WL 4080946 (S.D.N.Y. May 30, 2013) (finding reasonable attorneys' fees based on hourly rates ranging from $750 (partner) to $650 (associate)); *In re Telik, Inc. Sec. Litig*., 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) (finding reasonable hourly rates ranging from $700 to $750 per hour).

Additionally, courts have previously noted that "[a] reasonable hourly rate is 'the rate a paying client would be willing to pay.'" *HVT, Inc, v. Port Authority of N.Y. and N. J.*, No. 15 Civ. 5867 (MKB) (VMS), 2018 WL 6079932, at *1 (E.D.N.Y. Nov. 21, 2018) (*quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). A meaningful portion of Plaintiffs' Counsels' practice is non-contingency cases where clients in fact

pay on an hourly basis at the following rates: $875 per hour for Mr. Napoli; $875 for Mr. Shkolnik; $625 per hour for Mr. Badala; $625 for Ms. Marlow; $625 for Mr. Dressel $375 per hour for Mr. Narducci, $275 per hour for head paralegal Harold May, and $175 to $275 per hour for other paralegals and supporting staff. *See* Badala Decl. ¶¶ 42-72. Plaintiffs' Counsel undertook prosecuting this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. *Id*. ¶ 73.

As the total number of hours expended on this litigation by my firm is 3,592.43 hours, the requested fee award of $366,666.67 represents a ***negative*** multiplier of 22.73% of Counsels' attorneys' fees lodestar of 1,612,855.25. (*Id.* ¶¶ 41, 77-78). Evidently, this negative multiplier is significantly below the norm within the Second Circuit and this District. *See, e.g., Griffin, et al. v. Aldi, Inc.*, No. 16-cv-354 (LEX/ATB) ECF No. 109 (N.D.N.Y. Nov. 15, 2018) (awarding Plaintiffs' Counsel a 1.96 lodestar multiplier); *Beckman v. KeyBank, N.A*., 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers"); *Sewell v. Bovis Lend Lease, Inc*., No. 09 Civ. 6548(RLE), 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) ("Courts commonly award lodestar multipliers between two and six."); *Johnson*, 2011 WL 4357376, at *20 (noting that "Courts regularly award lodestar multipliers from two to six times lodestar[]" and collecting cases); *In re Lloyd's Am. Trust Fund Litig*., No. 96 Civ. 1262 RWS, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Henry v. Little Mint, Inc*., No. 12 Civ. 3996 (CM), 2014 WL 2199427, at *16 (S.D.N.Y. May 23, 2014) ("In fact, the [1.9] multiplier is at the lower end of the range routinely granted by courts . . . ."); *Ramirez v. Lovin' Oven Catering Suffolk, Inc*., No. 11 Civ. 0520 (JLC), 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys'

fees equal to 6.8 times lodestar); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) ("[T]he modest multiplier of 4.65 is fair and reasonable.").

Additionally, the requested fee award will also compensate Plaintiffs' Counsel for the considerable time needed to administer the Settlement going forward. *See Flores v. Anjost Corp.,* 2014 WL 321831, at *9 (S.D.N.Y.,2014)  ("In wage and hour cases, Class Counsel are often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund."); *Johnson v. Brennan*, 2011 WL 4357376, at *16 (S.D.N.Y.,2011) (noting that future work covered in settlement award supports fee application). Thus, Class Counsel's request for approval of attorneys' fees is reasonable in relation to the settlement.

## B.  The Magnitude and Complexities of the Litigation

"In evaluating the second Goldberger factor, '[t]he size and difficulty of the issues in a case are significant factors to be considered . . .'" *Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *15 (E.D.N.Y. Apr. 11, 2016). "To that end, among FLSA cases, the most complex type is the hybrid action brought here, where state wage and hour violations are brought as an opt out class pursuant to Rule 23 in the same action as the FLSA opt in collective action pursuant to 29 U.S.C. § 216(b)." *Id.* (internal quotations omitted). In *Bijoux v. Amerigroup New York*, LLC, 2016 WL 2839797, at *1 (E.D.N.Y. May 12, 2016), the court awarded one-third of the total gross settlement fund in attorneys' fees, "justified by the work that Class Counsel did negotiating the settlement and conducting the litigation, the ultimate recovery, and the risk that Class Counsel undertook in bringing the claims."

Here, the Firm pursued nationwide FLSA collective action and NYLL Rule 23 class action. The main issue in this case—whether Plaintiffs, members of the gig economy, are misclassified as independent contractors—involves a highly complex and quickly-evolving area of the law, which tends to support the reasonableness of the requested fee award. The difficulty of this matter is also evidenced by the extensive motion practice between the parties, which included briefing on summary judgement, motion for conditional certification, and a variety of secondary issues. Moreover, only Plaintiffs' counsel was able to conditionally certify a nationwide collective of Quest employees (which, was later decertified).

## C. The Risk of Litigation

The risk of litigation is also an important factor in determining a fee award. Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), abrogated by *Goldberger*, 209 F.3d 43 (2d Cir. 2000). "[D]espite the most rigorous and competent of efforts, success is never guaranteed." *Id.* at 471. "As previously discussed, the risk of litigation, taking into account the settlement result, warrants the Firms' requested fee award. Indeed, "[d]espite the most vigorous and competent of efforts, success is never guaranteed." *Grinnell*, 495 F.2d at 471. Class Counsel undertook to prosecute this action without any assurance of payment for its services, litigating this case on a wholly contingent basis in the face of tremendous risk. Class and collective wage and hour cases of this type are, by their very nature, complicated and time consuming.

The Firm reached a favorable settlement on the Class Members' behalf, without necessitating "full-blown" discovery, while still more than adequately investigating and analyzing substantial documents, producing a certain and immediate recovery. *Siddiky v. Union Square*

*Hospitality Group*, LLC, 2017 WL 2198158, at * 4(S.D.N.Y., 2017). Additionally, the Firms "risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation." *Kochilas v. National Merchant Services, Inc*., 2015 WL 5821631, at *9 (E.D.N.Y. 2015).

### D.  The Quality of Representation

"To determine the quality of the representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Hall*, 2016 WL 1555128, at *1. *see Bijoux*, 2016 WL 2839797, at *1 (awarding one-third of the gross fund in attorneys' fees and noting that class counsel was "experienced class action employment lawyers with good reputations among the employment law bar"). "The quality of representation is best measured by results." *Goldberger*, 209 F.3d at 55.

Napoli Shkolnik specializes in class-action, mass-tort, and commercial litigation. Badala Decl. ¶¶ 25-27.  It is a nationally-recognized firm that has handled numerous high-profile cases across the United States. *Id.* Class Counsel has substantial experience prosecuting large-scale wage and hour class and collective actions. *Id.* ¶ 28. Class Counsel's skill and experience were directly responsible for the favorable settlement and weigh in favor of granting the requested fees.

### E.  The Requested Fee in Relation to the Settlement

Plaintiffs' Counsel was retained on a purely contingency basis and has advanced all the costs and shouldered all the risk in the litigation. *See* Badala Decl. ¶ 73. Under the Settlement Agreement here, the Parties agreed that, subject to Court approval, Class Counsel would receive $366,666.67 as attorneys' fees, representing one-third of the total Settlement Fund.  The requested

fee is consistent with the one-third contingency fees frequently approved as part of FLSA settlements in this Circuit and in this District. *See, e.g., Flores v. Anjost Corp*., No. 11 Civ. 1531(AT), 2014 WL 321831, at *8 (S.D.N.Y. Jan. 29, 2014) (finding one-third award "consistent with the norms" of the Second Circuit and collecting cases where one-third was awarded in FLSA cases); *Singh v. MBD Construction Mgmt., Inc*., No. 16 Civ. 5216(HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one third of settlement is "normal rate"); *Gilliam v. Addicts Rehab. Ctr. Fund*, 05 Civ. 3452(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (same); *Behzadi v. Int'l Creative Mgmt. Partners*, LLC, No. 14-cv-4382 (LGS), 2015 WL 4210906 (S.D.N.Y. July 9, 2015) (awarding one-third to plaintiffs' counsel). *See Navarrete v. Milano Mkt. Place, Inc*., No. 18-CV-7858 (OTW), 2019 WL 4303347, at *2 (S.D.N.Y. Sept. 11, 2019) (the attorneys' fee award of "one-third of the settlement sum is reasonable and consistent with fees upheld by courts in this District").

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall." *See, e.g., In re Gilat Satellite Networks,* Ltd., No. 02 Civ. 1510, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007). The size of the $1,100,000 settlement weighs in favor of granting the requested fee award of one third of the Settlement Fund. *See, e.g., Mohney v. Shelly's Prime Steak*, No. 06 Civ. 4270,2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,265,000 fund in FLSA and NYLL tip misappropriation case). Courts in this Circuit have routinely granted requests for approximately 33% of the fund in cases with settlement funds substantially larger than this one. *See, e.g., Ramirez v. Lovin' Oven Catering Suffolk, Inc*., No. 11 CIV. 0520 JLC, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting 25% of the $4,750,000 total settlement amount in FLSA and NYLL wage case as attorneys' fees); *Clark v. Ecolab*, 2010 WL 1948198, at *8-9 (S.D.N.Y. 2010), (awarding class counsel 33% of $6 million

settlement fund in FLSA and multi-state wage and hour case); *Khait v. Whirlpool Corp., No. 06 Civ. 6381*, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding class counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case). Thus, this factor strongly supports Class Counsel's attorneys' fee request.

Additionally, as noted above, no class member has made an objection, a factor held by courts as supporting approval of an attorneys' fees award. *See Davis v. J.P. Morgan Chase & Co*., 827 F.Supp.2d 172, 183 (W.D.N.Y.2011) (absence of objections to an agreed-upon attorney's fee award is "a factor that weighs in favor of approval of the award") (citing cases).

### F.  Public Policy Considerations

"Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Beckman*, 293 F.R.D. at 477 (internal quotations omitted). "Where relatively small claims can only be prosecuted through aggregate litigation, 'private attorneys general' play an important role." *Kochilas*, 2015 WL 58216, at *8 (internal quotations omitted). "Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL." *Id.* (collecting cases).  Accordingly, Public policy considerations weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees.

### VI.  THE PROPOSED ATTORNEYS' FEE AND COSTS ARE FAIR AND REASONABLE

Under the terms of the Settlement Agreement, Class Counsel is entitled to reimbursement of expenses incurred in litigating this action. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental

33

and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal quotation marks omitted).

Plaintiffs request the Court approve unreimbursed costs in furtherance of this matter. As mentioned above, Plaintiffs' Counsel has incurred $354,724.22 in actual costs and expenses for court filings, service fees, experts, mediation costs, telephone, and postage. Badala Decl. ¶¶79-80. Under the Settlement Agreement, these expenses are included in Plaintiffs' request for approval of $721,390.89 of attorneys' fees and unreimbursed expenses. These expenses are reasonable, as well as incidental and necessary to the litigation; therefore, their reimbursement under the Settlement Agreement should be approved. *See Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (*quoting Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)).

Accordingly, Counsel's request for approval of a total of $721,390.89 in attorneys' fees and in unreimbursed expenses as compensation for Plaintiffs' counsel's work and their costs in this matter, is reasonable.

## VII.    ADMINISTRATION FEES

Angeion Group has acted as the Settlement Administrator in this lawsuit and has disseminated Notices to Class Members, performed calculations of awards to each Class Member, and maintained correspondences with Class Members. *See* Ashley Decl. The Parties agreed to pay fees not to exceed $145,000.00 (to be paid out of the Settlement Fund) to the Settlement Administrator, which is consistent with prevailing market rates.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court: (1) certify as final the settlement class and collective under Rule 23 and the FLSA; (2) grant final approval of the Settlement Agreement as fair, reasonable, adequate and binding on all Class Members who have not timely opted-out; (3) approve the FLSA settlement; (4) grant the Service Award (5) award Class Counsel's attorneys' fees and expenses; (6) grant the administration costs; and (4) fully and finally dismiss the Litigation with prejudice.

Dated: June 19, 2024

Respectfully submitted,

*/s/ Salvatore C. Badala*
Salvatore C. Badala
NAPOLI SHKOLNIK PLLC
400 Broadhollow Rd. #305
Melville, New York 11747
Telephone: (212) 397-1000
Facsimile: (646) 843-7603
Email: sbadala@napolilaw.com

*Counsel for Plaintiff*